# 22-2178

## United States Court of Appeals
## for the Second Circuit

PEOPLE OF THE STATE OF NEW YORK,

*Plaintiff-Appellant,*

v.

NIAGARA-WHEATFIELD CENTRAL SCHOOL DISTRICT,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of New York

---

**JOINT APPENDIX**

---

HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, NY 14534
(585) 419-8779
sivy@harrisbeach.com

HARRIS BEACH PLLC
Suite 1101
677 Broadway
Albany, NY 12207
(518) 701-2749
dlecours@harrisbeach.com

LETITIA JAMES
  *Attorney General*
  *State of New York*
The Capitol
Albany, New York 12224
(518) 776-2015
(518) 915-7723 (*f*)
alexandria.twinem@ag.ny.gov

*Attorneys for Defendant-Appellee*    *Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

Docket Sheet ......................................................................... JA1

First Amended Complaint, filed Aug. 24, 2021 .................................. JA9

Answer to First Amended Complaint, dated Oct. 1, 2021................. JA22

Scheduling Order, dated December 2, 2021 ..................................... JA33

Defendant's Motion for Judgment on the Pleadings, dated
   March 10, 2022 ................................................................. JA39

     Declaration of Brian C. Mahoney ........................................... JA41

       Exhibit A – Plaintiff's Press Release ............................... JA43

Magistrate Judge's Report and Recommendation, dated
   May 11, 2022 ................................................................... JA48

Plaintiff's Objections to Report and Recommendation,
   filed May 25, 2022 ........................................................... JA84

     Plaintiff's Local 72(c) Certification ....................................... JA111

Defendant's Response to Plaintiff's Objections, dated
   June 10, 2022 ............................................................... JA112

District Court's Decision and Order, dated Aug. 26, 2022.............. JA132

Judgment in Favor of Defendant, dated Aug. 29, 2022................... JA139

Notice of Appeal, dated Sept. 26, 2022 ........................................... JA140

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

APPEAL,MEDIATION

# U.S. DISTRICT COURT
## U.S. District Court, Western District of New York (Buffalo)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00759-JLS-LGF

| | |
|---|---|
| People of the State of New York v. Niagara-Wheatfield Central School District | Date Filed: 06/23/2021 |
| | Date Terminated: 08/29/2022 |
| Assigned to: Hon. John L. Sinatra, Jr. | Jury Demand: None |
| Referred to: Hon. Leslie G. Foschio | Nature of Suit: 448 Civil Rights: Education |
| Cause: 28:1331 Federal Question: Other Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **People of the State of New York by Letitia James, New York State Attorney General** | represented by | **Amanda Marie Meyer** |
| | | Office of New York State Attorney General |
| | | 28 Liberty Street |
| | | 15th Floor |
| | | New York, NY 10005 |
| | | 212-416-6225 |
| | | Fax: 212-416-6030 |
| | | Email: amanda.meyer@ag.ny.gov |
| | | *TERMINATED: 11/15/2022* |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Sandra Elizabeth Pullman** |
| | | New York State Office of the Attorney General |
| | | 28 Liberty Street |
| | | 20th Floor |
| | | New York, NY 10005 |
| | | 212 416-8623 |
| | | Email: sandra.pullman@ag.ny.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Niagara-Wheatfield Central School District** | represented by | **Daniel Robert LeCours** |
| | | Harris Beach PLLC |
| | | 677 Broadway |
| | | Suite 1101 |
| | | Albany, NY 12207 |
| | | 518-701-2749 |
| | | Fax: 518-427-0235 |
| | | Email: dlecours@harrisbeach.com |
| | | *LEAD ATTORNEY* |

JA1

*ATTORNEY TO BE NOTICED*

**Svetlana K. Ivy**
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY 14534
585-419-8779
Fax: 585-419-8811
Email: sivy@harrisbeach.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Clinton Mahoney**
Lippes Mathias LLP
50 Fountain Plaza
Ste 1700
Buffalo, NY 14202
716-853-5100
Email: bmahoney@lippes.com
*TERMINATED: 10/11/2022*

**Tracie L. Lopardi**
Harris Beach LLP
Larkin at Exchange
726 Exchange Street
Suite 1000
Buffalo, NY 14210
716-200-5128
Fax: 716-200-5204
Email: tlopardi@harrisbeach.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/23/2021 | 1 | COMPLAINT against Niagara-Wheatfield Central School District $ 402 receipt number 0209-4283864, filed by People of the State of New York by Letitia James, New York State Attorney General.(Pullman, Sandra) (Entered: 06/23/2021) |
| 06/23/2021 | 2 | Original Summons Filed. (Pullman, Sandra) (Entered: 06/23/2021) |
| 06/23/2021 | 3 | NOTICE of Appearance by Sandra Elizabeth Pullman on behalf of People of the State of New York by Letitia James, New York State Attorney General (Pullman, Sandra) (Entered: 06/23/2021) |
| 06/24/2021 |  | E-Filing Notification: re 1 COMPLAINT - Attorney is directed to file a civil cover sheet, pursuant to Local Rule 3. No judge assignment will be made until filing is entered on the docket. Please utilize the Continuation of Exhibits event, located within the Responses and Replies category.(TMK) (Entered: 06/24/2021) |
| 06/24/2021 | 4 | CONTINUATION OF EXHIBITS by People of the State of New York by Letitia James, New York State Attorney General. to 1 Complaint *Civil Cover Sheet* filed by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 06/24/2021) |

JA2

| 06/24/2021 | | Case Assigned to Hon. John L. Sinatra, Jr. Notification to Chambers of on-line civil case opening. (TMK) (Entered: 06/24/2021) |
|---|---|---|
| 06/24/2021 | | AUTOMATIC REFERRAL to Mediation The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution.(TMK) (Entered: 06/24/2021) |
| 06/24/2021 | | Notice of Availability of Magistrate Judge: A United States Magistrate of this Court is available to conduct all proceedings in this civil action in accordance with 28 U.S.C. 636c and FRCP 73. The Notice, Consent, and Reference of a Civil Action to a Magistrate Judge form (AO-85) is available for download at http://www.uscourts.gov/services-forms/forms. (TMK) (Entered: 06/24/2021) |
| 06/24/2021 | 5 | Summons Issued as to Niagara-Wheatfield Central School District. (TMK) (Entered: 06/24/2021) |
| 07/01/2021 | 6 | WAIVER OF SERVICE Returned Executed by People of the State of New York by Letitia James, New York State Attorney General. Niagara-Wheatfield Central School District waiver sent on 6/28/2021, answer due 8/27/2021. (Pullman, Sandra) (Entered: 07/01/2021) |
| 07/02/2021 | 7 | NOTICE of Appearance by Tracie L. Lopardi on behalf of Niagara-Wheatfield Central School District (Lopardi, Tracie) (Entered: 07/02/2021) |
| 07/02/2021 | 8 | NOTICE of Appearance by Svetlana K. Ivy on behalf of Niagara-Wheatfield Central School District (Ivy, Svetlana) (Entered: 07/02/2021) |
| 07/02/2021 | 9 | NOTICE of Appearance by Brian Clinton Mahoney on behalf of Niagara-Wheatfield Central School District (Mahoney, Brian) (Entered: 07/02/2021) |
| 08/24/2021 | 10 | Letter filed by People of the State of New York by Letitia James, New York State Attorney General as to Niagara-Wheatfield Central School District *re Defendant's Consent to File Amended Complaint*. (Pullman, Sandra) (Entered: 08/24/2021) |
| 08/24/2021 | 11 | AMENDED COMPLAINT against Niagara-Wheatfield Central School District, filed by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 08/24/2021) |
| 09/07/2021 | 12 | Letter filed by Niagara-Wheatfield Central School District as to Niagara-Wheatfield Central School District *(requesting extension of time to respond to Amended Complaint to October 1, 2021)*. (Mahoney, Brian) (Entered: 09/07/2021) |
| 09/07/2021 | 13 | TEXT ORDER re 12 Letter filed by Niagara-Wheatfield Central School District. The Court grants Defendant's unopposed request for an extension of time to respond to the amended complaint. Defendant shall answer or otherwise respond to the amended complaint by 10/1/2021. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 9/7/2021. (KEF) (Entered: 09/07/2021) |
| 10/01/2021 | 14 | ANSWER to 11 Amended Complaint by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 10/01/2021) |
| 10/04/2021 | | ADR Plan electronically forwarded to attorneys. The ADR Plan is available for download at http://www.nywd.uscourts.gov/alternative-dispute-resolution. (JLV) (Entered: 10/04/2021) |
| 10/06/2021 | 15 | TEXT REFERRAL ORDER (DISPOSITIVE) - Hon. Leslie G. Foschio, United States Magistrate Judge, is hereby designated to act in this case as follows: Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), all pre-trial matters in this case are referred to the above-named United States Magistrate Judge, including but not limited to: (1) conduct of a scheduling conference and entry of a scheduling order pursuant to Fed. R. Civ. P. 16, (2) hearing and |

| | | |
|---|---|---|
| | | disposition of all non-dispositive motions or applications, (3) supervision of discovery, and (4) supervision of all procedural matters involving the aforementioned or involving the preparation of the case or any matter therein for consideration by the District Judge. The Magistrate Judge shall also hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). All motions or applications shall be filed with the Clerk and made returnable before the Magistrate Judge. The parties are encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to either partial or complete disposition of the case, including trial if necessary, by the Magistrate Judge. Consent forms are available from the office of the Magistrate Judge or the office of the Clerk of Court. IT IS SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 10/6/2021. (KLH) (Entered: 10/06/2021) |
| 10/13/2021 | 16 | MOTION to appear pro hac vice *by Amanda Meyer* ( Filing fee $ 200 receipt number 0209-4387780.) by People of the State of New York by Letitia James, New York State Attorney General. (Attachments: # 1 Exhibit application, # 2 Exhibit sponsor affidavit, # 3 Exhibit attorney oath, # 4 Exhibit civility form, # 5 Exhibit ECF form)(Pullman, Sandra) (Entered: 10/13/2021) |
| 10/13/2021 | 17 | ORDER. Scheduling Teleconference set for 11/30/2021 02:30 PM before Hon. Leslie G. Foschio. Signed by Hon. Leslie G. Foschio on 10/13/2021. (SDW) (Entered: 10/13/2021) |
| 10/14/2021 | 18 | TEXT ORDER granting 16 Motion for Pro Hac Vice for Amanda Marie Meyer. Issued by Hon. Leslie G. Foschio on 10/14/2021. (SDW)<br><br>-CLERK TO FOLLOW UP- (Entered: 10/14/2021) |
| 10/29/2021 | 19 | TEXT ORDER. Scheduling Teleconference set for 12/2/2021 03:30 PM before Hon. Leslie G. Foschio, adjourned from 11/30/2021 at request of Plaintiff's counsel with consent of Defendant. Issued by Hon. Leslie G. Foschio on 10/29/2021. (SDW) (Entered: 10/29/2021) |
| 11/05/2021 | 20 | NOTICE of Appearance by Daniel Robert LeCours on behalf of Niagara-Wheatfield Central School District (LeCours, Daniel) (Entered: 11/05/2021) |
| 11/18/2021 | 21 | Joint MOTION for Extension of Time to File *(Request for extension until November 23, 2021 for the parties to submit discovery plan to the Court)* by Niagara-Wheatfield Central School District.(Mahoney, Brian) (Entered: 11/18/2021) |
| 11/18/2021 | 22 | TEXT ORDER granting 21 Motion for Extension of Time to File discovery plan. Issued by Hon. Leslie G. Foschio on 11/18/2021. (SDW) (Entered: 11/18/2021) |
| 11/18/2021 | 23 | Proposed Pretrial Order *(Joint Proposed Scheduling Order)* by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 11/18/2021) |
| 11/23/2021 | 24 | DISCOVERY PLAN by Niagara-Wheatfield Central School District.(Mahoney, Brian) (Entered: 11/23/2021) |
| 12/02/2021 | 25 | Minute Entry for proceedings held before Hon. Leslie G. Foschio: Scheduling TeleConference held on 12/2/2021. Case management order discussed, same to be filed by the court. Appearances: Amanda Meyer, Esq., Sandra Pullman, Esq. / Dft: Daniel LeCours, Esq., Brian Mahoney, Esq. (Court Reporter AT&T Teleconference Service.) (SDW) (Entered: 12/02/2021) |
| 12/02/2021 | 26 | SCHEDULING ORDER (Please Note: This docket text may not contain the entire contents of the attached Order. It is your responsibility to read the attached Order and download it for future reference. Direct any questions to the Chambers of the Judge who entered this Order.) Mandatory Disclosures due by 12/16/2021. Stipulation of Selection of Mediator due by 12/30/2021. First Mediation Session due by 2/24/2022. Motions to Join |

JA4

| | | |
|---|---|---|
| | | Parties/Amend Pleadings due by 3/1/2022. Motions to Compel Discovery due by 7/1/2022. Discovery completed by 8/1/2022. Plaintiff Expert Witness ID due by 9/1/2022. Defendant Expert Witness ID due by 11/1/2022. Dispositive Motions due by 1/15/2023. Mediation To End by 2/1/2023. Signed by Hon. Leslie G. Foschio on 12/2/2021. (SDW) (Entered: 12/02/2021) |
| 01/24/2022 | 27 | Stipulation-Selection of Mediator by People of the State of New York by Letitia James, New York State Attorney General(Pullman, Sandra) (Entered: 01/24/2022) |
| 01/27/2022 | 28 | Proposed jointly submitted proposed confidentiality order by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) Modified on 1/28/2022 (JLV). (Entered: 01/27/2022) |
| 01/28/2022 | | E-Filing Notification: 28 STIPULATION; modified entry to match document. (JLV) (Entered: 01/28/2022) |
| 01/28/2022 | 29 | CONFIDENTIALITY ORDER. Signed by Hon. Leslie G. Foschio on 1/28/2021. (SDW) (Entered: 01/28/2022) |
| 02/01/2022 | 30 | PROPOSED ORDER *re jointly submitted FERPA order* by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) Modified on 2/2/2022 (JLV). (Entered: 02/01/2022) |
| 02/02/2022 | | E-Filing Notification: 30 STIPULATION; modified entry to Proposed Order to match document filed. (JLV) (Entered: 02/02/2022) |
| 02/02/2022 | 31 | Proposed Pretrial Order *regarding FERPA material* by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 02/02/2022) |
| 02/25/2022 | 32 | Mediation Certification by Paul Leclair. The case has not settled mediation complete. (AGW) (Entered: 02/25/2022) |
| 03/09/2022 | 33 | Joint MOTION for Discovery *order pursuant to FERPA* by People of the State of New York by Letitia James, New York State Attorney General. (Attachments: # 1 Affidavit affidavit of Sandra E. Pullman, # 2 Memorandum in Support joint MOL, # 3 Text of Proposed Order joint proposed order)(Pullman, Sandra) (Entered: 03/09/2022) |
| 03/10/2022 | 34 | MOTION for Judgment on the Pleadings by Niagara-Wheatfield Central School District. (Attachments: # 1 Declaration of Brian C. Mahoney, # 2 Exhibit A to Declaration of Brian C. Mahoney, # 3 Memorandum in Support Defendant's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings)(Mahoney, Brian) (Entered: 03/10/2022) |
| 03/11/2022 | 35 | MOTION for Extension of Time to File Response/Reply by People of the State of New York by Letitia James, New York State Attorney General.(Meyer, Amanda) (Entered: 03/11/2022) |
| 03/16/2022 | 36 | TEXT ORDER granting 35 Motion for Extension of Time to File Response/Reply re 35 MOTION for Extension of Time to File Response/Reply , 34 MOTION for Judgment on the Pleadings. Responses due by 4/7/2022. Replies due by 4/21/2022. Oral argument at the discretion of the court. Issued by Hon. Leslie G. Foschio on 3/16/2022. (SDW) (Entered: 03/16/2022) |
| 04/04/2022 | 37 | Letter filed by People of the State of New York by Letitia James, New York State Attorney General as to Niagara-Wheatfield Central School District *re Parties' Joint Response to Court's Questions re Proposed FERPA Order*. (Pullman, Sandra) (Entered: 04/04/2022) |
| 04/06/2022 | 38 | DECISION AND ORDER. Further consideration by the court of the Joint Motion (Dkt. 33) is DENIED without prejudice pending determination of Defendant's motion; discovery |

| | | |
|---|---|---|
| | | in this action is hereby STAYED pending such determination. Signed by Hon. Leslie G. Foschio on 4/6/2022. (SDW) (Entered: 04/06/2022) |
| 04/07/2022 | 39 | MEMORANDUM in Opposition re 34 MOTION for Judgment on the Pleadings filed by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 04/07/2022) |
| 04/21/2022 | 40 | REPLY to Response to Motion re 34 MOTION for Judgment on the Pleadings *(Defendant's Reply Memorandum of Law in Further Support of Its Motion for Judgment on the Pleadings)* filed by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 04/21/2022) |
| 05/11/2022 | 41 | REPORT AND RECOMMENDATIONS re 34 Defendant's MOTION for Judgment on the Pleadings filed by Niagara-Wheatfield Central School District should be GRANTED and the Clerk of Court should be directed to close the file. Alternatively, Defendant's Motion for Judgment on the Pleadings (Dkt. 34) should be DENIED. Objections due fourteen days from receipt. Signed by Hon. Leslie G. Foschio on 05/11/2022. (TAH) (Entered: 05/11/2022) |
| 05/25/2022 | 42 | OBJECTIONS to REPORT AND RECOMMENDATIONS re 34 MOTION for Judgment on the Pleadings filed by Niagara-Wheatfield Central School District Objections due fourteen days from receipt. 41 filed by Plaintiff People of the State of New York by Letitia James, New York State Attorney General.. (Attachments: # 1 Local Rule 72 certification) (Pullman, Sandra) (Entered: 05/25/2022) |
| 05/25/2022 | 43 | TEXT ORDER re 42 Objections to R&R, filed by People of the State of New York by Letitia James, New York State Attorney General. Defendant's response is due by 6/8/2022. Plaintiffs' reply, if any, is due by 6/15/2022. The Court will set oral argument at a later date, if necessary. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 5/25/2022. (KEF) (Entered: 05/25/2022) |
| 05/25/2022 | 44 | OBJECTION to 41 Report and Recommendations *; Defendant Niagara Wheatfield Central School District's Limited Objection to Report and Recommendation* by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 05/25/2022) |
| 05/25/2022 | 45 | TEXT ORDER re 44 Objection to R&R, filed by Niagara-Wheatfield Central School District. Plaintiffs' response is due by 6/8/2022. Defendant's reply, if any, is due by 6/15/2022. The Court will set oral argument at a later date, if necessary. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 5/25/2022. (KEF) (Entered: 05/25/2022) |
| 05/27/2022 | 46 | Letter filed by People of the State of New York by Letitia James, New York State Attorney General as to Niagara-Wheatfield Central School District *requesting additional time to file responses and replies to Objections to Magistrate's R&R.* (Pullman, Sandra) (Entered: 05/27/2022) |
| 05/31/2022 | 47 | TEXT ORDER granting 46 the parties' request for more time to respond to objections. Responses to objections are due by 6/10/2022. Replies are due by 6/21/2022. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. (KEF) (Entered: 05/31/2022) |
| 06/10/2022 | 48 | MEMORANDUM IN OPPOSITION re 42 Objections -- non-motion, *Opposition to Objection to Report and Recommendation by Plaintiff* by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 06/10/2022) |
| 06/10/2022 | 49 | RESPONSE in Opposition re 41 REPORT AND RECOMMENDATIONS re 34 MOTION for Judgment on the Pleadings filed by Niagara-Wheatfield Central School District Objections due fourteen days from receipt. *Plaintiff's response to Defendant's Objection to the R&R* filed by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 06/10/2022) |

JA6

| 06/21/2022 | [50](#) | REPLY/RESPONSE to re [44](#) Objection to Report and Recommendations *(Defendant Niagara Wheatfield Central School District's Reply in Further Support of Its Limited Objection to the Report and Recommendation)* filed by Niagara-Wheatfield Central School District. (Mahoney, Brian) (Entered: 06/21/2022) |
|---|---|---|
| 06/21/2022 | [51](#) | REPLY to Response to Motion re [41](#) REPORT AND RECOMMENDATIONS re [34](#) MOTION for Judgment on the Pleadings filed by Niagara-Wheatfield Central School District Objections due fourteen days from receipt. *Reply in Support of Objection in Part to Magistrate Judge's Report and Recommendation* filed by People of the State of New York by Letitia James, New York State Attorney General. (Pullman, Sandra) (Entered: 06/21/2022) |
| 08/26/2022 | [52](#) | DECISION AND ORDER accepting and adopting, in part, the [41](#) Report and Recommendations and granting Defendant's [34](#) Motion for Judgment on the Pleadings, without prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim and denies Plaintiff leave to file a second amended complaint. The Clerk of Court shall close this case. Signed by Hon. John L. Sinatra, Jr. on 8/26/2022. (KLH)<br><br>*Clerk to Follow up* (Entered: 08/26/2022) |
| 08/29/2022 | [53](#) | JUDGMENT in favor of Niagara-Wheatfield Central School District against People of the State of New York by Letitia James, New York State Attorney General. Signed by Mary C. Loewenguth, Clerk of Court on 8/29/2022. (JLV) (Entered: 08/29/2022) |
| 09/26/2022 | [54](#) | NOTICE OF APPEAL as to [52](#) Order on Motion for Judgment on the Pleadings,,, Order on Report and Recommendations,, by People of the State of New York by Letitia James, New York State Attorney General. Filing fee $ 505, receipt number ANYWDC-4683517. Appeal Record due by 10/11/2022. (Pullman, Sandra) (Entered: 09/26/2022) |
| 09/27/2022 | | E-Filing Notification: [54](#) NOTICE OF APPEAL; Pursuant to Local Rule 12.1 of the US Court of Appeals for the Second Circuit, Forms C and D must be completed within 14 days after the filing of a notice of appeal. Forms C and D can be obtained at www.ca2.uscourts.gov. (JLV) (Entered: 09/27/2022) |
| 09/27/2022 | | E-Filing Notification: [54](#) NOTICE OF APPEAL; Within 14 days of filing the Notice of Appeal, the appellant is required to electronically file with the District Court an index of filed documents it wishes the Court of Appeals to consider, called Designation of Record on Appeal. After receipt, the Clerks Office will certify and transmit the index to the Circuit. (JLV) (Entered: 09/27/2022) |
| 10/07/2022 | [55](#) | DESIGNATION of Record on Appeal by People of the State of New York by Letitia James, New York State Attorney General re [54](#) Notice of Appeal, CLERK TO FOLLOW UP (Pullman, Sandra) (Entered: 10/07/2022) |
| 10/07/2022 | [56](#) | CLERKS CERTIFICATE filed and electronically sent to Court of Appeals. (JLV) (Entered: 10/07/2022) |
| 10/10/2022 | [57](#) | NOTICE of Withdrawal of Attorney: Brian C. Mahoney no longer appearing for Defendant Niagara-Wheatfield Central School District.<br><br>CLERK TO FOLLOW UP.<br><br>(LeCours, Daniel) (Entered: 10/10/2022) |
| 11/15/2022 | [58](#) | MOTION to Withdraw as Attorney by People of the State of New York by Letitia James, New York State Attorney General.(Meyer, Amanda) (Entered: 11/15/2022) |

JA7

| 11/15/2022 | 59 | TEXT ORDER granting 58 Motion to Withdraw as Attorney. Attorney Amanda Marie Meyer terminated. SO ORDERED. Issued by Hon. John L. Sinatra, Jr. on 11/15/2022. (KEF) (Entered: 11/15/2022) |
|---|---|---|

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/12/2023 11:30:59 | | | |
| **PACER Login:** | alextwinemsg | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00759-JLS-LGF |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

JA8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X   Case No. 21-759

People of the State of New York, by LETITIA JAMES,   **FIRST AMENDED**
Attorney General of the State of New York,   **COMPLAINT**

Plaintiff,

-against-

NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT,

Defendant.

-----------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.    The People of the State of New York, by their Attorney General, Letitia James, bring this action against Defendant Niagara Wheatfield Central School District ("NWCSD" or "the District") to remedy Defendant's violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, ("Title IX") and its negligent supervision of students.

2.    Federal law guarantees all students the right to a public education, and it provides that they shall not be deprived of this most basic right on the basis of sex. To that end, Title IX specifically requires that schools take steps to protect students from gender-based harassment and sexual assault that create a hostile educational environment and deprive students of educational opportunities. New York state law further requires that schools provide adequate supervision of their students to protect them from harm.

3.    Despite these clear legal and moral mandates, the NWCSD repeatedly and egregiously failed the very students it was required by law to educate and to protect. It deliberately and callously ignored complaints by students of rape, assault, sexual harassment, and gender-based bullying, and it failed to take any meaningful action against perpetrators or to

1

JA9

protect victims from future harassment.  The District's shocking indifference to its students'

suffering—which has led to school-wide protests and nationwide outrage, but no systemic

reforms—has caused victims mental, emotional, and physical injury, and it has deprived them

equal access to education.

    4.    NWCSD's indifference to gender-based bullying, harassment, and assault not

only affects the victims, but it also impacts the student body and the school community as a

whole.  The school district's inaction has shown students—particularly young women—that the

very people charged with ensuring their safety in school will not protect them in their time of

need.

    5.    Indeed, in the last several years, there have been over thirty documented incidents

of sex discrimination, sexual harassment, sexual assault, or gender-based bullying at NWCSD.

In response to these dozens of incidents, NWCSD has not created a single written safety plan or

taken any documented effort to keep students safe following a rape, physical or sexual assault, or

harassment.

    6.    Accordingly, the Office of the New York State Attorney General ("OAG") brings

this action to remedy NWCSD's repeated and systematic violations of Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, and its negligent supervision of its students, and

to ensure that all students are provided a safe learning environment and equal educational

opportunities.

<u>**JURISDICTION AND VENUE**</u>

    7.    This Court has jurisdiction over Plaintiff's Title IX claim pursuant to 28 U.S.C. §

1331 because the matter in controversy arises under the law of the United States.  This Court

JA10

has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a) because that claim arises out of the same case or controversy as Plaintiff's federal claim.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that gave rise to Plaintiff's claims took place within Niagara County in the Western District of New York.

## PARTIES

9.    Plaintiff, the People of the State of New York, represented by and through their attorney general, Letitia James, is a sovereign state of the United States of America.  The Attorney General is New York State's chief law enforcement officer and is authorized to pursue this action pursuant to Executive Law § 63(1) and the *parens patriae* doctrine.

10.    Where, as here, the interests in the health and well-being of the People of the State of New York as a whole are implicated, the OAG possesses *parens patriae* standing to commence legal action against Defendant to stop its unlawful practices.

11.    The OAG has a quasi-sovereign interest in the health and well-being of the People of the State of New York, which includes preventing discrimination in educational programs.

12.    As the representative of the People of New York, the OAG has a unique mandate to obtain wide-ranging relief that benefits the broader community and promotes the public good. The OAG seeks prospective relief to end Defendant's unlawful policies, practices, and/or customs and ensure that they do not continue in the future.

13.    Defendant Niagara Wheatfield Central School District is a public school district in Niagara County, New York.  NWCSD and its component schools are recipients of federal financial assistance.  Niagara Wheatfield Senior High School (the "High School"), Edward

JA11

Town Middle School (the "Middle School"), and Errick Road Elementary School are part of NWCSD.

## FACTUAL ALLEGATIONS

### Discrimination and Gender-Based Harassment

14.     On multiple occasions, students have reported sexual assault and harassment to the District, but the District took no action to protect them from their assailants and harassers.

15.     As a result, the students experienced severe emotional distress, missed numerous hours of classroom instruction, and some left school entirely.

*The District Failed to Protect TG After She Was Raped*

16.     TG was raped by a male student in the latter's home in May 2018.

17.     After she reported the incident to the police, her assailant, ED, was arrested.

18.     Prior to the start of the school year, TG obtained a restraining order preventing ED from coming near her outside of school.

19.     TG and ED were both seniors at the High School in the 2018-2019 school year.

20.     Before the school year started, TG's mother met with then-principal, Michael Mann, bringing with her the order of protection and texts from ED apologizing for what he did to TG.

21.     Mr. Mann responded that the criminal charges were not yet proven, so ED would not be punished.  He promised TG's mother that TG would not have contact with him but provided no concrete plan about how the school would keep her daughter away from her rapist.

JA12

22.     That fall, ED went out of his way to encounter TG multiple times a week. Although their lockers were not near each other, ED would frequently stand outside her classroom and wait for her to walk out of the room and then glare at her.

23.     TG notified the school counselor of these repeated, purposeful interactions the second week of school, but nothing was done.  TG had a panic attack as a result.

24.     Later, at the school's open house, Assistant Principal Jeff White came up to TG's family and said, in front of other students and families, that he believed TG had faked the panic attack for attention.

25.     TG was a cheerleader, and ED was a star athlete.  While ED was permitted to continue playing sports and starting in games, TG was not allowed to cheer at certain games after she missed practice in order to speak to the assistant district attorney who was prosecuting the case against ED.  In refusing to excuse TG's absence related to her rape case, the head coach of the cheerleading team observed that "girls get assaulted all the time."

26.     In December 2018, TG received a snapchat from a classmate with a picture of her rapist, with the caption "your boyfriend."  TG provided the message to Principal Michael Mann about it, but he took no action.

27.     Additional classmates began texting TG, harassing her and insinuating that she enjoyed having sex with ED.  TG showed those texts to the assistant principal, but again, he took no action.

28.     Classmates began taunting TG and telling her to "watch her back."  TG's mother contacted the superintendent about the harassment, but she received no response.

29.     As a result of the continued harassment and bullying, TG's mental health suffered, and she started missing school.

JA13

30.     Meanwhile, none of the students who harassed TG were disciplined, and ED continued to have class right across from TG—the school did not alter his schedule.

31.     In January 2019, TG began a theater class.  On multiple occasions, ED stood in the doorway of that class and stared at TG, which led her to begin skipping that class.

32.     On May 23, 2019, ED pleaded guilty to third-degree rape.

33.     That day, TG's mother contacted the school, informing them of the guilty plea and explaining that there would be a sentencing in July.

34.     Despite being notified that ED had pled guilty to rape, Principal Mann told TG's mother that he had to speak to legal counsel, but he thought ED would be able to attend both prom and graduation.

35.     Later that afternoon, Principal Mann called TG's mother back and said that, based on advice from the District's legal counsel, the District would allow ED to attend all school functions, including prom and graduation.

36.     In late May 2019, TG's mother posted on social media about the NWCSD's failure to protect her daughter from her rapist over the course of the school year.  The next morning, she woke up to a hundred messages from other parents in the District, expressing concern that a rapist was in school with their children all year long.

37.     Following the social media post, students at the High School organized and attended a walkout on May 31, 2019, expressing their anger with the way that the school handled the incident.

38.     Rather than respond to the students' concerns, Principal Mann discouraged the walkout, and the school blocked doorways in an attempt to keep more students from participating.

JA14

39.     In a video from that day, Principal Mann can be seen confronting TG's mother and saying that the walkout was not "civil," even though there was no unrest.  In response, a female student objected, "Allowing all of us girls to be in danger is civil?"

40.     Several students who participated in the walkout received suspensions.

41.     Finally, at the conclusion of the school year, NWCSD expelled ED, but only after the walkout brought nationwide attention to the school's misconduct, which was reported in the New York Times and other publications across the country.

*The District Failed to Protect CC from Persistent Gender-Based Bullying*

42.     CC experienced severe bullying during her time at the Middle School and High School.

43.     Beginning in seventh grade, CC was bullied for wearing hoodies and dressing as a "tomboy" because she dressed in stereotypically male clothes.  She was also called transgender and gay throughout middle school because of her clothing.

44.     CC repeatedly went to the school counselor, Dr. Peters, and she would cry in his office about this harassment.  Initially, Dr. Peters allowed her to come to his office to do her work when the bullying occurred; however, as time went on, Dr. Peters stopped helping her and told her to go back to class.

45.     In ninth grade, CC began wearing more feminine clothing because of the harassment.  However, the bullying did not stop, and bullies instead made comments about her more feminine clothing and called her "fat" and "ugly."

46.     CC began attending school less and less because of the abuse that she was enduring at school.  At one point, she walked by a lunch table and one of her bullies—who had harassed her for years—called her a "slut" and told her to kill herself.

47.     Throughout the year, CC and her family repeatedly informed the school counselor, Dr. Peters, about what she was experiencing, but at no point did the District create a safety plan or document any efforts to protect CC from the ongoing bullying.

48.     During this time, CC saw a counselor and a psychiatrist to help with the anxiety and depression that resulted from the harassment.  She had never experienced any mental health problems before the bullying she experienced at school.

49.     In December 2019, she stopped going to school altogether because of the ongoing bullying and the District's failure to stop it.

50.     CC sought to attend a neighboring school, Niagara Falls, to be away from her bullies and near her friends, but NWCSD refused to let her transfer.  Instead, the school called Child Protective Services to report that CC was not attending school.

51.     Because she was not provided with any protection from harassment, CC left the High School permanently. To date, CC has not received her high school diploma.

*The District Failed to Protect AS From Classmates Who Physically Assaulted Her*

52.     AS was attending the High School in Spring 2020 when she was bullied by members of the football team and their friends.  One of the football players created and distributed a TikTok, in which he displayed messages from his teammates mocking AS.  In the video, one boy comments that her sweatpants made it look like she has male genitalia, and another states that he wouldn't have sex with her.

53.     After the video was distributed around the school, female students who were friends with the football players began harassing AS.

54.     During a pep rally, the sophomore class performed a chant about AS, and five sophomore girls displayed a poster about her that said, "We don't want you."

55.     At the conclusion of the pep rally, the five girls physically attacked AS, and she was hit in the head eleven times.

56.     AS's mother immediately went to the principal's office and described to Acting Principal Jeff White what had happened.  Mr. White noted that there would be a winter dance at the school the next day, and it would be in AS's best interest if she didn't go.  Meanwhile, he permitted the students who assaulted her to go to the dance.

57.     Several days passed, and no action was taken against the sophomore girls who had assaulted AS.

58.     AS's mother repeatedly contacted the school and the superintendent to discuss what steps the District would take to protect her daughter, but no one responded to her.

59.     AS was too afraid to go back to the High School, so the family located a private school for her to attend, requiring them to pay the new school's tuition.


*The District Failed to Protect LW from a Classmate Who Assaulted and Harassed Her*

60.     In 2017, LW was sexually assaulted in her housing complex by a neighbor.  At the time, LW was in second grade, and her assailant was in fifth grade at Errick Road Elementary School.

61.     LW's mother reported the assault to law enforcement authorities, which resulted in a court placing the assailant on probation and requiring her to receive therapy.  The court also ordered that the family move from LW's housing complex.

62.     LW's mother informed the school principal, Nora O'Bryan, and the district superintendent, Daniel Ljiljanich about the incident and court proceedings, and requested that the school keep LW and the assailant apart, and LW safe.

63.     The superintendent told LW's mother that the District would not do anything because the assailant was entitled to an education, and that LW and her mother would need to move if LW's mother wanted to protect LW from her assailant.

64.     The assailant continued to harass LW at school where they had lunch together in the same place every day.  The assailant would touch LW's arm when walking past her, and told LW that she was "damaged goods," and that "no one will ever love you."

65.     The assailant also followed LW into the bathroom at school, and a teacher observed LW run out.

66.     LW's mother attempted to contact the superintendent again, but he did not return her calls.  She also continued to raise her concerns to the principal, but the principal did nothing to protect LW.

67.     After the assailant moved out of the school district, other students bullied LW based on what the assailant told them about LW, including that LW was "damaged goods" and that LW enjoyed what the assailant had done to her.

68.     As a result of the assault and continued sexual harassment, LW developed physical manifestations of stress, and had to attend counseling for more than two years.

JA18

*The District Fails to Protect All Students from Sexual Assault and Harassment*

69. The District has been notified of at least thirty incidents of sexual assault, harassment, or gender-based bullying in the last few years.  Yet the District has not created a single written safety plan or documented any follow-up to ensure the safety of any of these students.

70. Nor has the District taken the most basic steps to prevent or respond to future sexual assaults, despite the nationwide attention to its mishandling of TG's rape.

71. The Rape Crisis Program at the YWCA for the Niagara Frontier offers educational programming on domestic and dating violence, as well as confidential advocacy for rape and sexual assault victims, to every school district in Niagara County—except for NWCSD. Despite being contacted numerous times by the YWCA with offers to provide these services to the district, the NWCSD has not only declined the offer but has refused to respond at all.

72. The District's refusal to take any steps to develop preventative policies or reform its practices indicates to all students that it will not protect them from sexual assault, harassment, or gender-based bullying and gives them a reasonable basis to believe they are, in fact, in danger.

## FIRST CAUSE OF ACTION

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***

73. Plaintiff incorporates and realleges by reference paragraphs 1 to 72 of this Complaint.

74. NWCSD receives, and at all relevant times received, federal financial assistance.

75. The above-described acts and omissions by NWCSD, including acts and omissions carried out by its employees, violated students' rights under Title IX by discriminating on the basis of sex.

76.     NWCSD and its officials had actual notice of repeated sex discrimination, sexual harassment, and sexual assault that was objectively severe, pervasive, and offensive such that it created a hostile educational environment.

77.      Students and NWCSD have been deprived of educational benefits, including but not limited to class attendance, participation in school-sponsored activities, and a high school diploma, because of the discrimination and harassment they experienced.

78.     NWCSD exhibited deliberate indifference to harassment on the basis of sex occurring in its schools.

79.     NWCSD's violations of Title IX were the actual, direct, and proximate cause of educational, emotional, mental, and physical harm suffered by its students.

80.     Accordingly, the OAG requests judgment in its favor against NWCSD as set forth in the Prayer for Relief.

## SECOND CAUSE OF ACTION

### Negligent Supervision

81.     Plaintiff incorporates and realleges by reference paragraphs 1 to 72 of this Complaint.

82.     NWCSD has a duty to exercise reasonable care over its students and to adequately supervise students.

83.     The acts and omissions of NWCSD, as described above, breaches that duty.

84.     Officials of NWCSD, including its employees, had notice of sex discrimination and sexual harassment taking place in its schools.

85.     NWCSD's negligent supervision proximately caused emotional, mental, physical, and education harm to students.  The harm experienced by students was a foreseeable

consequence of NWCSD's failure to discipline harassers and its failure to establish protection for victims.

86.     Accordingly, the OAG requests judgment in its favor against NWCSD as set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court:

A. Enjoin the District from unlawful negligence and discrimination against its students on the basis of sex;

B. Require the District to take all affirmative steps, including changing policies, conducting training, undergoing monitoring by this Court, among others, to ensure that defendants achieve compliance with Title IX, eliminate ongoing discrimination and its effects, and prevent discriminatory conduct in the future; and

C. Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 23, 2021

LETITIA JAMES
Attorney General of the State of New York

By:     _/s/ Sandra Pullman_____
        Sandra Pullman, Senior Counsel
        Amanda Meyer, Assistant Attorney General*
        Office of the New York State Attorney General
        Civil Rights Bureau
        28 Liberty St., 20th Floor
        New York, NY 10005
        (212) 416-8623
        Sandra.Pullman@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

People of the State of New York, by LETITIA
JAMES, Attorney General of the State of New
York,

                                    Plaintiff,

        v.

NIAGARA    WHEATFIELD    CENTRAL
SCHOOL DISTRICT,

                                    Defendant.

---

Case No.: 1:21-cv-00759-JLS

**ANSWER TO FIRST AMENDED
COMPLAINT**

Defendant, Niagara Wheatfield Central School District (the "District"), by and through its

attorneys, Harris Beach PLLC, as and for an Answer to the First Amended Complaint ("Amended

Complaint") of Plaintiff, People of the State of New York, by Letitia James, Attorney General of

the State of New York ("Plaintiff"), set forth as follows:

1.      No response is required to the allegations in paragraph 1 of the Amended

Complaint, which purport to state Plaintiff's intentions.  To the extent a response is required, the

District denies knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations in paragraph 1, and therefore denies same.

2.      The allegations in paragraph 2 of the Amended Complaint set forth conclusions of

law to which no response is required.  To the extent a response is required, the District refers to

the cited laws for their content, but otherwise denies knowledge or information sufficient to form

a belief as to the truth or falsity of the allegations in paragraph 2, and therefore denies same.

3.      The District denies the allegations in paragraph 3 of the Amended Complaint.

4.      The District denies the allegations in paragraph 4 of the Amended Complaint.

5.      The District denies the allegations in paragraph 5 of the Amended Complaint.

6.      No response is required to the allegations in paragraph 6 of the Amended Complaint, which purport to state Plaintiff's intentions.  To the extent a response is required, the District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 6, and therefore denies same.

7.      The allegations in paragraph 7 of the Amended Complaint set forth conclusions of law to which no response is required.

8.      The allegations in paragraph 8 of the Amended Complaint set forth conclusions of law to which no response is required.

9.      The District denies the allegations in paragraph 9 of the Amended Complaint.

10.     The District denies the allegations in paragraph 10 of the Amended Complaint.

11.     The District denies the allegations in paragraph 11 of the Amended Complaint.

12.     The District denies the allegations in paragraph 12 of the Amended Complaint.

13.     The District admits the allegations in paragraph 13 of the Amended Complaint.

14.     The District denies the allegations in paragraph 14 of the Amended Complaint.

15.     The District denies the allegations in paragraph 15 of the Amended Complaint.

16.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 16 of the Amended Complaint, and therefore denies same.

17.     The District admits that ED was arrested, but denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 17 of the Amended Complaint regarding the date or circumstances of the arrest, and therefore denies same.

18.     The District admits that a restraining order was issued, but denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 18 of the Amended Complaint regarding the date or circumstances of the restraining order, and therefore denies same.

19.     The District admits the allegations in paragraph 19 of the Amended Complaint.

20.     The District denies the allegations in paragraph 20 of the Amended Complaint.

21.     The District denies the allegations in paragraph 21 of the Amended Complaint.

22.     The District denies the allegations in paragraph 22 of the Amended Complaint.

23.     The District denies the allegations in the first sentence of paragraph 23 of the Amended Complaint.  The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 23 of the Amended Complaint, and therefore denies same.

24.     The District denies the allegations in paragraph 24 of the Amended Complaint.

25.     The District denies the allegations in paragraph 25 of the Amended Complaint.

26.     The District denies the allegations in paragraph 26 of the Amended Complaint.

27.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 27 of the Amended Complaint, and therefore denies same.  The District denies the allegations in the second sentence of paragraph 27 of the Amended Complaint.

28.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 28 of the Amended Complaint, and therefore denies same.  The District denies the allegations in the second sentence of paragraph 28 of the Amended Complaint.

29.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 29 of the Amended Complaint, and therefore denies same.

30.     The District denies the allegations in paragraph 30 of the Amended Complaint.

31.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 31 of the Amended Complaint, and therefore denies same.

32.     The District admits that ED pled guilty, but denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 32 of the Amended Complaint regarding the date or circumstances of the guilty plea, and therefore denies same.

33.     The District denies the allegations in paragraph 33 of the Amended Complaint.

34.     The District denies the allegations in paragraph 34 of the Amended Complaint.

35.     The District denies the allegations in paragraph 35 of the Amended Complaint.

36.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 36 of the Amended Complaint, and therefore denies same.

37.     The District admits that a student walkout occurred on May 31, 2019, but denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 37 of the Amended Complaint, and therefore denies same.

38.     The District denies the allegations in paragraph 38 of the Amended Complaint.

39.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 39 of the Amended Complaint, and therefore denies same.

40.     The District denies the allegations in paragraph 40 of the Amended Complaint.

41.     The District denies the allegations in paragraph 41 of the Amended Complaint.

42.     The District denies the allegations in paragraph 42 of the Amended Complaint.

43.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 43 of the Amended Complaint, and therefore denies same.

44.     The District denies the allegations in paragraph 44 of the Amended Complaint.

45.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 45 of the Amended Complaint, and therefore denies same.

46.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 46 of the Amended Complaint, and therefore denies same.

47.     The District denies the allegations in paragraph 47 of the Amended Complaint.

48.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 48 of the Amended Complaint, and therefore denies same.

49.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 49 of the Amended Complaint, and therefore denies same.

50.     The District denies the allegations in paragraph 50 of the Amended Complaint.

51.     The District states that CC left the District, but otherwise denies the allegations in the first sentence of paragraph 51 of the Amended Complaint.  The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of paragraph 51 of the Amended Complaint, and therefore denies same.

52.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 52 of the Amended Complaint, and therefore denies same.

53.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 53 of the Amended Complaint, and therefore denies same.

54.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 54 of the Amended Complaint, and therefore denies same.

55.     The District admits that an altercation occurred between AS and other students, but otherwise denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 55 of the Amended Complaint, and therefore denies same.

56.     The District denies the allegations in paragraph 56 of the Amended Complaint.

57.     The District denies the allegations in paragraph 57 of the Amended Complaint.

58.     The District denies the allegations in paragraph 58 of the Amended Complaint.

59.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 59 of the Amended Complaint, and therefore denies same.

60.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 60 of the Amended Complaint, and therefore denies same.

61.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 61 of the Amended Complaint, and therefore denies same.

62.     The District denies the allegations in paragraph 62 of the Amended Complaint.

63.     The District denies the allegations in paragraph 63 of the Amended Complaint.

64.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 64 of the Amended Complaint, and therefore denies same.

65.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 65 of the Amended Complaint, and therefore denies same.

66.      The District denies the allegations in paragraph 66 of the Amended Complaint.

67.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 67 of the Amended Complaint, and therefore denies same.

68.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 68 of the Amended Complaint, and therefore denies same.

69.     The District denies the allegations in paragraph 69 of the Amended Complaint.

70.     The District denies the allegations in paragraph 70 of the Amended Complaint.

71.     The District denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of paragraph 71 of the Amended Complaint, and therefore denies same.  The District denies the allegations in the second sentence of paragraph 71 of the Amended Complaint.

72.     The District denies the allegations in paragraph 72 of the Amended Complaint.

## RESPONSE TO THE FIRST CAUSE OF ACTION

73.     In response to paragraph 73 of the Amended Complaint, the District repeats and realleges its responses to paragraphs 1 through 72 above, as if fully stated here.

74.     The District admits the allegations in paragraph 74 of the Amended Complaint.

75.     The District denies the allegations in paragraph 75 of the Amended Complaint.

76.     The District denies the allegations in paragraph 76 of the Amended Complaint.

77.     The District denies the allegations in paragraph 77 of the Amended Complaint.

78.     The District denies the allegations in paragraph 78 of the Amended Complaint.

79.     The District denies the allegations in paragraph 79 of the Amended Complaint.

80.     The District denies the allegations in paragraph 80 of the Amended Complaint and denies that Plaintiff is entitled to obtain the requested relief.

## RESPONSE TO THE SECOND CAUSE OF ACTION

81.     In response to paragraph 81 of the Amended Complaint, the District repeats and realleges its responses to paragraphs 1 through 72 above, as if fully stated here.

82.     The allegations in paragraph 82 of the Amended Complaint sets forth conclusions of law to which no response is required.  To the extent a response is required, the District denies the allegations in paragraph 82.

83.     The District denies the allegations in paragraph 83 of the Amended Complaint.

84.     The District denies the allegations in paragraph 84 of the Amended Complaint.

85.     The District denies the allegations in paragraph 85 of the Amended Complaint.

86.     The District denies the allegations in paragraph 86 of the Amended Complaint and denies that Plaintiff is entitled to obtain the requested relief.

## **GENERAL DENIAL**

87.     The District denies each and every other allegation of the Amended Complaint not heretofore previously admitted, denied, or otherwise controverted.

## **AFFIRMATIVE DEFENSES**

### **AS AND FOR A FIRST AFFIRMATIVE DEFENSE**

88.     The Amended Complaint fails to state a cause of action upon which relief can be granted.

### **AS AND FOR A SECOND AFFIRMATIVE DEFENSE**

89.     Plaintiff lacks statutory standing to assert a cause of action pursuant to Title IX of the Education Amendments Act of 1972.

### **AS AND FOR A THIRD AFFIRMATIVE DEFENSE**

90.     Plaintiff lacks *parens patriae* standing to assert a cause of action pursuant to Title IX of the Education Amendments Act of 1972 or for negligent supervision.

### **AS AND FOR A FOURTH AFFIRMATIVE DEFENSE**

91.     Plaintiff's causes of action are barred by the applicable statutes of limitation.

### **AS AND FOR A FIFTH AFFIRMATIVE DEFENSE**

92.     Plaintiff's causes of action are barred by its failure to comply with conditions precedent, including as set forth in N.Y. Gen. Mun. Law 50-e.

**AS AND FOR A SIXTH AFFIRMATIVE DEFENSE**

93.     Plaintiff's claims are barred by the doctrines of estoppel, waiver, and/or ratification.

**AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE**

94.     Plaintiff's claims fail because the District did not have legally adequate notice of the alleged discriminatory conduct set forth in the Amended Complaint.

**AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE**

95.     Plaintiff's claims fail because the alleged discriminatory conduct was not sufficiently severe, pervasive, and objectively offensive, and that so undermines and detracts from the educational experience, that the students were effectively denied equal access to the District's resources and opportunities.

**AS AND FOR A NINTH AFFIRMATIVE DEFENSE**

96.     Plaintiff's claims fail because the District was not deliberately indifferent to the conduct alleged in the Amended Complaint.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE**

97.     If students of the District have been damaged as alleged in the Amended Complaint, said damages were caused in whole or in part by the conduct of persons or entities other than the District over which the District had no authority, control or right of control and for which they are not responsible.

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE**

98.     If students of the District have been damaged as alleged in the Amended Complaint, the alleged conduct of the District was not the proximate cause of such damages.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE**

99.     The equitable relief sought by Plaintiff is not available or warranted in this action.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

100.    The District reserves the right to amend this Answer to include any further defenses that may become known.

**WHEREFORE**, the District respectfully requests: (i) entry of a final judgment in its favor on all claims; (ii) an award of the costs of attorneys' fees incurred in this action; and (iii) such other and further relief as is just and proper.

Dated:  October 1, 2021

**HARRIS BEACH PLLC**

By:  */s/ Brian C. Mahoney*
Tracie L. Lopardi
Brian C. Mahoney
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Phone: (716) 200-5128
Fax: (716) 200-5201
tlopardi@harrisbeach.com
bmahoney@harrisbeach.com

Svetlana K. Ivy
99 Garnsey Road
Pittsford, New York  14534
Phone:  (585) 419-8779
Fax:  (585) 419-8801
sivy@harrisbeach.com

*Attorneys for Defendant Niagara Wheatfield*
*Central School District*

TO:    Sandra Pullman, Esq.
Senior Counsel
Office of the New York State Attorney General
Civil Rights Bureau
28 Liberty Street, 20th Floor
New York, NY 10005
Tel: 212.416.8623
sandra.pullman@ag.ny.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEOPLE OF THE STATE OF NEW YORK
LETITIA JAMES, NEW YORK STATE
ATTORNEY GENERAL,

                            Plaintiffs,                       **SCHEDULING ORDER**

    v.

                                             **21-CV-759JLS(F)**

NIAGARA-WHEATFIELD CENTRAL
SCHOOL DISTRICT,

                            Defendant.
_____

       Pursuant to the Order of the Hon. John L. Sinatra, Jr. referring the above case to the undersigned for pretrial procedures and the entry of a scheduling order as provided in Fed.R.Civ.P. Rule 16(b) and Local Rule 16.1(a), and a conference with counsel having been held on December 2, 2021, it is ORDERED that:

       1.      In accordance with Section 2.1A of the Plan for Alternative Dispute Resolution, this case has been referred to mediation.

       2.      Motions to opt out of ADR shall be filed no later than **December 16, 2021.**

       3.      Compliance with the mandatory initial disclosure requirements found in Rule 26(a)(1) of the Federal Rules of Civil Procedure will be accomplished by **December 16, 2021.**

       4.      The parties shall confer and select a Mediator, confirm the Mediator's availability, ensure that the Mediator does not have a conflict with any of the parties in the case, identify a date and time for the initial mediation session, and file a stipulation confirming their selection on the form provided by the Court no later than **December 30, 2021.**

5.      The initial mediation session shall be held no later than **February 24, 2022.**

6.      All motions to join other parties and to amend the pleadings shall be filed on or before **March 1, 2022.**

7.      All fact discovery in this case shall conclude on **August 1, 2022.**  All motions to compel fact discovery shall be filed on or before **July 1, 2022.**

8.      As the ADR program does not stay discovery, Plaintiff shall initiate discovery, through interrogatories and document requests, not later than **January 17, 2022.**

9.      Plaintiff shall identify any expert witnesses and provide reports pursuant to Fed.R.Civ.P. 26(a)(2) by **September 1, 2022.**  Defendant shall identify any expert witnesses and provide reports pursuant to Fed.R.Civ.P. 26(a)(2) by **November 1, 2022.** Any rebuttal expert disclosures are due, pursuant to Rule 26(a)(2)(D)(ii), 30 days after the other party's disclosure.  Motions to compel expert disclosures shall be filed not later than **November 15, 2022.**

10.     Dispositive motions, if any, shall be filed no later than **January 15, 2023.** Such motions shall be made returnable before the undersigned**.**

11.     Mediation sessions may continue, in accordance with Section 4.2A of the ADR Plan, until **February 1, 2023.** The continuation of mediation sessions shall not delay or defer other dates set forth in this Scheduling Order.

12.     A trial status conference pursuant to Fed.R.Civ.P. Rule 16(d) and Local Rule 16.1(f) will be held, if necessary, at a date and time to be determined by the trial judge after determination of dispositive motions.  If no dispositive motions are filed,

counsel shall immediately contact the trial judge so that a trial date status conference

can be scheduled.  At least seven (7) days prior to the trial date status conference, the

parties shall file a joint case status report setting forth the information described below.

If the parties disagree as to the information to be provided, the report must set forth their

different responses.  The joint status report shall contain:

(1)     <u>Nature of the Case</u>:  Set forth a brief description of the action, identifying

the parties, all counsel of record, the relief requested, any affirmative defense and any

relationship the case may have to other pending actions.

(2)     <u>Motion Practice</u>:  Are any motions, dispositive or non-dispositive, pending?

If so, briefly describe the motion. Explain if additional motion practice is necessary

before the matter is ready to be tried.

(3)     <u>Settlement</u>:  Describe the status of settlement negotiations.  If the parties

believe a court supervised settlement/mediation conference would be of assistance in

resolving the case or narrowing disputed issues, please state.

(4)     <u>Trial</u>:  State whether the case is ready for trial.  If not, explain why.  Set

forth an estimate of how long the trial will take and whether the case is Jury or non-jury.

No extension of the above cutoff dates will be granted except upon written

application, filed prior to the cutoff date, showing good cause for the extension.  The

attached guidelines shall govern all depositions.  Counsel's attention is directed to

Fed.R.Civ.P. 16(f) calling for sanctions in the event of failure to comply with any

direction of this court.

JA35

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: December 2, 2021
       Buffalo, New York

## GUIDELINES FOR DISCOVERY DEPOSITIONS

(1)     At the beginning of the deposition, deposing counsel shall instruct the witness to ask deposing counsel, rather than the witness's own counsel, for clarifications, definitions, or explanations of any words, questions, or documents presented during the course of the deposition.  The witness shall abide by these instructions.

(2)     All objections, except those which would be waived if not made at the deposition under Fed.R.Civ.P. 32(d)(3)(B), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the court, or to present a motion pursuant to Fed.R.Civ.P. 30(d), shall be preserved.  Therefore, those objections need not and shall not be made during the course of deposition.

(3)     Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court.

(4)     Counsel shall not make objections or statements which might suggest an answer to a witness.  Counsels' statements when making objections should be succinct and verbally economical, stating the basis of the objection and nothing more.

(5)     Counsel and their witness/clients shall not initiate or engage in private off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.

(6)     Any conferences which occur pursuant to, or in violation of, guideline (5) are a proper subject for inquiry by deposing counsel to ascertain whether there has been any witness-coaching and, if so, what.

(7)     Any conferences which occur pursuant to, or in violation of, guideline (5) shall be noted on the record by the counsel who participated in the conference.  The purpose and outcome of the conference shall also be noted on the record.

(8)     Deposing counsel shall provide to the witness' counsel a copy of all documents shown to the witness during the deposition.  The copies shall be provided either before the deposition begins or contemporaneously with the showing of each document to the witness.  The witness and the witness' counsel do not have the right to discuss documents privately before the witness answers questions about them.

(9)     There shall be only one question at a time put to a witness.  Counsel shall permit the witness to fully answer before propounding subsequent or follow-up questions.  If the witness indicates he or she does not understand the question, counsel shall simply rephrase the question.  There is to be no characterization or comment by examining counsel as to any answer given by a witness.  Should the answer reasonably appear to counsel to be unresponsive, counsel may so advise the witness and his or her counsel and have the question repeated by the stenographer from the record.

(10)    Examining counsel shall not engage in any argument with opposing counsel as to these issues, rather his objection shall be taken on the record and appropriate relief from this court may be sought upon completion of the examination.  Similarly, counsel for a witness shall not engage in any argument with examining counsel as to the objectionability of any question.  Rather, he may note his objection and permit the witness to answer the question, subject to the objection.

(11)    If a witness or his or her counsel is unclear as to any question, he or she shall so advise counsel and permit the examining counsel an opportunity to rephrase or withdraw the witness' question.  Neither witness nor counsel shall make any comment or engage deposing counsel in an argument (other than grounds therefore) about the nature of the question or the witness' request for clarification.

(12)    Examining counsel shall at no time interrupt a witness while he or she is attempting to answer a question.  Counsel shall await the witness' complete response to a question before advancing any follow-up questions or moving on to a new subject.

(13)    Examining counsel shall refrain from unnecessary on-the-record recitation or lengthy quotations from discovery materials or documents except as is necessary to put specific questions to the witness related to such material or documents.

(14)    Authority:  Fed.R.Civ.P. 16, 26(f), 30, 37(a); Hall v. Clifton Precision, 150 F.R.D. 525 (E.D.Pa. 1993).

FAILURE TO COMPLY WITH ANY THE FOREGOING MAY RESULT IN SANCTIONS PURSUANT TO FED.R.CIV.P. 37(b)(2), INCLUDING CIVIL CONTEMPT, AND ATTORNEYS FEES INCURRED BECAUSE OF A PARTY'S OR AN ATTORNEY'S NON-COMPLIANCE.  SEE FED.R.CIV.P. 16(f).

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York, | **NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS** |
| Plaintiff, | |
| -against- | |
| NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT, | Case No. 21-cv-759 |
| Defendant. | |

**MOTION BY:**                    **HARRIS BEACH PLLC**
Attorneys for Defendant, Niagara Wheatfield Central School District

**RETURN DATE:**                    _____, 2022 at _____.M. before the Hon. John L. Sinatra, Jr., District Judge of the United States District Court for the Western District of New York, 2 Niagara Square, Buffalo, NY 14202.

**SUPPORTING PAPERS:**                    Declaration of Brian Mahoney, sworn to on March 10, 2022, and Memorandum of Law, dated March 10, 2022.

**RELIEF DEMANDED:**                    (1) Order dismissing Plaintiff's First Amended Complaint against Niagara Wheatfield Central School District, with prejudice, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure; and

(2) Such other relief as this Court deems just and proper.

**ANSWERING PAPERS:**                    Pursuant to Local Rule 7(b)(2)(B), opposition papers must be filed and served no more than fourteen days after service of the motion, unless otherwise ordered by the Court.

1

**REPLY PAPERS:**  Defendant intends to file reply papers. Pursuant to Local Rule 7(b)(2)(B), reply papers must be filed and served no more than seven days after service of the opposition papers, unless otherwise ordered by the Court.

Dated: March 10, 2022

**HARRIS BEACH PLLC**

*/s/ Brian C. Mahoney*
Brian C. Mahoney
Daniel R. LeCours
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Phone: (716) 200-5128
Fax: (716) 200-5201
bmahoney@harrisbeach.com
dlecours@harrisbeach.com

Svetlana K. Ivy
99 Garnsey Road
Pittsford, New York 14534
Phone:  (585) 419-8779
Fax:  (585) 419-8801
sivy@harrisbeach.com

*Attorneys for Defendant Niagara Wheatfield*
*Central School District*

TO:   Counsel of Record (via ECF)

2

JA40

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

People of the State of New York, by LETITIA JAMES,
Attorney General of the State of New York,

                                   Plaintiff,

        -against-

NIAGARA   WHEATFIELD   CENTRAL   SCHOOL
DISTRICT,

                                   Defendant.

Case No. 21-cv-759

---

### DECLARATION OF BRIAN C. MAHONEY

BRIAN C. MAHONEY, an attorney duly admitted before this Court, declares, under penalty of perjury:

1.      I am duly admitted to practice law in this Court and the State of New York.  I am a partner with the law firm of Harris Beach PLLC, counsel for Defendant Niagara Wheatfield Central School District (the "District") in this action.  As such, I am fully familiar with the facts and circumstances surrounding this motion.

2.      I submit this declaration in support of the District's Motion for Judgment on the Pleadings seeking an Order granting this Motion in its entirety, dismissing Plaintiff's First Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(c), and granting such other and further relief as this Court deems just and proper.

3.      Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's Press Release titled "Attorney General James Sues Niagara Wheatfield Central School District for Failing to Protect Students from Sexual Assault".

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 10, 2022

Respectfully submitted,

**HARRIS BEACH PLLC**

*/s/ Brian C. Mahoney*
Brian C. Mahoney
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Phone: (716) 200-5128
Fax: (716) 200-5201
bmahoney@harrisbeach.com

# EXHIBIT
# A

## Attorney General James Sues Niagara Wheatfield Central School District for Failing to Protect Students from Sexual Assault

*School District Repeatedly Violated Title IX by Ignoring Student Complaints of Rape, Sexual Assault and Harassment, Bullying, and Failed to Take Action Against Perpetrators*

*AG James Seeks Oversight, Monitoring, and Creation of New Procedures for the School District's Handling of Sexual Assault*

NEW YORK – New York Attorney General Letitia James today **filed a lawsuit against the Niagara Wheatfield Central School District (NWCSD) for failing to respond to incidents of sexual assault and bullying in the schools**. This legal action follows an investigation launched by the Office of the Attorney General (OAG) in 2019, which found that NWCSD deliberately ignored student complaints of rape, assault, sexual harassment, and gender-based bullying, and took no action to protect them from their assailants and harassers, leading several students to drop out of school and lose access to educational opportunities. The lawsuit alleges that NWCSD repeatedly violated the federal Title IX of the Education Amendments of 1972 and New York state common law, requiring that schools provide adequate supervision of their students to protect them from harm. Attorney General James' lawsuit seeks oversight, monitoring, and the creation and implementation of new procedures for the school district and all of its schools to better address the handling of sexual assault.

"It is unconscionable that an institution tasked with educating and protecting its students turned a blind eye to the abuse, harassment, and bullying happening right in its school halls," said **Attorney General James**. "The NWCSD's inaction demonstrates that it did not have adequate systems in place to protect its students — particularly young women — when they needed it most. This indifference to student suffering has caused physical, mental, and emotional trauma, and jeopardized students' education. My office remains committed to standing against sexual assault of any kind, anywhere, and ensuring the safety and wellbeing of all New Yorkers. I will continue to use the law to hold the school district accountable for its negligence, and to empower survivors of sexual harassment and assault."

"Three years ago, the Niagara Wheatfield School District failed me. Their negligence and active disregard for my well-being only deepened my pain and suffering. In the time since, they have repeatedly tried to intimidate and silence me," said **TG, a former Niagara Wheatfield High School student who was raped by a fellow classmate**. "Today, with this lawsuit, I feel a glimmer of hope. It is time to ensure Niagara Wheatfield does not fail another student in the way they failed me. Thank you, Attorney General James, for taking a stand and joining me in this fight. I will not be silenced."

Federal law guarantees all students the right to a public education, and it provides that they shall not be deprived of this most basic right on the basis of sex. To that end, Title IX specifically requires that

schools take steps to protect students from gender-based harassment and sexual assault that create a hostile educational environment and deprive students of educational opportunities.

The OAG's investigation into NWCSD began after media reports detailed how NWCSD did nothing in response to the rape of TG by a fellow student in May 2018. TG was forced to attend school with her assailant for the year following her rape. Even after the assailant pleaded guilty to third-degree rape, he was still allowed to remain in school, and was told he could attend prom and graduation. The NWCSD finally expelled him in May 2019, but only in response to the nationwide public and media attention brought by a student walkout organized to protest the school's inaction. The school district also took no action against the students that bullied TG over her rape, but instead punished several students for participating in the walkout.

The investigation found that on multiple occasions, NWCSD did not protect students from harassment and bullying, affecting the overall school climate and harming students for a period of years. In the last several years, there have been more than 30 documented incidents of sex discrimination, sexual harassment, sexual assault, or gender-based bullying at NWCSD, yet NWCSD never created a single written safety plan, nor took any documented effort to keep students safe following these reports of rape, physical or sexual assault, or harassment. As a direct result of the hostile environment cultivated by NWCSD, at least two students dropped out of school.

The lawsuit, filed today in the U.S. District Court for the Western District of New York, seeks injunctive relief, including oversight, monitoring, and trainings for NWCSD, and the creation of new policies and practices for the handling of sexual assault, including a written safety plan for victims of harassment and assault.

This is OAG's first lawsuit against a school district for the mishandling of accusations of sexual assault, and it is the latest legal action that Attorney General James has taken in her continued national fight to ensure Title IX rights are not violated or infringed upon in any way. Attorney General James has previously worked to protect all New Yorkers from sexual harassment and sex-based discrimination at schools, in workplaces, and everywhere else. In November 2019, **Attorney General James successfully led a coalition of attorneys general in the fight to support the rights of transgender students to use bathrooms in line with their identity**. In June 2020, **Attorney General James filed a lawsuit against the U.S. Department of Education and former Education Secretary Betsy DeVos, seeking to stop a Trump Administration rule that made students more vulnerable to sexual assault** by hindering how schools investigate, address, and remedy sexual harassment in schools, colleges, and universities. In February 2020, **Attorney General James sent two comment letters to the Trump Administration, opposing federal proposals that rolled back critical anti-discrimination protections — including those for survivors of sexual harassment — for patients and for students**. In January 2020, **Attorney General James announced a settlement for 11 former employees who were sexually harassed and abused at the West Village restaurant The Spotted Pig**.

This case was led by Senior Counsel Sandra Pullman of the Civil Rights Bureau, under the supervision of Civil Rights Deputy Bureau Chief Travis England and Bureau Chief Jessica Clarke. The Civil Rights Bureau is a part of the Division for Social Justice, led by Chief Deputy Attorney General Meghan Faux, and is overseen by First Deputy Attorney General Jennifer Levy.

**Translate This Page**

Select Language

Powered by Google Translate

Translation Disclaimer

# Previous Press Releases

> January 2022
> December 2021
> November 2021
> October 2021
> September 2021
> August 2021
> July 2021
> June 2021
> May 2021
> April 2021
> March 2021
> February 2021
> January 2021
> December 2020
> November 2020
> October 2020
> September 2020
> August 2020
> July 2020
> June 2020

> May 2020
> April 2020
> March 2020
> February 2020
> January 2020
> December 2019
> November 2019
> October 2019
> September 2019
> August 2019
> July 2019
> June 2019
> May 2019
> April 2019
> March 2019
> February 2019
> January 2019

Visit the Press Release Archive

**Search:**

Please enter a search term...

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PEOPLE OF THE STATE OF NEW YORK                              REPORT
  BY LETITIA JAMES, NEW YORK STATE                          and
  ATTORNEY GENERAL,                                    RECOMMENDATION

                         Plaintiff,                21-CV-00759JLS(F)
        v.

NIAGARA-WHEATFIELD CENTRAL
  SCHOOL DISTRICT,

                        Defendant.
_____

APPEARANCES:          LETITIA A. JAMES
                    ATTORNEY GENERAL, STATE OF NEW YORK
                    Attorney for Plaintiff
                    AMANDA MARIE MEYER, and
                    SANDRA ELIZABETH PULLMAN
                    Assistant Attorneys General, of Counsel
                    28 Liberty Street
                    15th Street
                    New York, New York  10005

                    HARRIS BEACH PLLC
                    Attorneys for Defendant
                    DANIEL ROBERT LeCOURS, of Counsel
                    677 Broadway
                    Suite 1101
                    Albany, New York  12207
                          and
                    SVETLANA K. IVY, of Counsel
                    99 Garnsey Road
                    Pittsford, New York  14534
                          and
                    BRIAN CLINTON MAHONEY, and
                    TRACIE L. LOPARDI, of Counsel
                    Larkin at Exchange
                    726 Exchange Street
                    Suite 1000
                    Buffalo, New York  14210

,

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on October 6, 2021, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendant's motion for judgment on the pleadings (Dkt. 34), filed March 10, 2022.

## BACKGROUND

On June 23, 2021, Plaintiff Letitia A. James, as Attorney General of the State of New York, commenced this action on behalf of the People of the State of New York as *parens patriae* ("Plaintiff") seeking declaratory and injunctive relief to remedy alleged violations by Defendant Niagara-Wheatfield Central School District ("Defendant") of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*. ("Title IX"), and negligent supervision under New York common law.  By letter dated August 24, 2021, the Plaintiff and Defendant advised that Defendant consented to Plaintiff's request to file an amended complaint pursuant to Fed.R.Civ.P. 15(a)(2) (Dkt. 10).  Accordingly, on August 24, 201, Plaintiff filed an amended complaint (Dkt. 11) ("Amended Complaint"). On October 1, 2021, Defendant filed an answer (Dkt. 14).

On March 10, 2022, Defendant filed the instant motion for judgment on the pleadings (Dkt. 34) ("Defendant's Motion"), attaching the Declaration of Brian C. Mahoney[, Esq.] (Dkt. 34-1) ("Mahoney Declaration"), with exhibit A (Dkt. 34-2) ("Defendant's Exh. A"), and Defendant's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings (Dkt. 34-3) ("Defendant's Memorandum").  On April 7, 2022, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motion

for Judgment on the Pleadings. (Dkt. 39) ("Plaintiff's Response").  On April 21, 2022, Defendant filed Defendant's Reply Memorandum of Law in Further Support of Its Motion for Judgment on the Pleadings (Dkt. 40) ("Defendant's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED and the Clerk of Court directed to close the file.  Alternatively, Defendant's Motion should be DENIED.


## FACTS[1]

This action, brought by the People of the State of New York by Letitia James, as New York State Attorney General as *parens patriae* ("Plaintiff"), is predicated on alleged assault and sexual harassment experienced by four students ("the student victims") while attending public schools within Defendant Niagara-Wheatfield Central School District ("Defendant" or NWCSD or "the school district").  According to Plaintiff, Defendant ignored the student victims' complaints of rape, assault, sexual harassment and gender-based bullying, and failed to take any meaningful action against the perpetrators of such conduct, which interfered with the students' right to a public education guaranteed under federal law and caused the students to suffer mental, emotional, and physical injury.  The four student victims, identified only by their initials, include "T.G.," "C.C.," "A.S.," and "L.W."

## T.G.

Plaintiff alleges that in May 2018, T.G. was raped by a male student, "E.D.," while in E.D.'s home.  T.G. reported the incident to the police and E.D. was arrested.  Prior to

---

[1] Taken from the pleadings filed in this action.

JA50

the start of the 2018-2019 school year, which was the senior year of high school for

both T.G. and E.D., T.G. obtained a restraining order preventing E.D. from coming near

her outside of school.  T.G.'s mother informed Michael Mann ("Principal Mann"), then

the principal of the high school ("the high school"), attended by both T.G. and E.D., of

the restraining order.  Although T.G. had no classes with E.D., T.G. maintains E.D.

repeatedly went out of his way to encounter T.G., frequently standing outside T.G.'s

classroom, waiting for T.G. to leave to room after which E.D. would glare at her.  T.G.

notified the school counselor of these repeated interactions, but no corrective action

was taken.  E.D. was permitted to continue playing sports but T.G., a cheerleader, was

not permitted to cheer at certain games after she spoke with the Assistant District

Attorney who was prosecuting the criminal rape case against E.D.  Through the social

media application Snapchat as well as texts, T.G. received harassing messages and

was bullied about the criminal case being pursued against E.D., and despite showing

the messages to Principal Mann, no disciplinary action was taken against the students

who sent the messages.  T.G. began skipping certain classes to avoid E.D.  On May 23,

2019, E.D. pleaded guilty to third-degree rape with sentencing scheduled for July 2019.

T.G.'s mother informed the high school about E.D.'s guilty plea, but Principal Mann

informed T.G.'s mother that despite the plea, E.D. would be permitted to attend both

prom and graduation.  Later that month, T.G.'s mother posted to social media about

Defendant's failure to protect T.G. from her rapist during the school year, with many

parents noting their support in response to the post.  To express their anger with the

high school's handling of the incident, students at the high school organized and

attended a walkout ("the walkout") on May 31, 2019.  Principal Mann responded to the

JA51

walkout by blocking the high school's doorways to prevent participation by more students.  Several of the students who participated in the walkout received suspensions. After the walkout gained national attention, Defendant expelled E.D. at the conclusion of the school year.

## C.C.

Plaintiff describes C.C. as a "tomboy" who, commencing in seventh grade, while attending Defendant's middle school ("the middle school"), dressed in stereotypically male clothing, including hoodies.  Amended Complaint ¶¶ 42-43.  Throughout her years attending the middle School, C.C. was bullied and called "transgendered" and "gay" by fellow students.  *Id*.  Initially, C.C. went to the office of Dr. Peters, the middle school counselor, where C.C. cried about the harassment, with Dr. Peters allowing C.C. to do her school work in his office.  After a while, Dr. Peters stopped helping C.C. and told her to go back to her class.  Upon entering the high school in ninth grade, C.C. began to dress in more feminine clothing because of the harassment, but the bullying did not stop and the bullies instead made comments that C.C. was "fat" and "ugly," *id*. ¶ 45, with the bullies on one occasion calling C.C. a "slut" and telling C.C. to kill herself.  *Id*. ¶ 46. Because of the harassment, C.C. started missing school.  Despite C.C. and her family's repeated complaints about the bullying and harassment, Defendant took no action to create a safety plan or otherwise protect C.C. from the bullying.  C.C. attended counseling with a counselor and a psychiatrist to deal with the anxiety and depression caused by the harassment, but in December 2019, C.C. stopped attending the high school, and sought to transfer to a neighboring school in Niagara Falls, New York, but

Defendant refused to allow C.C. to transfer.  C.C. then dropped out of school and never graduated or received her high school diploma.

## A.S.

As alleged in the Amended Complaint, while attending the high school, A.S. was bullied and harassed by members of the high school's football team and friends of the football players including, *inter alia*, creating and distributing a TikTok video mocking A.S.  At a high school pep rally for the football team, the high school's sophomore class performed a chant mocking A.S. and five sophomore girls displayed a poster about A.S. stating, "We don't want you."  Amended Complaint ¶ 54.  At the pep rally's conclusion, the five girls physically assaulted A.S., delivering eleven blows to her head.  Immediately following the assault, A.S.'s mother informed Jeff White ("Mr. White"), who was then the high school's acting principal, about what transpired at the pep rally with regard to A.S.  Mr. White observed there was a winter dance scheduled to be held at the high school the next day, and that "it would be in A.S.'s best interest" if she did not attend, but allowed the students who physically assaulted A.S. at the pep rally to attend.  *Id*. ¶ 56.  Several days passed and, despite A.S.'s mother repeatedly contacting the high school and NWCSD's superintendent, no action was taken against the five girls who assaulted A.S.  Because A.S. was too afraid of returning to the high school, her family enrolled her in a private school, requiring them to pay the private school's tuition.

## L.W.

In 2017, L.W., then attending second grade at Errick Road Elementary School ("the elementary school"), was sexually assaulted in the housing complex by a neighbor ("the assailant") who was then attending fifth grade at the same elementary school.

JA53

L.W.'s mother reported the assault to law enforcement authorities after which a court[2] placed the assailant on probation, ordered the assailant's family to move from L.W.'s housing complex, and required L.W. receive therapy.  L.W.'s mother informed the elementary school's principal, Nora O'Bryan ("Principal O'Bryan"), and NWCSD superintendent Daniel Ljiljanich ("Superintendent Ljiljanich") about the assault and court proceedings, requesting the elementary school keep L.W. apart and safe from the assailant.  Superintendent Ljiljanich responded that because the assailant was entitled to an education, NWCSD would not take any action, advising that L.W. and her mother should move to protect L.W. from the assailant.  The assailant continued to harass L.W. at the elementary school where they had lunch at the same time every day, touching L.W.'s arm when she walked by and telling L.W. that she was "damaged goods" and that "no one will ever love you."  Amended Complaint ¶ 64.  On one occasion, the assailant followed L.W. into a bathroom at the elementary school and a teacher saw L.W. run out of the bathroom.  L.W.'s mother again attempted to contact Superintendent Ljiljanich who did not return her calls, and also raised her concerns to Principal O'Bryan who took no action to protect L.W.  The assailant eventually moved out of the school district,[3] after which other students bullied L.W. based on false statements the assailant made about L.W.  As a result of the assault and continuing sexual harassment, L.W. developed physical manifestations of stress and attended counseling for more than two years.

---

[2] The court is not further identified.
[3] The record does not specify when the assailant moved out of the school district.

Over the past few years, Defendant has been notified of more than thirty additional incidents of sexual assault, harassment, or gender-based bullying, yet has not created any written safety plan or documented any steps taken to ensure the safety of any of the students.  NWCSD never responded to an offer from the Rape Crisis Program at the YWCA for the Niagara Frontier to provide educational programming on domestic and dating violence and confidential advocacy for rape and sexual assault victims.  Plaintiff maintains the Rape Crisis Program is presented at every other school district in Niagara County except NWCSD.

## DISCUSSION

### 1.      Judgment on the Pleadings

Defendant moves pursuant to Fed.R.Civ.P. 12(c) ("Rule 12__"), for judgment on the pleadings.  "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).  "'To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (bracketed material in original)[4]).  "'The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief ... calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.'"  *Id*. (quoting *Lynch*, 952 F.3d at 75 (internal quotation marks omitted)). In making this assessment, all reasonable

---

[4] Unless otherwise indicated, bracketed material has been added.

inferences must be drawn in the plaintiff's favor. *Id.* (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete. *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial"). Nevertheless, "[u]ntil both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party." *Lively*, 6 F.4th at 301.

"'[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial.'" *Lively*, 6 F.4th at 301 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted)); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that dismissal under Rule 12(c) is appropriate for self-defeating complaints—*i.e.*, complaints "whose allegations show that there is an airtight defense"). Accordingly, "where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'" *Id.*, at 302 (quoting *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); and citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.")). A court thus "may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.*

In considering a Rule 12(b)(6) motion, the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit

or any statements or documents incorporated in it by reference.'" *Kalyanaram v.
American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742
F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127,
130 (2d Cir. 2001)) (bracketed material in original).  On a motion for judgment on the
pleadings, "'a court may consider ... matters of which judicial notice may be taken, [and]
documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied
on in bringing suit.'"  *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d
Cir. 2002) (internal quotation marks omitted; bracketed material and ellipses in
original)).

## 2.    Title IX

"Title IX of the Education Amendments of 1972 ("Title IX") was enacted to 'avoid
the use of federal resources to support discriminatory practices' and 'to provide
individual citizens effective protection against those practices.'"  *New York v. United
States Dep't of Educ.*, 477 F. Supp. 3d 279, 288 (S.D.N.Y. 2020) (quoting *Cannon v.
Univ. of Chicago*, 441 U.S. 677, 704 (1979)).  With certain exceptions not relevant here,
Title IX provides

> [n]o person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under
> any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

Title IX defines "program or activity" in relevant part as "all of the operations" of a school
or covered entity, "any part of which is extended Federal financial assistance."  20
U.S.C. § 1687.  Sexual harassment, including student-on-student sexual harassment, is
a "form of discrimination prohibited by Title IX" for which a school district receiving

11

federal funding can be liable under Title IX.  *A.S. v. City School District of Albany*, \_\_ F.Supp.3d \_\_; 2022 WL 356697, at \*\* 18-19 (N.D.N.Y. Feb. 7, 2022) (quoting *Posso v. Niagara Univ.*, 518 F.Supp.3d 688, 696 (W.D.N.Y. 2021) (citing *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 649-50 (1999))).

Title IX's dual purposes may be enforced through federal administrative agencies that disburse funding and "Congress expressly authorized an administrative enforcement scheme for Title IX.  The DOE is authorized to promulgate rules, regulations, and orders, and may use 'any ... means authorized by law,' including the termination of funding, to effectuate the statute's restrictions."  *New York v. United States Dep't of Educ.*, 477 F. Supp. 3d 279, 288 (S.D.N.Y. 2020) (quoting *Davis*, 526 U.S. at 638-39 (citation omitted).  Further, although Title IX "does not expressly speak to a remedy in private litigation, the Supreme Court has held that Title IX may also be enforced by a judicially implied private right of action . . . ."  *Id.* (citing Cannon, 441 U.S. at 709).  In such "cases alleging intentional discrimination, money damages are available as a remedy . . . ."  *Id.* (citing *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 76 (1992).

Preliminarily, the court considers Defendant's argument that Plaintiff lacks standing to bring the Title IX claim as *parens patriae*.

### A.    Standing

Generally, "the doctrine of standing 'requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction.'"  *New York by Schneiderman v. Utica City School Dist.*, 177 F.Supp.3d 739, 745 (N.D.N.Y. 2916) ("*Utica CSD*")

(bracketed material in original) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The plaintiff must support each element of standing "'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)). The Constitution's standing requirement, U.S.Const. Art. III, § 2, cl. 1, is a limitation on federal judicial authority to adjudicate only actual "cases" and "controversies," and requires a plaintiff "show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision*." Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 (1992)). In the absence of any explicit statutory authority to bring an action, the New York State Attorney General has standing to pursue a claim on behalf on New York's citizens only if the requirements for *parens patriae* standing are established. *See Connecticut v. Physicians Health Services of Connecticut, Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) ("'states have frequently been allowed to sue in *parens patriae* to . . . enforce federal statutes that . . . do not specifically provide standing for state attorney generals.'" (quoting *New York ex rel Vacco v. Mid Hudson Med. Group, P.C.*, 877 F.Supp.143, 146 (S.D.N.Y. 1995) ("*Mid Hudson Med. Grp.*")).

In the instant case, New York State Attorney General Letitia James brings this action pursuant to *parens patriae* authority defined as "the common-law principle that a sovereign, as parent of the country, may step in on behalf of its citizens to prevent injury

to those who cannot protect themselves*."*  *Utica CSD*, 177 F.Supp.3d 739, 745

(N.D.N.Y. 2916).  "[A] state may invoke the doctrine of *parens patriae* if it (1) articulates

a 'quasi-sovereign interest' apart from the interests of particular private parties; (2)

alleges a concrete injury to a substantial segment of its population; and (3)

demonstrates that complete relief from that injury could not be obtained by individuals in

a private lawsuit."  *Id*. at 748 (*citing People v. Peter & John's Pump House, Inc*., 914

F.Supp. 809, 811-12 (N.D.N.Y. 1996) ("*Peter & John's Pump House*").  Defendant does

not challenge Plaintiff's ability to meet the first and third requirements for *parens patriae*

standing, but only the second, *i.e.*, a concrete injury to a substantial segment of its

population.[5]

        In particular, Defendant does not deny that the victims of the alleged sexual

harassment sustained concrete injuries as a result of the harassment, but argues

Plaintiff cannot establish such injury to a substantial segment of the population because

Plaintiff does not allege a pattern of Title IX violations but, rather, "a scattering of

alleged factually-disparate student-on-student incidents, over a 3-year period, many of

which occurred off school grounds and/or when school was not in session."

Defendant's Memorandum at 6-9.  Defendant further argues that Plaintiff "has cherry-

picked four unrelated and isolated cases of alleged student-on-student harassment in

an attempt to establish *parens patriae* standing," Defendant's Memorandum at 9, and

Plaintiff's "allegations of speculative future harm to a larger segment of the student

---

[5]  The court takes judicial notice that on March 2, 2022, T.G. filed a separate action in this court, 22-CV-00172-JLS-MJR, asserting essentially the same Title IX and negligent supervision claims, against NWCSD, seeking compensatory damages.  *See Bristol v. Nassau County*, 685 Fed.Appx. 26, 28 (2d Cir. 2017) (taking judicial notice of decisions in related state criminal proceedings as "self-authenticating, publicly available records" satisfying Fed.R.Evid. 201(b)(2) (specifying facts of which judicial notice may be taken).

population do not rise to the level of an alleged injury to a sufficiently substantial segment of the population." *Id*. at 10.  In opposition, Plaintiff argues it has met its burden to plead a substantial segment of the population is affected by Defendant's discrimination and negligence based on gender because the four examples provided in the Amended Complaint are not isolated events, but are illustrative of Defendant's overall policy and practice of indifference for which Defendant has failed to take any steps to prevent or respond to future sexual assaults.  Plaintiff's Response at 18-24.  In further support of judgment on the pleadings, Defendant argues each of the cases on which Plaintiff relies involved a policy or practice of discriminatory conduct specifically targeting a discrete segment of the population whereas, in the instant case, Plaintiff has alleged injury to only the four individual student victims which is insufficient to confer *parens patriae* standing.  Defendant's Reply at 2-3.

In analyzing the second factor, *i.e.*, requiring a concrete injury to a substantial segment of its population, "[t]here is no numerical talisman to establish *parens patriae* standing. . . ."  *Peter & John's Pump House*, 914 F.Supp. at 812.  "Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("*Snapp*").  "One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers."  *Id*.  *See also People by Abrams v. 11 Cornwell Co*., 695 F.2d 34,

39-40 (2d Cir. 1982) ("*11 Cornwell Co.*") (stating the plaintiff State of New York "ha[d] alleged injury to a sufficiently substantial segment of the population" to establish *parens patriae* standing because "were this kind of incident to be tolerated and left without redress, countless others would be affected"), *vacated in part on other grounds*, 718 F.2d 22 (2d Cir. 1983).  The State must allege injury "to more than an identifiable group of individual residents," as well as "a 'practice and policy' of discrimination,' which necessarily involves a larger group of patrons."  *Peter & John's Pump House*, 914 F.Supp. at 813.  In alleging an injury to a substantial segment of the population, the State's "'use of a small group of 'aggrieved persons' as exemplars for a larger class is neither new nor objectionable . . . ."  *Id.* (quoting *People by Vacco v. Mid Hudson Medical Grp.*, 877 F.Supp. 143, 147 (S.D.N.Y. 1995) (finding *parens patriae* standing where the state alleged that a hospital discriminated against its seven to ten hearing-impaired patients because the effect of the discrimination "threatens all hearing impaired citizens and perhaps disabled citizens throughout New York.").  Further, "[a]lthough more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population."  *Snapp,* 458 U.S. at 607.  In the instant case, Plaintiff fails to establish that the alleged sexual harassment and discrimination of the four student victims within the NWCSD sufficiently establishes injury to a substantial segment of New York's population.

In particular, the Amended Complaint contains allegations pertaining to only the four student victims who attended schools within the NWCSD between 2017 and 2020,

16

which Plaintiff maintains are illustrative examples of Defendant's widespread failure to address and prevent gender-based harassment and sexual assault of students in violation of Title IX, asserting there are at least 30 additional "'documented incidents of sex discrimination, sexual harassment, sexual assault, or gender-based bullying'" within the NWCSD, yet NWCSD has failed to create any written safety plan or made any effort, despite rape, physical assault, and harassment of students, to keep students safe and to prevent or respond to future assaults.  Plaintiff's Response at 20-22 (quoting Amended Complaint ¶5, and citing *id*. ¶¶ 69-70, 72).  Such conclusory and unsupported allegations of conduct in violation of Title IX fail to support a plausible Title IX claim. *See Harris*, 572 F.3d at 72 (providing a court is not required to accept as true allegations that are no more than "legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements").  Moreover, the cases Plaintiff references in support of its argument that the alleged Title IX violations significantly affect a substantial percentage of the population for *parens patriae* standing, including  *11 Cornwell Co.*, *Utica CSD*, *Peter & John's Pump House*, *Mid Hudson Med. Grp.*, and *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford*, New York, 799 F.Supp. 272 (N.D.N.Y. 1992) ("*Support Ministries*"), are inapposite.

In *11 Cornwell Co.*, the Second Circuit held that a partnership of neighborhood property owners who acquired and then failed to sell to the State a residence which would house up to ten mentally challenged adults affected a sufficiently substantial segment of New York's population to confer *parens patriae* standing upon the State of New York. *11 Cornwell Co.,* 695 F.2d at 39–40.  According to the court, the defendant

JA64

partnership's discriminatory conduct affected not just the ten mentally challenged persons who would initially occupy the residence, but "similar people in years to come . . . ."  *Id.*

*Utica CSD* concerned a policy and practice pursuant to which district officials routinely forced all immigrant students aged 17-20 who sought to enroll at the school district's only public high school into an alternative program intended to accommodate students who were considered to be "limited English proficiency" ("LEP"), without first determining whether such students' English-speaking ability was in fact limited.  *Utica CSD*, 177 F.Supp.3d, 744.  The numerosity requirement was found sufficient because the 25% of the city's population that spoke a language other than English at home was considered to be a "relatively large and still growing population of LEP children of immigrant families that reside within the District," and thus affected by the defendant's policy.  *Id.* at 748.

In *Peter & John's Pump House*, the State sued a night club alleging the club employed discriminatory policies and practices aimed at preventing admission to African Americans by requiring presentation of proof of age and imposing a dress code on African Americans but not on white patrons.  *Peter & John's Pump House*, 914 F.Supp. at 811.  Although the complaint provided eight examples of the defendant's alleged discriminatory conduct involving 16 individuals over an eight-month period, the court found the substantial segment requirement for *parens patriae* standing was met because the allegations involved "generalized discrimination against potential nightclub patrons," the alleged discrimination affected a large population, and there was "no

accurate method to determine how many African Americans may have been denied access to the Club because of their race." *Id*. at 813.

At issue in *Mid Hudson Med. Grp.* was whether the defendant hospital 's failure to provide interpretive services for its hearing impaired patients affected a substantial segment of New York's population. *Mid Hudson Med. Grp.*, 877 F.Supp. at 147. Because the plaintiff supplied data indicating the deaf population of New York may be as high as 7 %, the court extrapolated that the defendant's alleged discriminatory conduct affected a substantial segment of the State. *Id*. at 148.

Finally, in *Support Ministries*, New York challenged as arbitrary and unlawful discrimination a local village ordinance denying zoning approval for a residence for homeless persons afflicted with AIDS. *Support Ministries*, 799 F.Supp. at 275, 278.  In finding the State alleged the Defendant's conduct posed a significant risk of harm to a substantial segment of the population, the court considered that although the proposed residence intended to provide housing for only 15 homeless persons with AIDS at one time, it was anticipated that other homeless persons with AIDS would be housed there in the future because the population of homeless people with AIDS was "not insubstantial and is ever increasing." *Id*. at 277.  On this basis, the court found the alleged discriminatory conduct affected a substantial segment of the population for purposes of *parens patriae* standing. *Id*. at 278.

It is significant that there is a common thread in the cases on which Plaintiff relies, to wit, that in each referenced case, the alleged discriminatory conduct, policy, or practice would have routinely been enforced against a member of the targeted population.  For example, in *Peter & John's Pump House*, the State alleged that any

African American who attempted to gain entry into the defendant nightclub would have been required to present proof of age and comply with a dress code, a policy which was not enforced with regard to white patrons.  In contrast, in *People of the State of New York v. Holiday Inns, Inc.*, 656 F.Supp. 675 (W.D.N.Y. 1984) ("*Holiday Inns*"), the State, suing as *parens patriae*, alleged claims against the defendant for age and gender discrimination in violation of federal and state employment laws based on the defendant's practices in hiring and discharging employees.  *Holiday Inns*, 656 F.Supp. at 677.  The court found the State's "assertions that countless other employees *may* be subjected to defendants' discriminatory practice of discharging older employees and that younger employees and customers of defendants would be deprived of the opportunity to work with or be served by employees of all ages" failed to allege an injury to a substantial segment of New York's population.  *Id.* (italics in original).  In other words, the asserted injury attributed to the defendant's alleged discriminatory practice against other employees was speculative.

In the instant case, there Amended Complaint does not plausibly allege that Defendant maintains a policy or practice that Defendant necessarily would fail to take any corrective action in response to any student attending a school within the NWCSD who complains about gender-based harassment and sexual assault, or that having a written safety plan would necessarily prevent such conduct by other students within NWCSD.  *See Snapp,* 458 U.S. at 607 ("more must be alleged than injury to an identifiable group of individual residents").  Nor is Plaintiff's conclusory assertion that more than 30 additional incidents of sexual assault and gender-based harassment sufficient to establish concrete injury.  *Utica CSD*, 177 F.Supp.3d at 748 (*parens patriae*

standing requires "a concrete injury to a substantial segment of its population").
Accordingly, Defendant's Motion should be GRANTED as to Plaintiff's Title IX claim for
failure to establish the substantial segment requirement for *parens patriae* standing.

Alternatively, should the District Judge disagree with the determination that
Plaintiff has failed to allege Defendant's violation of Title IX resulted in injury to a
substantial segment of the population, judgment on the pleadings should nevertheless
be granted because Plaintiff cannot allege the requisite injury to establish a valid case
or controversy.  In particular, Plaintiff seeks only declaratory and injunctive relief.
Amended Complaint, Prayer for Relief.  "It goes without saying that those who seek to
invoke the jurisdiction of the federal courts must satisfy the threshold requirement
imposed by Article III of the Constitution by alleging an actual case or controversy."  *City
of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citing cases).  Significantly, the
plaintiff must have a "personal stake in the outcome."  *Id*.

In the instant case, Plaintiff's allegations of past injury alone do not suffice to
establish an injury in fact for a plaintiff seeking declaratory or injunctive relief. *See Levin
v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992); *Golden v. Zwickler*, 394 U.S. 103, 109-10
(1969.  Abstract injury is not enough; rather, the plaintiff must show that it "has
sustained or is immediately in danger of sustaining some direct injury" as the result of
the challenged official conduct and the injury or threat of injury must be both "real and
immediate," not "conjectural" or "hypothetical."  *Lyons,* 461 U.S. at 101-02.  *See
Farmland Dairies v. McGuire*, 789 F. Supp. 1243, 1250 (S.D.N.Y. 1992) (a plaintiff must
allege a "real and immediate threat that the injury will be continued or repeated").  "To
have Article III standing to sue in federal court, plaintiffs must demonstrate, among other

things, that they suffered a concrete harm.  No concrete harm, no standing."

*TransUnion LLC v. Ramirez*,  __ U.S. __, 141 S. Ct. 2190, 2200 (2021) (citing *Spokeo,*

*Inc.* v. *Robins*, 578 U.S. 330, 340 (2016)).  "Central to assessing concreteness is

whether the asserted harm has a 'close relationship' to a harm traditionally recognized

as providing a basis for a lawsuit in American courts—such as physical harm, monetary

harm, or various intangible harms including . . . reputational harm."  *Id.* (quoting *Robins*,

578 U.S. at 341.

In the instant case, Plaintiff cannot pursue injunctive relief requiring policy

changes by NWCSD under Title IX with regard to any student who has graduated or

otherwise left the school district because no such victim could benefit from the relief

sought.  *A.S. v. City Sch. Dist. of Albany*, 2022 WL 356697, at *26 (N.D.N.Y. Feb. 7,

2022) (citing *Cook v. Colgate University*, 992 F.2d 17, 19 (2d Cir. 1993), and *B.C. v.*

*Mount Vernon Sch., Dist.*, 660 Fed.Appx. 93, 96 (2d Cir. 2016)).  Because T.G. has

graduated from high school, C.C. dropped out of school, and A.S. transferred to a

private school, Plaintiff cannot benefit from any changes to Defendant's policies as to

those victims.  Further, with regard to L.W. who was in second grade in 2017 and, thus,

unlikely to have graduated from high school, not only does the Amended Complaint fail

to allege whether L.W. remains a student within NWCSD, but the Amended Complaint

also fails to allege L.W. continues to experience any sexual assault or gender-based

bullying or harassment. Thus, insofar as the Amended Complaint seeks injunctive relief

changing NWCSD's policies or practices, Plaintiff lacks standing to pursue such relief.

Defendant's Motion thus should be granted for lack of standing.

### B.    Elements of Title IX Claim

Should the District Judge disagree that Plaintiff's Title IX claim should be dismissed for lack of standing based on a failure to establish the *parens patriae* doctrine's injury to a substantial segment of the population requirement, or because the declaratory and injunctive relief sought is not available in the circumstances in which this action is brought, the court alternatively considers whether Defendant should be granted judgment on the pleadings based on the elements of the Title IX claim.[6] Plaintiff contends that the District violated Title IX by acting with deliberate indifference to sexual harassment toward T.G., C.C., A.S. and L.W., which resulted in excluding the four student victims from meaningful participation at schools within NWCSD.  As stated, relevant to the instant case, Title IX provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The elements for a Title IX student-on-student sexual harassment claim include "that '(1) a federally funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or

---

[6] Although in *Cannon*, the Court recognized Title IX may be enforced by a judicially implied private right of action, *Cannon*, 441 U.S. at 709, whether such private right of action includes an action brought by a state as *parens patriae* as in the instant case was not addressed.  Further, *Cannon* recognized the implied right of action only for monetary damages for intended beneficiaries of federal financial support for education, *id.*, in contrast to the instant action where Plaintiff seeks only declaratory and injunctive relief. *See Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011) (recognizing the Supreme Court "strictly curtail[s] the authority of the courts to recognize implied rights of action . . . ." (citing *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001)).  In the instant case, the Amended Complaint fails to allege the Attorney General, acting in *parens patriae*, is a beneficiary of federal financial support within the scope of Title IX.  *Cannon*, 441 at 709.

benefits.'" *A.S. v. City Sch. Dist. of Albany*, 2022 WL 356697, at \*19 (N.D.N.Y. Feb. 7, 2022) (quoting *Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at \*4 (S.D.N.Y. Nov. 26, 2018) (citing *Davis*, 526 U.S. at 650)); *Posso*, 518 F.Supp. 3d at 696 (same). *See also AA by BB v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp.3d 501, 510–11 (W.D.N.Y. 2021) (describing the elements for student-on-student harassment claims under Title IX as including "(1) school authorities had actual knowledge of the harassment or the risk thereof; (2) they were deliberately indifferent to it; and (3) the harassment was so 'severe, pervasive, and objectively offensive' that it deprived the student of access to the educational opportunities and benefits provided by the school." (quoting *Carabello v. New York City Dept. of Educ.*, 928 F. Supp.2d 627, 638 (E.D.N.Y. 2013)).

Acknowledging "the inevitability of student misconduct" and the "practical realities of responding to student behavior," the Supreme Court has explained that this standard will not be met by "simple acts of teasing and name-calling," nor will it be met by a "single instance of one-on-one peer harassment" unless the instance is "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 652-53. As such, when analyzing whether the conduct alleged meets the "severe, pervasive, and objectively offensive" requirement, the "constellation of surrounding circumstances, expectations, and relationships" must be considered to determine whether the conduct alleged was sufficiently severe, sufficiently frequent or pervasive, or both, to have denied the victim equal access to educational opportunities. *Davis*, 526 U.S. at 630 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Additionally, a school has actual

knowledge of harassment when a school official with "authority to address the alleged discrimination and to institute corrective measures" has actual knowledge of the discrimination. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011). Further, a school is deliberately indifferent to sexual harassment when its response is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648–49. In the instant case, the parties do not dispute that NWCSD is a federally funded educational institution as required for the first element of a Title IX claim. Accordingly, the court addresses only the remaining three elements as to each of the student victims.

With regard to T.G., the rape by E.D. occurred outside of NWCSD property. Nevertheless, at the start of the school year following the rape, T.G. obtained a restraining order preventing E.D. from coming near her outside of school, and T.G.'s mother informed the then high school principal Mann of the restraining order. Despite being aware of the restraining order, E.D. repeatedly went out of his way in school to encounter T.G. who notified the school counselor of these repeated interactions, but no corrective action was taken. T.G. was also repeatedly subjected to harassment through social media, yet even after showing the messages to Principal Mann, no disciplinary action was taken against E.D. or the students who sent the messages. T.G. eventually began skipping certain classes to avoid E.D. Even after T.G.'s mother informed the high school about E.D.'s guilty plea in May 2019 to third-degree rape Principal Mann informed T.G.'s mother that despite the plea, E.D. would be permitted to attend both prom and graduation. It was not until May 31, 2019, when high school students, to express their anger with the high school's handling of the incident, organized a walkout

that garnered national media attention, that Defendant expelled E.D. at the conclusion

of the school year.  Defendant's alleged failure to protect T.G. from continued

harassment from her attacker, E.D., and other students who sided with E.D., after being

made aware of the rape for which E.D. was being criminally prosecuted, that T.G. had

obtained a restraining order preventing E.D. from coming near T.G., and the

subsequent harassment T.G. endured by other students both in person and over social

media, such that T.G. began skipping classes, as well as the decision that T.G., after

speaking with the prosecutor handling the criminal action against E.D., should not be

permitted to cheer at certain games, can be construed as establishing Defendant was

deliberately indifferent to the harassment T.G. endured throughout her senior year.  *See*

*AA by BB*, 527 F.Supp.3d at 510-13 (denying defendant school district's motion to

dismiss Title IX claim for student-on-student harassment where the defendant school

district "received notice of the [initial] harassing conduct, it had a duty under Title IX to

take some action to prevent the further harassment" such that the defendant's failure to

do so was "clearly unreasonable" in light of the assailant's openly mocking and ridiculing

the victim in front of other students and recruiting other students to do likewise).  *See*

*also Doe ex rel, A.N. v. East Haven Bd. of Education*, 430 F.Supp.2d 54, 60 (D.Conn.

2006) (plaintiff student prevailed on Title IX claim where victim student was raped by

two other students off school property, after which the victim was sexually harassed by

classmates at school for three months).  Accordingly, Plaintiff meets the criteria for

plausibly pleading a Title IX claim with regard to T.G.

Turning to C.C. who, in middle school, dressed in stereotypically male clothing,

for which she was bullied and called "transgender" and "gay," and upon entering high

school began to wear more feminine clothing following which she was bullied and called "fat," "ugly," and a "slut" and urged to kill herself, both Dr. Peters, the middle school counselor, as well the superintendent were aware of the bullying, yet took no steps to stop the harassment and ever refused to allow C.C. to transfer to a different school to escape the bullying.  C.C. attended counseling to deal with the stress caused by the harassment but, in December 2019, after C.C. failed to obtain any relief from the bullying and was not allowed to attend a different school, C.C. dropped out of school and never graduated high school.  Courts within the Second Circuit have found the continuous bullying related to a student's sexuality can be sufficiently "severe, pervasive, and objectively offensive," *Davis*, 526 U.S. at 653, to support a Title IX claim. *See*, *e.g.*, *Estate of D.B. v. Thousand Islands Central School District*, 169 F.Supp.3d 320, 332-33 (N.D.N.Y. 2016) (recognizing Tilte IX claim for harassment based on sexual orientation); *Doe ex rel, A.N.*, 430 F.Supp.2d at 60 (affirming jury verdict against defendant school district on Title IX claim where victim student was sexually harassed by classmates for three months after being sexually assaulted by two other students). The allegations with regard to C.C. thus are sufficient to plausibly establish a Title IX claim.

The allegations regarding A.S. include that while attending the high school, A.S. was bullied and harassed by members of the high school's football team and friends of the football players including creating and distributing through social media a video mocking A.S, performing a chant at a high school pep rally mocking A.S, displaying a poster conveying that A.S. was not wanted and physically assaulting A.S., striking A.S. on the head eleven times.  Although A.S. immediately informed Mr. White, the then high

school acting principal about the assault, White's response was to advise A.S. not to attend an upcoming school dance which A.S.'s attackers were allowed to attend. A.S.'s mother made additional calls to the high school, as well as to the NWCSD's superintendent, but no disciplinary action was ever taken with regard to the assailants. Because A.S. was too afraid to return to the high school, her family enrolled A.S. in a private school for which they had to pay tuition. Again, Defendant is alleged to have had actual knowledge of the harassment toward A.S., yet refused to take any action to stop the harassing conduct, such that A.S. did not feel safe returning to the high school. Although it is not clear whether Defendant had knowledge of the harassment A.S. encountered prior to the assault, Defendant's subsequent knowledge that A.S. endured an attack by five classmates during which A.S. was struck in the head eleven times is sufficiently severe "to overcome the lack of pervasiveness for purposes of Title IX liability . . ." and placed Defendant on notice that A.S.'s assailants posed a substantial risk of harm to A.S., such that the school environment for A.S. was sufficiently hostile that Defendant's failure to take any corrective action deprived A.S. of educational opportunities. *See AA by BB*, 527 F.Supp.3d at 512 (after receiving notice of the initial harassing conduct, the defendant school district had a duty under Title IX to take action to prevent further harassment in a manner not clearly unreasonable). The claim is therefore plausibly alleged as to A.S.

The allegations are also sufficient to establish a Title IX claim with regard to L.W. who, in 2017, was in second grade when she was sexually assaulted by a neighbor then attending fifth grade at the same elementary school. Although L.W.'s mother informed Principal O'Bryan, then the elementary school's principal, and NWCSD

Superintendent Ljiljanich about the assault and the court proceedings, including that the assailant was on probation, the assailant's family was ordered to move from L.W.'s housing complex, and that L.W. receive therapy, Superintendent Ljiljanich responded that NWCSD would take no action to protect L.W. from the assailant who was entitled to an education, suggesting to L.W.'s mother that she should move to a different school to protect L.W.  The assailant then continued to both physically and verbally harass L.W. at the elementary school where they had lunch at the same time every day, even following L.W. into the bathroom.  L.W.'s mother's further attempts to contact Superintendent Ljiljanich and Principal O'Bryan were futile.  After the assailant eventually moved out of the school district, other students at the elementary school bullied L.W. based on false statements the assailant made about L.W., and the assault and continuing sexual harassment caused L.W. to develop physical manifestations of stress for which L.W. attended counseling for more than two years.  These allegations support sufficiently "severe, pervasive, and objectively offensive" conduct to place Defendant on notice that L.W. faced a substantial risk of harm from the environment at the elementary school for purposes of establishing a Title IX claim.  *See AA by BB*, 527 F.Supp.3d at 510-13 (defendant school district's receipt of notice of student-on-student harassment imposes duty to take reasonable action to prevent further harassment); *Doe ex rel, A.N.*, 430 F.Supp.2d at 60 (off-campus rape of plaintiff student followed by on-campus sexual harassment for three months by classmates established Title IX claim). Accordingly, the allegations pertaining to L.W. plausibly establish a Title IX claim for student-on-student harassment.

Accordingly, the record does not support judgment for Defendant based on the pleadings.

### 3.    Negligent Supervision

#### A.    Supplemental Jurisdiction over State Claim

Should the District Judge agree with the recommendation that the Title IX claim be dismissed for lack of standing, the dismissal of all federal claims leaves the decision whether to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) over the remaining state claims a matter within the court's discretion.  *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 304-05 (2d Cir. 2003) (reviewing for abuse of discretion federal district court's decision to decline exercising supplemental jurisdiction over state law claims after all federal law claims have been eliminated prior to trial).  In discerning whether to exercise supplemental jurisdiction after dismissal of all federal claims, courts must balance judicial economy, convenience, fairness, and comity.  *Id*. (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50 (1988)).  In the instant case, insofar as Plaintiff asserts a state law claim for negligent supervision, the court should refrain from exercising supplemental jurisdiction over the state claim because the federal Title IX claim has been dismissed and the state claim raises, as in this case, complex questions as to the scope of the state claim.  *See Shahriar v. Smith & Wollensky Restaurant Group, Inc*., 659 F.3d 234, 245 (2d Cir. 2011) (citing 28 U.S.C. § 1367(c)).  Alternatively, the court addresses whether the Amended Complaint sufficiently establishes a common law negligent supervision claim.[7]

---

[7] The court notes the same "plausibility" standard applies to its review of Plaintiff's state common law claim.  *See Khan v. Yale University*, 27 F.4th 805, 817 (2d Cir. 2022) (reviewing dismissal of state law claim for plausibility pursuant to Rule 12(b)(6)).

**B.     Elements of Negligent Supervision Claim**

Preliminarily, as discussed, the court initially recommends dismissal of the Title IX claim for lack of jurisdiction, *see* Discussion, *supra*, at 22, and with the dismissal of the Title IX claim before the court on federal subject matter jurisdiction, given the early stage of the instant action, the court should refrain from exercising supplemental jurisdiction over Plaintiff's negligent supervision claim pursuant to New York common law.  *See* Discussion, *supra*, at 30.  Alternatively, the court addresses whether Defendant is entitled to judgment on the pleadings on the negligent supervision claim in the interest of completeness should the District Judge disagree with the recommendation that the matter be dismissed in its entirely for lack of jurisdiction on the Title IX claim.

Under New York law, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision."  *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 646 (E.D.N.Y. 2013).  "The attendant duty of care has been described as that of a 'reasonably prudent parent,' and as such, 'school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily ... absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act.'"  *AA by BB*, 527 F. Supp.3d at 507 (quoting *Mirand v. City of New York*, 637 N.E.2d 263, 266 (N.Y. 1994)).

In the instant case, Defendant argues Plaintiff's negligent supervision claim is deficient with regard to each of the four student victims because Plaintiff has failed to allege Defendant had sufficient specific knowledge or notice of the dangerous conduct to which each student was subjected.  Defendant's Memorandum at 17-18.  Defendant further maintains the injunctive relief Plaintiff seeks is not available on the negligent supervision claim.  *Id*. at 21-22.  In opposition, Plaintiff argues it has sufficiently alleged Defendant violated its duty to adequately supervise its students because Defendant had specific knowledge and notice of the alleged harmful behavior, Plaintiff's Response at 14-15, as well as that Defendant's negligence in failing to address the harmful behavior proximately caused the victims' injuries.  *Id*. at 15-16.  Plaintiff also maintains it may seek injunctive relief to redress its negligent supervision claim.  *Id*. at 16-18.  In further support of its motion, Defendant repeats the argument that Plaintiff failed to plead sufficient knowledge or notice of the dangerous conduct suffered by the four student victims to support a negligent supervision claim, Defendant's Reply at 8-9, and that while Plaintiff seeks injunctive relief, generally, only monetary damages are available on a negligent supervision claim.  *Id*. at 9-10.

Preliminarily, insofar as Plaintiff seeks injunctive relief on its negligent supervision claim, as discussed above in connection with standing to pursue the Title IX claim, Discussion, *supra*, at 20-22, insofar as the Amended Complaint seeks injunctive relief changing NWCSD's policies or practices, such relief is not available where the action complained of has ceased.  Accordingly, judgment on the pleadings should be granted in favor of Defendant on Plaintiff's negligent supervision claim.  Alternatively,

the pleadings establish the elements of a common law negligent supervision claim under New York law.

In particular, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Mirand*, 637 N.E.2d at 266 (citing *Lawes v. Board of Educ.,* 213 N.E.2d 667, 668-69 (N.Y. 1965); *Decker v. Dundee Cent. School Dist.,* 151 N.E.2d 866, 868 (N.Y. 1958)). Nevertheless, schools "are not insurers of safety" and "cannot reasonably be expected to continuously supervise and control all movements and activities of students; therefore, schools are not to be held liable 'for every thoughtless or careless act by which one pupil may injure another.'" *Id*. (quoting *Lawes,* 213 N.E.2d at 668-69; *Ohman v. Board of Educ.,* 90 N.E.2d 474, 475 (N.Y. 1949)). The duty owed to students is derived from the fact that "a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians." *Id.* (citing *Pratt v. Robinson,* 349 N.E.2d 849, 852 (N.Y. 1976)). Further, "[i]in determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated," and actual or constructive notice prior to similar conduct is sufficient. *Id.*, 637 N.E.2d at 267. "Even if a breach of the duty of supervision is established, the inquiry is not ended; the question arises whether such negligence was the proximate cause of the injuries sustained." *Id*.

In the instant case, there are sufficient allegations establishing Defendant breached its duty to supervise the students with regard to each of the four student victims.  Specifically, as discussed, Facts, *supra*, at 3-7, in each of the pleaded scenarios, administrative personnel were aware of the alleged harassing and assaultive conduct of students attending schools within NWCSD, but took no action to ensure the safety of the student victims.  As a result, each of the student victims suffered injuries including missing classes (T.G., who did not feel safe attending certain classes); dropping out of school (C.C., who dropped out of school because she did not feel safe); transferring to a private school (A.S., who transferred to a private school after being physically assaulted and the high school administrators and NWCSD superintendent refused to take any disciplinary action against the assailants), and developing stress and anxiety requiring counseling for two years (L.W., who, after school officials refused to take any action to keep her assailant away from her, was forced to encounter her assailant every day at lunch who continued to harass her).  *See Eskenazi-McGibne v. Connetquot Central School District*, 89 N.Y.S.3d 298-99 (2d Dept. 2018) (affirming denial of defendant school district's motion to dismiss for failure to state a claim for, *inter alia*, negligent supervision where plaintiff student alleged mental and emotional injuries resulting from repeated bullying and harassment by a fellow student for which the plaintiff student's parents repeatedly complained to the school district, teachers, and administrative officials); *Wilson v. Vestal Central School District*, 825 N.Y.S.2d 159, 160-61 (3d Dept. 2006) (affirming trial court's denial of defendant school district's motion for summary judgment on negligent supervision claim where plaintiff was injured when classmate pulled a chair out from under her while seated in the school cafeteria,

because there were issues of fact regarding the defendant's knowledge of prior conflicts between the plaintiff and her classmate dating to middle school where the classmate exhibited aggressive an confrontational behavior toward the plaintiff).  Accordingly, should the District Judge reach the elements of Plaintiff's negligent supervision claim on Defendant's Motion, then Defendant should be DENIED judgment on the pleadings as to such claim.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Dkt. 34) should be GRANTED and the Clerk of Court directed to close the file.  Alternatively, Defendant's Motion should be DENIED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 11th, 2022
Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May 11th, 2022
            Buffalo, New York

36

JA83

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X      Case No. 21-759

People of the State of New York, by LETITIA JAMES,
Attorney General of the State of New York,

                                          Plaintiff,                      **PLAINTIFF'S**
        -against-                                         **OBJECTIONS TO**
                                                    **REPORT &**
NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT,      **RECOMMENDATION**

                                      Defendant.

-------------------------------------------------------------------------X

**<u>THE PEOPLE OF THE STATE OF NEW YORK'S OBJECTIONS TO MAGISTRATE
JUDGE LESLIE G. FOSCHIO'S MAY 11, 2022 REPORT AND RECOMMENDATION
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 2

    I.    Statement of Facts............................................................................ 2

    II.   Relevant Procedural History .......................................................... 5

ARGUMENT ........................................................................................... 6

    I.    The Magistrate Judge is Wrong that Plaintiff Fails to Plead a Substantial Segment of the Population is Affected by the District's Conduct...................................................... 8

    II.   Contrary to the Magistrate Judge's Recommendation, the State Alleges Injury for the Purposes of Article III Standing................................................................. 15

        a.   Plaintiff Has Article III Standing Because It Filed Suit on Behalf of Students Who are Directly Harmed by the District's Ongoing Discrimination. ................................................. 16

        b.   Plaintiff Has Standing to Obtain Injunctive Relief Because It Has Alleged the Likelihood of Future Harm............................................................. 18

    III.   At Minimum, the State Should Be Granted Leave to Amend....................................... 21

CONCLUSION........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*,
    811 F.Supp.2d 803 (S.D.N.Y.2011)..........................................................................20

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
    458 U.S. 592 (1982)............................................................................................11

*Amadei v. Nielsen*,
    348 F. Supp. 3d 145 (E.D.N.Y. 2018) ....................................................................20

*An v. City of New York*,
    No. 16-CV-5381 (LGS), 2017 WL 2376576 (S.D.N.Y. June 1, 2017) ...................21

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)....................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................6

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).................................................................................................21

*Com. Of Mass. v. Bull HN Info. Systems, Inc.*,
    16 F. Supp. 2d 90 (D. Mass. 1998) .........................................................................15

*County of Riverside v. McLaughlin*,
    500 U.S. 44 (1991)..................................................................................................19

*Curtis v. City of New Haven*,
    726 F.2d 65 (2d Cir. 1984).......................................................................................18

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998).....................................................................................18

*Doe v. Metro. Gov. of Nashville & Davidson Cty.*,
    —F.4th—, 2022 WL 1573848 .................................................................................13

*Floyd v. City of New York*,
    283 F.R.D. 153 (S.D.N.Y. 2012) ............................................................................22

*Frederick v. Lawson*,
    481 F.Supp.3d 774 (S.D. Ind. 2020) .......................................................................19

*Friends of the Earth, Inc. v. Laidlaw Environ'tl Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)...................................................................................... 18-19

*League of Women Voters of the United States v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016) ...............................................................................19

*Ligon v. City of New York*,
    288 F.R.D. 72 (S.D.N.Y.2013) ...........................................................................20

*Ligon v. City of New York*,
    925 F.Supp.2d 478 (S.D.N.Y. 2013).....................................................................20

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) .................................................................................7

*Lynch v. City of New York*,
    952 F.3d 67 (2d Cir. 2020)..................................................................................7

*Nat'l Cong. for Puerto Rican Rts. v. City of New York*,
    75 F. Supp. 2d 154 (S.D.N.Y.).............................................................................20

*New York by Schneiderman v. Utica City Sch. Dist.*,
    177 F. Supp. 3d 739 (N.D.N.Y. 2016)............................................................ passim

*Oliver Schools, Inc. v. Foley*,
    930 F.2d 248 (2d Cir. 1991)................................................................................21

*Palmer v. Monroe Cty. Sheriff*,
    378 F. Supp. 2d 284 (W.D.N.Y. 2005) .............................................................. 6-7

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001)................................................................................6

*People by Abrams v. Holiday Inns, Inc.*,
    656 F. Supp. 675 (W.D.N.Y. 1984) ................................................................ 14-15

*People by Vacco v. Mid Hudson Med. Grp., P.C.*,
    877 F. Supp. 143 (S.D.N.Y. 1995) ............................................................ 13-14, 17

*People ex rel. Cuomo v. Liberty Mut. Ins. Co.*,
    861 N.Y.S.2d 294 (App. Div. 2008)......................................................................8

*People by Abrams v. 11 Cornwell Co.*,
    695 F.2d 34 (2d Cir. 1982), vacated in part on other grounds, 718 F.2d 22 (2d
    Cir. 1983) ......................................................................................................9

*People v. Peter & John's Pump House*,
    914 F. Supp. 809 (N.D.N.Y. 1996) ............................................................... passim

*Roe v. City of New York,*
  151 F.Supp.2d 495 (S.D.N.Y. 2001)..................................................................20

*Shain v. Ellison,*
  356 F.3d 211 (2d Cir. 2004)...........................................................................18

*Stinson v. City of New York,*
  282 F.R.D. 360 (S.D.N.Y.2012) ......................................................................20

*Support Ministries For Persons With AIDS, Inc. v. Vill. of Waterford, N.Y.,*
  799 F. Supp. 272 (N.D.N.Y. 1992) ................................................................9, 13

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC.,*
  127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..............................................................14

*Woodworth v. Erie Ins. Co.,*
  No. 05-CV-6344 CJS, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009).......................6

*Zeno v. Pine Plains Cent. Sch. Dist.,*
  702 F.3d 655, 669 (2d Cir. 2012)............................................................... 13-14

**FEDERAL STATUTES**

20 U.S.C.
  § 1682 et seq. ............................................................................................2

28 U.S.C.
  § 636(b)(1)(B)-(C) ...................................................................................1, 5

**RULES**

Fed. R. Civ. P. 12(b) ......................................................................................6

Fed. R. Civ. P. 12(c) ...................................................................................6, 14

Fed. R. of Civ. P. 72(b) ..................................................................................1

Fed. R. Civ. P. 72(b)(3)...................................................................................6

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Federal Rule of Civil Procedure 72(b), Plaintiff the People of the State of New York, by their Attorney General Letitia James ("Plaintiff" or the "State"), submits these Objections to Magistrate Judge Leslie G. Foschio's May 11, 2022 Report and Recommendation (the "R&R") granting the motion of Defendant Niagara Wheatfield Central School District (the "District" or "NWCSD") for judgment on the pleadings, or in the alternative denying the motion.

## PRELIMINARY STATEMENT

Plaintiff respectfully submits that the R&R be rejected or modified.  The Magistrate Judge erred in holding—despite case law to the contrary—that the State does not have standing pursuant to its authority under the well-established doctrine of *parens patriae*.  Plaintiff has clearly alleged that a substantial segment of the population is affected by the District's ongoing policy and practice of deliberate indifference to gender-based bullying, harassment, and assault.

The Magistrate Judge also erred in concluding that the systemic injunctive relief the State seeks in this matter is inappropriate.  Defendant did not raise this argument in its motion as to Plaintiff's Title IX claim, nor could it.  Courts in this jurisdiction have made clear that where, as here, the State seeks relief in its capacity as *parens patriae* to vindicate the societal interests it is charged to protect, both declaratory and injunctive relief is appropriate.  Further, Plaintiff has clearly pled that harm to current or future students in the District is ongoing and likely, which establishes its standing to seek injunctive relief.

Finally, to the extent the Court agrees that the First Amended Complaint ("FAC") be dismissed, the State respectfully requests leave to amend.

## BACKGROUND

### I.    Statement of Facts

In the FAC, Plaintiff alleges that the District violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682 et seq. ("Title IX") and negligently supervised its students, by maintaining a policy and practice of deliberate indifference to gender-based bullying, harassment, and assault that has and will deprive its students of educational opportunities.  Despite its legal and moral obligations, "the "NWCSD repeatedly and egregiously failed the very students it was required by law to educate and to protect" by "deliberately and callously ignore[ing] complaints by student of rape, assault, sexual harassment, and gender-based bullying, and . . . fail[ing] to take any meaningful action against perpetrators or to protect victims from future harassment."   FAC, ECF No. 11 ¶ 3.  As examples, the FAC provides details of victims, as described below.

**TG:**  In May 2018, TG was raped at her home by a male classmate, ED.  *Id.* ¶ 16.  ED was arrested after TG reported the incident, and TG was also granted a restraining order against him.  *Id.* ¶¶ 17-18.  When TG's mother met with the principal and informed him of the rape and the restraining order, he told her that ED would not be punished and created no plan to ensure ED was kept away from TG.  *Id.* ¶¶ 20-21.  ED continued to harass TG by deliberately seeking her out in the halls.  *Id.* ¶ 22.  TG informed her guidance counselor, but no action was taken; as a result, TG suffered a panic attack while at school.  *Id.* ¶ 23.  ED and other students continued to harass TG at school for the remainder of the year, but no discipline was issued.  *Id.* ¶¶ 27-28, 30.

In May 2019, ED pled guilty to third-degree rape.  *Id.* ¶ 32.  The school was notified but took no action; ED was allowed to attend all school functions, including prom and graduation.  *Id.*

¶¶ 33-35. ED was only disciplined at the conclusion of the school year, after national media reported on a student-led walkout that protested the District's inaction. *Id.* ¶¶ 36-41.

**CC:** CC was severely bullied during her time at the middle school and high school in the District. *Id.* ¶ 42. Beginning in seventh grade, she was mocked for dressing as a tomboy, wrongly called "transgender," and subject to frequent insults from fellow students. *Id.* ¶ 43. CC sought the help of a school counselor, who initially let CC work in his office but eventually stopped and told her to go back to class. *Id.* ¶ 44. In ninth grade, CC began dressing in a more feminine way due to the harassment, but the bullying continued, with students telling her she was "fat," "ugly," a "slut," and that she should kill herself. *Id.* ¶ 45. CC's parents informed the District of the persistent harassment, but the administration failed to take any action to protect her. *Id.* ¶ 47.

CC began attending school less and less and eventually stopped attending altogether. *Id.* ¶¶ 46, 49. CC sought to transfer to another school, but the District refused to allow her to transfer. Instead, the District called Child Protective Services to report that CC was not attending school. *Id.* ¶ 50-51. To date, CC has not received her high school diploma. *Id.* ¶ 51.

**AS:** In Spring 2020, AS was severely bullied. Members of the high school football team created and distributed a TikTok video that mocked her appearance, discussed whether they would have sex with her, and made comments about her genitalia. *Id.* ¶ 52. After the video was distributed, more students began bullying AS. *Id.* ¶ 53. Finally, at a school pep rally, a group of students held a sign targeting AS that read, "we don't want you." *Id.* ¶ 54. Following the pep rally, AS was physically assaulted by the group of students. *Id.* ¶ 55.

AS's mother informed the principal of the attack, but rather than take disciplinary action, he informed AS's mother that AS should not attend an upcoming school dance—yet her attackers were allowed to attend. *Id.* ¶ 56. AS's mother repeatedly contacted the school to discuss how to

protect her daughter, but her calls went unanswered.  *Id.* ¶ 57.  Ultimately, AS was too afraid to continue her education at the District and located an alternative, private school for her to attend. *Id.* ¶ 59.

**LW:** In 2017, a second-grade student, LW, was sexually assaulted in her housing complex by a fifth-grade student.  *Id.* ¶ 60.  After LW's mother reported the incident to law enforcement, the assailant was placed on probation.  *Id.* ¶ 61.  LW's mother also informed the principal and the District superintendent about the assault, asking them to help keep her daughter safe.  *Id.* ¶ 62. She was told that the District would not take any action against the assailant.  *Id.* ¶ 63.

Meanwhile, at school, LW continued to be mocked and harassed by her attacker.  *Id.* ¶ 64. Even after the assailant relocated to another school district, LW continued to be harassed by other students based on what the assailant had told them.  *Id.* ¶ 67.  The District failed to take any action, despite LW's mother repeatedly reporting the harassment.  LW developed physical manifestations of stress and needed years of counseling as a result.  *Id.* ¶ 68.

Plaintiff alleges that these incidents are indicative of a larger policy and practice of the District's "indifference to gender-based bullying, harassment, and assault," which "not only affects the victims, but it also impacts the student body and the school community as a whole," including by showing "students—particularly young women—that the very people charged with ensuring their safety in school will not protect them in their time of need."  *Id.* ¶¶ 4-5.  In addition to these students, the FAC identifies more than thirty incidents of sexual harassment, sexual assault, or gender-based bullying that occurred within the District over the last few years.  FAC ¶¶ 5, 69. Plaintiff alleges that, in response to these incidents, the District failed to take any documented effort to protect students who have been victim to rape, sexual assault, and/or sexual harassment. *Id.*  Additionally, despite nationwide attention and student protests regarding the District's

mishandling of a student's rape, described below, the District has refused to take the most basic steps to prevent or respond to future gender-based misconduct that denies student victims educational opportunities.  FAC ¶ 70; *see also id.* ¶¶ 36-41.  Indeed, despite the above events, which the District is aware deprived students of educational opportunities, and the thirty additional documented instances of gender-based bullying, harassment, and assault, the District has refused to take any steps to develop preventative policies or reform its practices, including by refusing help from the Rape Crisis Program at the YWCA for the Niagara Frontier, which provides critical support on these issues to every school district in Niagara County except for NWCSD.  *Id.* ¶¶ 71-72.

## II.      Relevant Procedural History

On June 23, 2021, Plaintiff filed a Complaint seeking declaratory, injunctive, and any other appropriate relief against the District to remedy Defendant's violations of Title IX and its negligent supervision of students.  Compl., ECF No. 1.  On August 24, 2021, Plaintiff filed a First Amended Complaint with Defendant's consent, FAC, ECF No. 11, and Defendant filed an Answer on October 1, 2021, ECF No. 14.  On October 6, 2021, the case was referred to Magistrate Judge Leslie G. Foschio to, among other things, hear and report upon dispositive motions for the consideration of the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  Text Referral Order, ECF No. 15.

On May 11, 2022, the Magistrate Judge issued the R&R recommending that Defendant's motion for judgment on the pleadings should be granted, or, alternatively, that Defendant's motion should be denied.  R&R, ECF No. 41, at 3.  Specifically, the Magistrate Judge recommended that Defendant's motion should be granted as to Plaintiff's Title IX claim for lack of standing because Plaintiff (1) "fails to establish the substantial segment requirement for

*parens patriae* standing, or, alternatively, (2) "cannot allege the requisite injury to establish a

valid case or controversy." *Id.* at 21.  The Magistrate Judge also concluded that if the Court

adopted the recommendation to grant Defendant's motion based on Plaintiff's standing to bring a

Title IX claim, it should decline to exercise supplemental jurisdiction over the  claim for

negligent supervision. *Id.* at 30.  The Magistrate Judge recommended that if the Court concluded

that the Plaintiff has standing, it should deny Defendant's motion in its entirety because Plaintiff

has sufficiently alleged Title IX and negligent supervision claims. *Id.* at 29, 35.[1]

## ARGUMENT

Where, as here, a district court "review[s] a dispositive pre-trial motion" a court must

"'make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made.'" *Palmer v. Monroe Cty. Sheriff*, 378 F. Supp. 2d

284, 288 (W.D.N.Y. 2005) (quoting 28 U.S.C. § 636(b)(1)(C)).  When reviewing a motion *de*

*novo*, "'[t]he district judge may accept, reject, or modify the recommended disposition; receive

further evidence; or return the matter to the magistrate judge with instructions.'" *Woodworth v.*

*Erie Ins. Co.*, No. 05-CV-6344 CJS, 2009 WL 3671930, at *2 (W.D.N.Y. Oct. 29, 2009) (quoting

Fed. R. Civ. P. 72(b)(3)).

The standard for evaluating a motion for judgment on the pleadings pursuant to Federal

Rule of Civil Procedure 12(c) is identical to the standard used for evaluating motions to dismiss

brought under Federal Rule of Civil Procedure 12(b).  *See Patel v. Contemporary Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  Thus, a motion for judgment on the pleadings

should not be granted in cases where a plaintiff's complaint contains sufficient facts, accepted as

true, to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550

---

[1] The Magistrate Judge is correct that Plaintiff has sufficiently alleged violations of Title IX and negligent
supervision, and this portion of the R&R should be adopted.

U.S. 544 (2007).  In making this determination, a court must draw all reasonable inferences in the plaintiff's favor and analyze the factual allegations to determine whether there is a "reasonable expectation that discovery will reveal evidence of illegal conduct."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (internal quotation marks omitted).  This reasonable expectation is rooted in the "plausibility" that a defendant acted unlawfully and acknowledges the possibility that "a given set of actions may well be subject to diverging interpretations."  *Id*.  The choice between plausible inferences that may be drawn from factual allegations is "not a choice to be made by the court on a [Rule 12(c)] motion."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  Thus, a 12(c) dismissal should not be granted in circumstances where there are questions of fact still in dispute.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301-02 (2d Cir. 2021).

The Magistrate Judge's recommendation that the Court grant Defendant's motion based on Plaintiff's supposed failure to satisfy the substantial segment requirement of *parens patriae* standing is contrary to established case law and ignores the State's well-pleaded allegations of a policy and practice of discrimination and deliberate indifference in the District.  Moreover, the Magistrate Judge's recommendation that the State's claims should be dismissed for failure to allege future injury misconstrues the State's interest in this lawsuit and ignores its allegations of the likelihood of future harm.  Accordingly, the Magistrate Judge's recommendation as to standing should be rejected, and Defendant's motion should be denied in its entirety.  In the alternative, Plaintiff should be permitted to amend the FAC.[2]

---

[2] The standard of review to be applied in evaluating a magistrate judge's recommendation regarding leave to amend a complaint is unsettled in the Second Circuit.  *See Palmer*, 378 F. Supp. 2d at 288-89.  Under either a de novo or clearly erroneous standard of review, Plaintiff respectfully requests leave to amend for the reasons explained below.

I.      **The Magistrate Judge is Wrong that Plaintiff Fails to Plead a Substantial Segment of the Population is Affected by the District's Conduct.**

The Magistrate Judge erred in recommending that the State "fails to establish the substantial segment requirement for *parens patriae* standing." R&R at 21. The recommendation ignored or otherwise misconstrued the State's allegations of the District's policy and practice of discrimination and misapplied cases that make clear that *parens patriae* standing does not turn on the number of individuals directly involved in the alleged discrimination but rather on whether such discrimination has the capability to affect a substantial segment of the population.

Plaintiff has standing to bring suit under the State's well-established *parens patriae* authority, which is "the common-law principle that a sovereign, as parent of the country, may step in on behalf of its citizens to prevent injury to those who cannot protect themselves." *New York by Schneiderman v. Utica City Sch. Dist.,* 177 F. Supp. 3d 739, 747 (N.D.N.Y. 2016) (internal quotation marks omitted); *see also People ex rel. Cuomo v. Liberty Mut. Ins. Co.*, 861 N.Y.S.2d 294, 296 (App. Div. 2008) ("The State has inherent authority to act in a parens patriae capacity when it suffers an injury to a quasi-sovereign interest . . . ." (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982))).

Where, as here, the State invokes standing under the *parens patriae* doctrine it must "(1) articulate[ ] a 'quasi-sovereign interest' apart from the interests of particular private parties; (2) allege[ ] a concrete injury to a substantial segment of its population; and (3) demonstrate[ ] that complete relief from that injury could not be obtained by individuals in a private lawsuit." *Utica City Sch. Dist.*, 177 F. Supp. 3d at 748. As the Magistrate Judge correctly noted, the District does not challenge Plaintiff's ability to meet the first and third requirements of *parens patriae* standing.

*See* R&R at 14.[3]  With respect to the second requirement, the Magistrate Judge erred in applying the law, including by ignoring Plaintiff's well-pleaded allegations that the District has a policy and practice of deliberate indifference to gender-based bullying, harassment, and assault that affects and will continue to affect a substantial number of students.

In analyzing the second requirement, the Magistrate Judge correctly explained that "'[t]here is no numerical talisman to establish *parens patriae* standing,'" R&R at 15 (quoting *People v. Peter & John's Pump House*, 914 F. Supp. 809, 812 (N.D.N.Y. 1996)); *see also Utica Cent. Sch. Dist.*, 177 F. Supp. 3d at 748 (same), and that "'the indirect effects of the injury must be considered . . . in determining whether the State has alleged injury to a sufficiently substantial segment of its population.'" R&R at 15 (quoting *Snapp*, 458 U.S. at 607).  Indeed, the "'raw number of individuals directly involved" in the alleged discrimination . . . is not determinative." *Peter & John's Pump House, Inc.*, 914 F. Supp. at 812 (quoting *People by Vacco v. Mid Hudson Med. Grp., P.C.,* 877 F. Supp. 143, 148 (S.D.N.Y. 1995)).  Instead, courts in the Second Circuit "broadly construe the 'substantial segment' requirement of *parens patriae* standing," and look not

---

[3] Nor could it.  With respect to the first requirement, courts have repeatedly made clear that the State has a quasi-sovereign interest in protecting the health and well-being of its citizens, including from "a broad range of discrimination."  *See, e.g.*, *Utica City Sch. Dist.*, 177 F. Supp. 3d at 747-48 (holding the State had statutory and *parens patriae* authority to sue to address discrimination against immigrant students under federal and state law); *Peter & John's Pump House, Inc.*, 914 F. Supp. at 812 (noting that the Second Circuit has expressly acknowledged New York's quasi-sovereign interest in "preventing racial discrimination of its citizens"); *Support Ministries For Persons With AIDS, Inc. v. Vill. of Waterford, N.Y.*, 799 F. Supp. 272, 277 (N.D.N.Y. 1992) (finding standing where defendants' discriminatory conduct endangered health and subjected individuals to an increased risk of homelessness); *People by Abrams v. 11 Cornwell Co.,* 695 F.2d 34, 40 (2d Cir. 1982), *vacated in part on other grounds*, 718 F.2d 22 (2d Cir. 1983) (finding standing for discrimination against individuals with disabilities).

With respect to the third requirement, the State has a "unique status as the representative of the greater public good and [a] concomitant mandate to secure wide-ranging relief that will inure to the direct and indirect benefit of the broader community." *Utica City Sch. Dist.*, 177 F. Supp. 3d at 753-54.  As discussed below, the State seeks injunctive relief to redress harms to students victimized by gender violence and harassment and to prevent such harms from happening in the future by requiring the District to reform its policies, conduct training on those policies and related practices, and undergo monitoring to ensure compliance with the law.  *See* FAC Prayer for Relief.

merely at the number of individuals allegedly involved in the discrimination at issue but at whether "the community at large also would be affected 'were [the relevant] incident[s] [to be] tolerated without redress.'"   *Id.* (quoting *11 Cornwell Co.*, 695 F.2d at 39-40) (collecting cases). Accordingly, courts have found that the State has standing where "[b]y the express language of the complaint," it has "alleged injury to more than an identifiable group of individual residents," and "alleges a 'practice and policy' of discrimination, which necessarily involves a larger group of patrons."   *Id.* at 813. Despite acknowledging many of these well-established standards, the Magistrate Judge failed to apply them in making his recommendation.   Rather, the Magistrate Judge blatantly ignored Plaintiff's allegations in the FAC that the four individual students described are examples of the injury students experience, that the District has a policy and practice of discrimination in violation of Title IX, and that such policy and practice affects a substantial segment of the population.

Plaintiff alleges that despite the District's legal and moral obligations to "take steps to protect students from gender-based harassment and sexual assault that create a hostile educational environment and deprive students of educational opportunities" and to "provide adequate supervision of their students to protect them from harm," that the District has "deliberately and callously ignored complaints by students of rape, assault, sexual harassment, and gender-based bullying," and "failed to take any meaningful action against perpetrators or to protect victims from future harassment."   FAC ¶¶ 2-3.   The FAC contains detailed examples of four recent incidents in which students have reported sexual assault and harassment to the District, notes that the District has taken no action to protect these students from their assailants and harassers, and alleges that, because of the District's inaction, students have experienced severe emotional distress and have been deprived of educational opportunities.   *See id.* ¶¶ 14-68.   Indeed, as the Magistrate Judge

correctly concluded, these incidents show the District's deliberate indifference to gender-based harassment, bullying, and assault.  R&R at 25-30.

As the FAC makes clear, such incidents are indicative of a larger policy and practice of the District's "indifference to gender-based bullying, harassment, and assault," which "not only affects the victims, but [ ] also impacts the student body and the school community as a whole," including by showing "students—particularly young women—that the very people charged with ensuring their safety in school will not protect them in their time of need." *Id.* ¶¶ 4-5.  In addition to these incidents, the State alleges that students in the District have been and continue to be at risk because of the District's discrimination.  Specifically, even though "there have been over thirty documented incidents of sex discrimination, sexual harassment, sexual assault, or gender-based bullying at" the District, the District "has not created a single written safety plan or taken any documented effort to keep students safe following a rape, physical or sexual assault, or harassment." *Id.* ¶ 5; *see also id.* ¶ 69.  Moreover, despite the incidents and student protests with respect to TG's rape, the District has refused to take the most basic steps to prevent or respond to future sexual assaults, including by refusing to respond to offers by the Rape Crisis Program at the YWCA for the Niagara Frontier to offer critical aid to the District.  *Id.* ¶¶ 70, 72.  Such blatant apathy in response to multiple incidents of gender-based assault, bullying, and harassment clearly implicates "discrimination that has a destructive societal effect justifying *parens patriae* standing." *Peter & John's Pump House, Inc.*, 914 F. Supp. at 813; *see also Snapp*, 458 U.S. at 609 (holding that "state interest in securing residents from the harmful effects of discrimination" outweighs "narrow" view that only a set number of jobs were affected).

The Magistrate Judge did not acknowledge any of these allegations as exemplars of the District's conduct or as support for a policy and practice of discrimination.  Instead, the Magistrate

Judge recommended dismissing the FAC for lack of standing principally because it "contains allegations pertaining to *only* the four student victims who attended schools within the NWCSD between 2017 and 2020," and the allegations related to 30 additional students "fail to support a plausible Title IX claim."   R&R at 15 (emphasis added).   But, as the Magistrate Judge acknowledged, the "State's 'use of a small group of aggrieved persons as exemplars for a larger class is neither new or objectionable.'"   *Id.* at 16 (quoting *Peter & John's Pump House, Inc.*, 914 F. Supp. 809 at 813).   The four incidents described in the FAC are exactly that—exemplars of the District's systemic failure to respond to gender-based bullying, harassment, and assault, which has resulted and will continue to result in emotional distress and the loss of educational opportunities for the victims.   *See* FAC ¶¶ 17-68.   Indeed, as the Magistrate Judge correctly determined, the allegations related to the four incidents plausibly allege Title IX violations.   *See* R&R at 25-30. Yet the Magistrate Judge's suggestion that Plaintiff's standing would be sufficiently alleged had it plead more with respect to the 30 additional "documented incidents of sex discrimination, sexual harassment, sexual assault, or gender-based bullying within" the District flies directly in the face of the rule that such a determination should not turn on a myopic focus on the "raw number of individuals directly involved in the alleged discrimination."   *Peter & John's Pump House, Inc.*, 914 F. Supp. at 812 (internal quotation marks omitted).

Moreover, the Magistrate Judge is wrong that the cases holding that the State alleged harm that affects a substantial segment of the population are inapposite.   R&R at 17.   In attempting to distinguish the above cases, the Magistrate Judge identifies that the "common thread" among them is that "the alleged discriminatory conduct, policy, or practice would have routinely been enforced against a member of the targeted population."   *Id.* at 19.   This is not the standard.   These cases make clear that where, as here, the State has alleged that a defendant's discrimination has and will

continue to put at risk the well-being of a substantial segment of the population, the State has standing to bring claims for such discrimination under its *parens patriae* authority. *See, e.g.*, *Mid Hudson Med. Grp., P.C.*, 877 F. Supp. at 147 (focusing on the deaf population of the entire state, not on the number of deaf patients at the hospital that had or could be affected directly by the defendant's conduct and noting in comparable cases that "New York's profound interest in protecting possible future victims as well as the specified complainants from . . . sexual harassment gave it *parens patriae* standing") (internal quotation marks omitted); *Support Ministries For Persons with AIDS, Inc.*, 799 F. Supp. at 277 (finding the State had adequately pled a substantial segment of the population was affected when similar entities in months and years to come, as well as the members of the community itself were affected by "the harmful effects of discrimination" (internal quotation marks omitted)).

The Magistrate Judge's conclusory analysis that the thirty documented instances, standing alone, do not rise to per se violations of Title IX misses the point. R&R at 20. Instead, the People plead these instances to show that gender-based bullying, harassment, and assault are prevalent in the District, and despite the District's knowledge that its approaches to such conduct resulted in the educational deprivation for at least four of its students, the District has failed to create any plans to address the behavior. As the Second Circuit has made clear where, as here, "a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669 (2d Cir. 2012) (internal quotation marks omitted); *cf. Doe v. Metro. Gov. of Nashville & Davidson Cty.*, —F.4th—, 2022 WL 1573848, at *3-4 (6th Cir. May 19, 2021) (vacating the district court's grant of summary judgment to the district where disciplinary records across the district for a period of four years

showed repeated instances of sexual harassment that were handled on an individual basis by school

principals).  Such methods can include "half-hearted measures," and a failure to select adequate

programs to address the underlying conduct at issue—exactly what the People plead here.  *Zeno*,

702 F.3d 668 (explaining that "[a]lthough *actually* eliminating harassment is not a prerequisite to

an adequate response, . . . [a] jury was entitled to compare the alternatives offered by relevant

entities] . . . when it evaluated the adequacy of the [d]istrict's ultimate response").

Additionally, the Magistrate Judge entirely ignored the population of students that the State

alleges has been and will continue to be subject to the District's discrimination.  Specifically, the

State alleges that the District's indifference to gender-based bullying, harassment, and assault and

its refusal to take steps to develop preventative policies or reform its practices has affected and has

the capacity to affect *all* students—particularly young women—in the District.  FAC ¶¶ 4-5, 69-

72.  Female students, in turn, comprise 49% of the District's students.[4]  There can be no doubt that

such population is substantial under the standard.  *See Utica*, 177 F. Supp. 3d at 748 (finding the

substantial segment of the population prong met where 25% of the city's residents were at risk of

diversion to an inadequate educational program); *Mid Hudson Med. Grp.*, 877 F. Supp. at 147

(finding the defendant's failure to provide interpretive services for its hearing-impaired patients

affected a substantial segment of New York's population because the deaf population of the State

may be as high as 7%).

Finally, the Magistrate Judge is again wrong that the instant case is analogous to *People by

Abrams v. Holiday Inns*, Inc., 656 F. Supp. 675, 677 (W.D.N.Y. 1984).  Contrary to the allegations

in *Holiday Inns*, the State does not solely allege that other individuals "*may* be subjected to

---

[4] *See* New York State, Niagara-Wheatfield CSD Enrollment (2020-21), 2021 | NIAGARA-WHEATFIELD CSD -
Enrollment Data | NYSED Data Site (last visited Apr. 2, 2022).  "When considering a . . . Rule 12(c) motion, the
Court may take judicial notice of certain matters of public record" including "notice of . . . governmental records."
*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC.*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

defendants' discriminatory practice." *Holiday Inns*, 656 F. Supp. at 677.  Instead, the State alleges that the District has obligations to protect its students from sexual assault and gender-based harassment, has failed to do so numerous times, and, as such, has placed and will continue to place students at risk of deprivations of educational opportunity.  *See* FAC ¶¶ 14-72.  Unlike in *Holiday Inns*, there is no uncertainty that the District's conduct has affected and—if left unaddressed—will affect a large segment of its students.  In any event, courts have explicitly recognized that the holding in *Holiday Inns* "is more narrow than that of other courts considering the substantial segment requirement."  *Peter & John's Pump House, Inc.*, 914 F. Supp. 809; *see also Com. of Mass. v. Bull HN Info. Syss., Inc.*, 16 F. Supp. 2d 90, 100 n. 7 (D. Mass. 1998) (noting that *Holiday Inns* "has been criticized" and declining to follow it).

## II.     Contrary to the Magistrate Judge's Recommendation, the State Alleges Injury for the Purposes of Article III Standing.

In the alternative, the Magistrate Judge recommended that the Court dismiss all of Plaintiff's claims because it has not alleged a cognizable injury insofar as the State seeks only declaratory and injunctive relief.  R&R at 21-22.  As an initial matter, Defendant did not make this argument with respect to the People's Title IX claim in its motion, and it has not previously been briefed.  In any event, the Magistrate Judge's recommendation is wrong in that it again misconstrues the State's lawsuit as on behalf of four individual students, rather than as a suit on behalf of students and families who are directly affected by Defendant's unlawful practice.  Courts have made clear that where, as here, the State seeks to vindicate the rights of a substantial segment of the population under its *parens patriae* authority, declaratory and injunctive relief is appropriate.  Moreover, contrary to the Magistrate Judge's conclusion, the State has alleged the

likelihood of future harm to students in the District vulnerable to its policy of deliberate

indifference.

   **a.   Plaintiff Has Article III Standing Because It Filed Suit on Behalf of Students Who are Directly Harmed by the District's Ongoing Discrimination.**

   The Magistrate Judge's recommendation mistakenly concludes that the State "cannot

allege the requisite injury to establish a valid case or controversy," and "cannot pursue injunctive

relief requiring policy changes by [the District] under Title IX with regard to any student who

has graduated or otherwise left the school district because no such victim could benefit from the

relief sought," R&R at 22, for the same reason it erroneously concludes that the State has not

alleged *parens patriae* standing: it misconstrues the State's role as representing four individual

students, rather than all students who are affected by the District's deliberate indifference to

sexual assault, sexual harassment, and gender-based bullying.  The Magistrate Judge then

erroneously proceeds as though this case were brought by four named plaintiffs.  As discussed at

length above, the State brings this action on behalf of the People of the State of New York and

all residents affected by the District's unlawful practices.  Therefore, the injury Plaintiff seeks to

redress is injury to all students vulnerable to the District's discrimination, and the relief Plaintiff

requests is properly injunctive relief that will protect all students in the District moving forward.

   Case law interpreting the third prong of *parens patriae* standing—which, as noted above,

the District concedes is met here—consistently makes clear that the State has a "unique status as

the representative of the greater public good and [a] concomitant mandate to secure wide-ranging

relief that will inure to the direct and indirect benefit of the broader community." *Utica City Sch.

Dist.*, 177 F. Supp. 3d at 753-54.  Here, the State seeks injunctive relief to redress harms to students

victimized by gender violence and harassment and to prevent such harms from happening in the

future by requiring the District to reform its policies, conduct training on those policies and related

practices, and undergo monitoring to ensure compliance with the law.  *See* FAC Prayer for Relief.

Such relief squarely falls within the types of relief courts have held "would vindicate the State's

quasi-sovereign interest in protecting its [communities] from discrimination in education." *Utica*

*Cent. Sch. Dist.*, 177 F. Supp. 3d at 748-49 (finding the request "to hire an enrollment ombudsman

as well as to impose certain pre-clearance requirements that must be met by the [defendant school

district] when it desires to make changes to its ESL arrangements" satisfied the third requirement

of *parens patriae*); *cf. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. at 149 (finding "that the remote

possibility that [a private plaintiff] could obtain relief for himself does not preclude the Attorney

General from seeking complete relief for all current and future deaf patients and their families"

(internal quotation marks omitted)).

Accordingly, the Magistrate Judge's conclusion that Plaintiff "cannot benefit from any

changes to Defendant's policies as to" the four victims is inapposite.  R&R at 21.  The State does

not seek relief solely as to four students; instead, they seek "complete relief" that will "protect

[the] societal interests" to which the State is charged with vindicating—i.e. ensuring that the

District's students are free from discrimination.  *People v. Peter & John's Pump House, Inc.*, 914

F. Supp. at 813 (explaining that "the interests of the State and private individuals are not

coextensive because the State seeks to enjoin the [defendant's] overall practice and policy of

discrimination whereas individual plaintiffs would have much narrower interests" including in that

they "might not achieve the complete relief that the State seeks because they have a greater

incentive to compromise requests for injunctive relief in exchange for money damages").  Nothing

more is required to assert injury or the appropriateness of relief when a State proceeds under the

doctrine of *parens patriae* standing.

### b. Plaintiff Has Standing to Obtain Injunctive Relief Because It Has Alleged the Likelihood of Future Harm.

In any event, Plaintiff adequately alleges the likelihood of future harm to pursue injunctive relief.  In order to obtain injunctive relief, a plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'"  *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983)).  When seeking injunctive or declaratory relief, a plaintiff cannot rely "on past injury to satisfy the injury requirement;" instead, the plaintiff must also "show a likelihood that he or she will be injured in the future."  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  The Second Circuit has made clear that "the critical standing inquiry is whether a plaintiff is realistically threatened by a repetition of his experience . . . or whether the claim is speculative."  *Curtis v. City of New Haven*, 726 F.2d 65, 67 (2d Cir. 1984) (citation and internal quotation marks omitted).  This requires a plaintiff to show "[1] a likelihood of future harm and [2] the existence of an official policy or its equivalent."  *Shain*, 356 F.3d at 216 (emphasis omitted).

As discussed above, Plaintiff alleges both the existence of an official policy—i.e. that the District is deliberately indifferent to gender-based harassment, bullying, and assault—and the likelihood of future harm to students in the District that are at risk of gender-based assault and harassment, and subject to the District's deliberate indifference regarding such conduct.

This case is easily distinguishable from *Lyons*, on which the Magistrate Judge's reasoning relies.  In *Lyons*, the Supreme Court held that "a plaintiff lacked initial standing to seek an injunction against the enforcement of a police chokehold policy because he could not credibly allege that he faced a realistic threat arising from the policy."  *Friends of the Earth, Inc. v. Laidlaw Environ'tl Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *Lyons*, 461 U.S. at

105-110).  Specifically, the Court noted that the plaintiff had never been arrested before; did not have further encounters with the police after filing suit; and was unlikely to ever be detained again misdemeanor arrestees were generally released on their own recognizance or on bail. *Lyons*, 461 U.S. at 105-110.

Here, unlike in *Lyons*, the State has adequately pled a likelihood of future harm because it alleges that the District has maintained and continues to maintain a policy of deliberate indifference to gender-based bullying, harassment, and assault.  *See, e.g.*, *County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("This case is easily distinguished from *Lyons*, in which the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint."); *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) (finding harm likely in Georgia and Alabama where there was evidence Kansas had caused injury by applying the same policy); *Frederick v. Lawson*, 481 F.Supp.3d 774, 787–88 (S.D. Ind. 2020) (finding injury where plaintiffs presented evidence of their votes being disallowed in 2018 by the same law they were challenging in 2020).  Specifically, despite its notice of the inadequacy of its responses to such instances over the course of several years, the District has failed to create a single safety plan in response to similar incidents, revise its policies or practices, or accept offers of help for students victimized by such behavior.  FAC ¶¶ 5, 69-70. As the Supreme Court has made clear, "[i]t can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates the conduct and prevents its recurrence provides a form of redress."  *Friends of the Earth, Inc.*, 528 U.S. at 185-86.

Moreover, *Lyons* is readily distinguishable where, as here, plaintiff alleges multiple incidents of injury because of an official policy.  *See Nat'l Cong. for Puerto Rican Rts. v. City of*

*New York*, 75 F. Supp. 2d 154, 159–62 (S.D.N.Y.), *on reconsideration in part*, 191 F.R.D. 52 (S.D.N.Y. 1999) ("The possibility of recurring injury ceases to be speculative when actual reported incidents are documented." ); *see also Ligon v. City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. 2013); *Stinson v. City of New York*, 282 F.R.D. 360, 382 (S.D.N.Y. 2012) ("[T]he fact that several Plaintiffs in this case have received multiple summonses alleged to have been issued without probable cause suggests the potential for future harm to rise above the speculative level."); *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F.Supp.2d 803, 827 (S.D.N.Y. 2011) (finding the allegations moved from speculative to likely as the complaint stated that officers "explicitly threatened to return to two of the eight homes in which they conducted operations" and that "in another case, agents actually *did* return to the home, visiting twice in thirteen months").  The fact that multiple victims have been subject to the District's deliberate indifference over the course of a few short years makes the likelihood of future harm far from speculative.

Additionally, "courts have found that a plaintiff is more likely to experience a recurring injury when the plaintiff alleges that the defendant's challenged conduct is widespread *and* implicates a particular activity or location that the plaintiff engages in or travels to frequently." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 161–62 (E.D.N.Y. 2018); *see also Roe v. City of New York*,  151 F.Supp.2d 495, 502-03 (S.D.N.Y. 2001) (finding plaintiffs who frequented a legal safe injection site had standing to seek prospective relief against the NYPD's practice of arresting visitors to injection sites because the plaintiffs alleged a widespread pattern of arrests at a specific site, despite the fact that the plaintiffs had only been arrested there once before); *Ligon*, 925 F.Supp.2d at 522 n.320 (S.D.N.Y. 2013) (finding that "in light of the frequency of unlawful trespass stops" in certain designated areas, "even those plaintiffs who have only been subjected

to such a stop one time would likely have standing" to challenge the stops, "provided that they continue to live in or visit**"** such areas); *An v. City of New York*, No. 16-CV-5381 (LGS), 2017 WL 2376576, at *5 (S.D.N.Y. June 1, 2017) (finding the plaintiff, who had been arrested once by the NYPD for filming police, had standing to seek prospective relief from this arrest practice because he alleged that he "continue[d] to film public police activity about twice per month and that this conduct will bring him into contact with police officers").  Here, the State has alleged a persistent and repeated practice applied within the District.  Students who reside in and attend schools in the District are accordingly likely to experience future harm.

Finally, the Supreme Court in *Lyons* noted that it could dismiss the plaintiff's claim for injunctive relief without concern about the redressability of the relevant policy because a claim for damages would still proceed.  461 U.S. at 109.  Here, there is no claim for damages.  Therefore, dismissing the State's claim in its entirety would violate "the rule that a claim does not become moot where it is capable of repetition, yet evades review." *Lyons*, 461 U.S. at 109.

**III.    At Minimum, the State Should Be Granted Leave to Amend.**

To the extent the Court agrees that Defendant's motion should be granted, the State should be granted leave to amend the FAC.  "Where the possibility exists that [a] defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).  Here, the State should be granted leave to amend the FAC.  In particular, Plaintiff should be permitted to replead to add further allegations regarding the District's policy and practice of deliberate indifference, including with respect to current students who have contacted Plaintiff since the filing of the FAC. *See, e.g.*, *Floyd v. City of New York*, 283 F.R.D. 153, 169-70

(S.D.N.Y. 2012) (finding that, where one victim indisputably had standing based on unlawful acts that were repeated after filing suit, the claim for injunctive relief could proceed).

## <u>CONCLUSION</u>

The Report and Recommendation should be rejected or modified for the reasons above.  In the alternative, Plaintiff should be permitted to file an amended complaint.


LETITIA JAMES
Attorney General of the State of New York

By:  _/s/   Sandra Pullman_____
Sandra Pullman, Senior Counsel
Amanda Meyer, Assistant Attorney General
Office of the New York State Attorney General
28 Liberty St., 20th Floor
New York, NY 10005
(212) 416-8623
Sandra.Pullman@ag.ny.gov

## LOCAL RULE 72(c) CERTIFICATION

Plaintiff's objections include new legal arguments regarding its Article III standing and the appropriateness of injunctive relief because certain aspects relevant to these issues were raised *sua sponte* by the Magistrate Judge and not made by Defendant or previously briefed by the parties.

LETITIA JAMES
Attorney General of the State of New York

By:  _/s/ Sandra Pullman_____
Sandra Pullman, Senior Counsel
Amanda Meyer, Assistant Attorney General
Office of the New York State Attorney General
28 Liberty St., 20th Floor
New York, NY 10005
(212) 416-8623
Sandra.Pullman@ag.ny.gov

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| People of the State of New York, by LETITIA JAMES, Attorney General of the State of New York, | Case No. 21-cv-759 |
| Plaintiff, | |
| -against- | |
| NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT, | |
| Defendant. | |

**DEFENDANT NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

**HARRIS BEACH PLLC**
726 Exchange Street, Suite 1000
Buffalo, New York 14210
T: 716.200.5128
F: 716.200.5201

*Attorneys for Defendant Niagara Wheatfield Central School District*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

I.     The R&R correctly concluded that OAG failed to allege injury to a substantial segment of the population in order to confer *parens patriae* standing ........................................................................................................... 5

II.    The R&R correctly concluded that OAG failed to allege injury in fact required to establish Article III standing ..................................................... 13

III.   OAG's request to amend the FAC should be disregarded as improper and untimely ................................................................................................ 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

Page

**Cases**

*A.S. v. City Sch. Dist. of Albany*,
  2022 U.S. Dist. LEXIS 21693 (N.D.N.Y. Feb. 7, 2022) ...................................................... 14

*Alfred L. Snapp & Son v. Puerto Rico*,
  458 U.S. 592 (1982) ........................................................................................................ 6, 10

*B.C. v. Mount Vernon Sch. Dist.*,
  660 F. App'x 93 (2d Cir. 2016) ............................................................................................ 14

*Connecticut v. Physicians Health Servs. of Conn.*, Inc.,
  287 F.3d 110 (2d Cir. 2002) .................................................................................................. 5

*Cook v. Colgate Univ.*,
  992 F.2d 17 (2d Cir. 1993) .................................................................................................. 14

*Farmland Dairies v. McGuire*,
  789 F. Supp. 1243 (S.D.N.Y. 1992) ..................................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................................ 13

*Golden v. Zwickler*,
  394 U.S. 103 (1969) ............................................................................................................ 14

*Gordon v. Niagara Wheatfield Central School District*,
  Case No. 1:22-cv-00172 (W.D.N.Y.) ..................................................................................... 1

*Harrison v. Jefferson Par. Sch. Bd.*,
  2022 U.S. Dist. LEXIS 31453 (E.D. LA. Feb. 23, 2022) ...................................................... 11

*Levin v. Harleston*,
  966 F.2d 85 (2d Cir. 1992) .................................................................................................. 14

*Los Angeles v. Lyons*,
  461 U.S. 95, 103 S. Ct. 1660 (1983) ................................................................................... 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................................ 13

*N.Y. by Vacco v. Mid Hudson Med. Grp.*, P.C.,
   877 F. Supp. 143 (S.D.N.Y. 1995) ..................................................................... 9, 10

*New York v. Peter & John's Pump House*,
   914 F. Supp. 809 (N.D.N.Y. 1996) ............................................................ 5, 6, 7, 9

*New York v. Town of Wallkill*,
   2001 U.S. Dist. LEXIS 13364 (S.D.N.Y. Mar. 16, 2001) ...................................... 6

*New York v. Utica City School District*,
   177 F. Supp. 3d 739 (N.D.N.Y. 2016) ............................................................. 8, 12

*People by Abrams v. 11 Cornwell Co.*,
   695 F.2d 34 (2d Cir. 1982),
   *vacated in part on other grounds on reh'g en banc*,
   718 F.2d 22 (2d Cir. 1982) .............................................................................. 5, 6, 9

*People by Abrams v. Holiday Inns*,
   656 F. Supp. 675 (W.D.N.Y. 1984) ..................................................................... 11

*Support Ministries for Persons with Aids, Inc. v. Waterford*,
   799 F. Supp. 272 (N.D.N.Y. 1992) ..................................................................... 8, 9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ......................................................................................... 14


**Statutes**

20 U.S.C. § 1682 ....................................................................................................... 2

**PRELIMINARY STATEMENT**

Defendant Niagara Wheatfield Central School District (the "District") submits this response to the Office of the Attorney General's ("OAG") objections to the Report and Recommendation issued on May 11, 2022 by Magistrate Judge Leslie G. Foschio (Dkt. 41). The Magistrate Judge issued a Report and Recommendation (the "R&R") recommending that the District's motion for judgment on the pleadings be granted in its entirety, or, in the alternative, be denied in its entirety. The R&R's conclusion that OAG failed to establish *parens patriae* standing should be adopted without modification and this action should be dismissed, as recommended.

The R&R correctly concluded that OAG failed to allege injury to a substantial segment of the population. OAG has merely stitched together four isolated and unrelated incidents of student-on-student harassment that do not rise to the level of a systematic policy or practice affecting a discrete segment of the population necessary to confer *parens patriae* standing. As is clear from OAG's First Amended Complaint (the "FAC"), this case arose from the unfortunate and unprecedented experience of a single student—TG—who was sexually assaulted by another high school student at that student's home. Even accepting OAG's allegations as true, the District was able to keep TG, and her assailant, ED, apart during the entire school year as ED's criminal case slowly moved through the juvenile—and, subsequently—adult justice system, except for occasional "glares" in the school's public hallways. After TG's mother stirred up outrage at the District on social media, the situation became the focus of local and national media and led to a student walkout. Aware that it could not litigate TG's case,[1] OAG nevertheless decided to get involved and conducted an investigation of the District. From that investigation, all OAG could muster are the four disparate and unrelated incidents identified in the FAC. However, these alleged

---

[1] TG is now pursuing a separate action against the District before the Court. *See Gordon v. Niagara Wheatfield Central School District*, Case No. 1:22-cv-00172 (W.D.N.Y.).

incidents do not show that any of the District's policies and practices routinely adversely affect a substantial segment of the population, as is required for OAG to establish *parens patriae* standing.

Furthermore, OAG's FAC has not alleged an injury in fact to establish Article III standing because all of the students referenced have graduated, left the District, or the FAC lacks the detail necessary to discern the student's status.

Finally, OAG's improper and untimely request to amend its complaint for a second time to address such insufficiencies should be disregarded by this Court. The R&R properly determined that OAG lacks standing to pursue its claims. Therefore, for the reasons stated herein, the District requests that the Court adopt the R&R without modification insofar as it concluded that OAG lacks standing and recommended granting the District's motion for judgment on the pleadings and dismissal of the action.

## STATEMENT OF FACTS[2]

OAG brought this action against the District alleging causes of action for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682 et seq., ("Title IX") and common law negligent supervision. *See* FAC ¶ 1. As a basis for these claims, OAG includes allegations pertaining to four students – TG, CC, AS, and LW – discussed in turn below and further alleges that "[t]he District has been notified of at least thirty incidents of sexual assault, harassment, or gender-based bullying in the last few years." *Id*. ¶ 69. OAG also alleges in conclusory fashion that the District did not create a "written safety plan" to "ensure the safety of any of these students." *Id*. OAG failed to include any further factual allegations pertaining to any students other than TG, CC, AS, and LW.

---

[2] The District vehemently denies any wrongdoing and submits that many of the allegations in the FAC are inaccurate. For purposes of the underlying motion and this limited objection only, the District assumes the allegations in the FAC are accepted as true, but nothing in this submission should be interpreted as the District agreeing or conceding that the facts are as alleged.

**TG**

OAG alleges TG was raped by a male student, ED, at ED's home, in May 2018. *Id.* ¶ 16. The incident was reported to the police, ED was arrested, and TG obtained a restraining order preventing ED from coming near her outside of school. *Id.* ¶ 17-18. In the school year following the sexual assault, as the criminal proceeding was ongoing, OAG alleges that ED, occasionally stood outside TG's classroom and "glared" at her. *Id.* ¶¶ 22, 31. OAG further alleges that TG received Snapchat and text messages from students other than ED and was subjected to comments from other unnamed classmates regarding the sexual assault. *Id.* ¶¶ 26, 28. At the very end of the school year, ED pleaded guilty to rape, and TG's mother informed the District of the plea. *Id.* ¶¶ 32-33. Shortly thereafter, TG's mother posted about her interactions with the District on social media, claiming that the District failed to protect TG from ED during their senior school year, which prompted responses from other parents in the District. *Id.* ¶ 36. The attention surrounding TG's unique situation also prompted a student-organized walkout and garnered national media attention. *Id.* ¶¶ 37, 41.

**CC**

OAG alleges CC was bullied in middle school for her choice of clothing, and was called names such as "tomboy," "gay," and "transgender". *Id.* ¶ 43. CC allegedly reported the purported harassment to the school counselor. *Id.* ¶ 44. When, according to OAG, CC began wearing more feminine clothing in high school, she was then called "fat," "ugly," and "slut". *Id.* ¶¶ 45-46. OAG alleges that the District would not permit CC to transfer schools, and, in 2019, CC left high school permanently. *Id.* ¶¶ 50-51.

**AS**

OAG alleges that, in the Spring of 2020—just before the COVID-19 pandemic began—other high school students made fun of AS in a TikTok video. *Id*. ¶ 52. Following the distribution of the TikTok video, OAG alleges that students at a pep rally performed a chant about AS. *Id.* ¶¶ 53-54. At the pep rally, five female students allegedly physically assaulted AS. *Id.* ¶ 55. The District was not notified of any alleged harassment of AS until after AS was assaulted. *Id.* ¶ 56. AS was then immediately transferred to a private high school. *Id.* ¶ 59.

**LW**

OAG alleges that, in 2017, LW, a second grader, was sexually assaulted at her housing complex by a fifth grade student. *Id.* ¶ 60. The older student then allegedly interacted with LW at school by touching her arm when walking past her, and making statements, such as that she was "damaged goods" and "no one will ever love you". *Id.* ¶ 64. After the fifth grade student left the school, according to OAG, other unnamed students made similar statements to LW. *Id.* ¶ 67. Finally, OAG alleges that "LW developed physical manifestations of stress, and had to attend counseling for more than two years". *Id.* ¶ 68. OAG does not allege whether LW remains a student in the District or continues to experience any distress from these incidents.

**The R&R**

Based upon these allegations, the Magistrate Judge concluded that OAG "fails to establish that the alleged sexual harassment and discrimination of the four student victims within [the District] sufficiently establishes injury to a substantial segment of New York's population." Dkt. 41, at p. 16. In particular, the R&R determined that OAG's conclusory reference to 30 additional incidents constituted "conclusory and unsupported allegations that fail to support a plausible Title IX claim." *Id.* at 17. Moreover, OAG's allegations "[do] not plausibly allege that [the District]

maintains a policy or practice that Defendant necessarily would fail to take any corrective action in response to . . .  gender-based harassment and sexual assault" or "that having a written safety plan would necessarily prevent such conduct by other students." *Id.* at 20.

## **ARGUMENT**

I.   **The R&R correctly concluded that OAG failed to allege injury to a substantial segment of the population in order to confer *parens patriae* standing.**

The R&R correctly concluded that OAG lacks standing under the doctrine of *parens patriae* because it failed to allege injury to a substantial segment of the population (*see* Dkt. 41, at 21). Absent an explicit statutory grant of authority to bring suit, OAG only has standing to pursue a claim on behalf of citizens of the State of New York if it can establish the requirements for *parens patriae* standing. *See Connecticut v. Physicians Health Servs. of Conn.*, Inc., 287 F.3d 110, 121 (2d Cir. 2002). "The doctrine of *parens patriae* allows states to bring suit on behalf of their citizens in certain circumstances by asserting a 'quasi-sovereign interest.'" *Id.* at 119. To establish *parens patriae* standing: (a) the State "must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party"; (b) the State must have "alleged injury to a sufficiently substantial segment of its population"; and (c) demonstrates that complete relief from that injury could not be obtained by individuals in a private lawsuit. *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982), *vacated in part on other grounds on reh'g en banc*, 718 F.2d 22 (2d Cir. 1982).

As the R&R points out, "'[t]here is no numerical talisman to establish *parens patriae* standing.'" Dkt. 41, at 15 (citing *New York v. Peter & John's Pump House*, 914 F. Supp. 809, 812 (N.D.N.Y. 1996)). To determine whether a case involves injury to a substantial segment of the population, "courts apply a common sense approach that takes into consideration both the direct and the indirect effects of the injury" and look for a "clear indication that the State is acting on

behalf of a broad spectrum of the public." *New York v. Town of Wallkill*, 2001 U.S. Dist. LEXIS 13364, at *14-16 (S.D.N.Y. Mar. 16, 2001). Ultimately, "more must be alleged than injury to an identifiable group of individual residents." *Peter & John's Pump House*, 914 F. Supp. at 812 (quoting *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607 (1982)). The "sting" should be almost "universal." *11 Cornwell Co.*, 695 F.2d at 34. "One helpful indication in determining whether an alleged injury to the health and welfare of its citizens suffices to give the State standing to sue as *parens patriae* is whether the injury is one that the State, if it could, would likely attempt to address through its sovereign law making powers." *Snapp*, 458 U.S. at 607.

The Magistrate Judge was correct in his conclusion that the FAC does not allege injury to a substantial segment of the population. *See* Dkt 41, at 20. Instead, OAG has stitched together four isolated and unrelated incidents which occurred across the District over a three-year period, many of which occurred off school grounds, on social media, and/or when school was not in session. OAG strains to identify the similarities between these incidents. In other words, OAG's case is missing the "common thread" linking the disparate and unrelated incidents together. *See id*. at p. 19. In this regard, the FAC epitomizes an insufficient pleading, which alleges "injury to an identifiable group of individual residents" – the four students identified – without doing more. Furthermore, OAG's incorrectly argues that the Magistrate Judge misstated the appropriate test for determining whether the "substantial segment" element is met.  OAG's Objections, at 12. The Magistrate Judge correctly determined that the four unrelated incidents outlined in the FAC do not demonstrate that the District had a discriminatory "policy or practice" that was, and would continue to be, routinely enforced against a discrete segment of the population. *See* Dkt. 41, at 19. Without this "common thread" tying the separate alleged incidents together, OAG is not acting on behalf of the broader public to address a discriminatory policy, but is instead impermissibly acting

as a self-appointed representative of the four individual students.  Put simply, OAG failed to meet its burden of establishing standing.

OAG's factual allegations are broken down into four parts, each including allegations pertaining to a specific student in the District: TG who was allegedly sexually assaulted off campus by another high school student (*see* FAC ¶¶ 16-41), CC who was allegedly verbally bullied by other students in the middle school and high school for her clothing and called names such as "ugly" and "fat" (*id.* ¶¶ 42-51), AS who was allegedly bullied by other high school students on TikTok and physically assaulted at a school pep rally before the District received any notification (*id.* ¶¶ 52-59), and LW who was allegedly sexually assaulted off campus by another elementary school student (*id.* ¶¶ 60-68). Cognizant of the obvious differences, the FAC alleges in a vague and conclusory manner that the District failed to protect other students from sexual assault and harassment, but provides no specific details in this regard, except to allege that the District failed to draft "written safety plans". *Id*. at 69. This, however, is a "requirement" of OAG's own invention. OAG does not plausibly explain whether a written safety plan is required under Title IX, nor does it plead any facts that show how having a written safety plan would have prevented the student-on-student conduct towards the students identified in the FAC, much less other students in the District in the future. *See* Dkt 41, at 20. For these reasons, as the R&R correctly concluded, OAG did not plead the required factual allegations to demonstrate injury to a substantial segment of the population. OAG cannot rely on *parens patria*e standing to litigate the case of particular student or students. *See Peter & John's Pump House, Inc*., 914 F. Supp. at 811 (*parens patriae* standing must involve "more than a state merely stepping in to represent the interests of a particular citizen").

The Magistrate Judge correctly concluded that the cases cited by OAG in support for its argument that it had adequately alleged an injury to a substantial segment of the population are inapposite. *See* Dkt. 4, at 17. In each of these other cases, the alleged discriminatory conduct, policy or practice would, as a matter of routine, be enforced against a member of discrete affected group absent intervention by OAG and the courts. *Id.* at 19. This automatic enforcement of a discriminatory policy or practice against an identifiable group is the crux of the "substantial segment" inquiry. For example, in *New York v. Utica City School District*, 177 F. Supp. 3d 739, 748 (N.D.N.Y. 2016), the Court found that the Attorney General had alleged an injury to a substantial segment of the State's population given the "the relatively large and still growing population of LEP [Limited English Proficiency] children of immigrant families that reside within the District." In that case, the complaint described a "systematic diversion" of all LEP students to an inadequate and unequal educational program. *Id*. at 744. In that school district, 25% of the city's 60,000 residents spoke a language other than English at home and one in ten households did not have a "member over the age of 14 who [spoke] English 'very well.'" *Id*. This automatic diversion of a quarter of the school district's students to an inadequate program conferred standing on OAG to seek a remedy.

Likewise, in *Support Ministries for Persons with Aids, Inc. v. Waterford*, 799 F. Supp. 272, 278 (N.D.N.Y. 1992), the district court found alleged injury to a substantial segment of the population where the plaintiff challenged a local ordinance enacted to restrict the placement of boarding houses for homeless persons suffering from HIV/AIDS, given the "thousands of people living with AIDS in New York State, and hundreds of thousands of HIV-infected people who are likely to develop AIDS." Unless challenged, the ordinance would have operated to exclude all such boarding houses within the town, thus automatically and routinely discriminating against a

discrete population of infected individuals. *See id*. at 277. Similarly, in *N.Y. by Vacco v. Mid Hudson Med. Grp.*, P.C., 877 F. Supp. 143, 148 (S.D.N.Y. 1995), the district court found that OAG had alleged injury to a substantial segment of the population, where the plaintiff alleged that a hospital had routinely failed to provide appropriate accommodations for deaf and hard of hearing patients, which comprise 7% of the population, and would continue to do so as a matter of policy and practice unless remedied.

All of these cases make clear that the substantial segment analysis is not a question of the size of the allegedly impacted population. Each case involved a concrete policy or practice that automatically operated to discriminate against a discrete segment of the population. *See e.g.*, *Support Ministries*, 799 F. Supp. at 278 (local ordinance restricted placement of housing for persons with HIV/AIDS); *N.Y. by Vacco.*, 877 F. Supp. at 148 (hospital policy failed to provide appropriate accommodations for deaf patients); *Peter & John's Pump House*, 914 F. Supp. at 813 (racial discrimination against African American club patrons); *11 Cornwell Co.*, 695 F.2d at 37 (conspiracy to prevent state from buying house as residence for the mentally retarded).  In none of these other cases was OAG attempting to litigate the grievances of <u>individual</u> persons—essentially arguing that the defendant should have handled a particular situation in a better way—but rather sought to remediate a discriminatory policy or practice that targeted a discrete and identifiable segment of the population. In those cases the future injury to other persons in the subject group, other than the "test cases," was not speculative because it was nearly certain, based upon the alleged practice, that "similar people in years to come" would be treated in the same manner. *11 Cornwell Co.*, 695 F.2d at 39; *see also Mid Hudson Med. Grp.*, 877 F. Supp. at 148 ("The effects of Mid Hudson's alleged discrimination against its seven to ten deaf patients threatens all hearing impaired citizens and perhaps disabled citizens throughout New York.").

By contrast, here, OAG has cherry-picked four unrelated and isolated cases of alleged student-on-student harassment. There is no "common thread" between these claims that would allow OAG to argue that this case is about a broad principle that would impact a discrete segment of the District's students. As the Magistrate Judge correctly concluded, the FAC "does not plausibly allege that [the District] maintains a policy or practice that [the District] necessarily would fail to take any corrective action in response to any student attending a school within the [District] who complains about gender-based harassment and sexual assault, or that having a written safety plan would necessarily prevent such conduct by other students within [the District]." Dkt. 41, at 20 (citing *Snapp*, 458 U.S. at 607 ("more must be alleged than injury to an identifiable group of individual residents")). Furthermore, there is no indication that the injury alleged is one that the State would—or could—remedy with legislation. *See* Dkt. 41, at 15 (quoting *Snapp*, 458 U.S. at 607). The students identified in the FAC allegedly were the subject of varied conduct by other students: some of the conduct occurred on school grounds and some off of school grounds; some allegedly took place during school hours and some took place outside of school hours; some allegedly occurred via social media and some was in person; some involved physical conduct and some was exclusively verbal; some conduct allegedly occurred before school officials were notified and some allegedly occurred after; some conduct allegedly involved high school students and other conduct involved elementary students. The differences go on.

In essence, OAG took whatever allegations of student-on-student conduct any parents and students would provide it, and lumped them all together in a single pleading as purporting to show a pattern. Although there is precedent for OAG using "test cases" to litigate alleged discrimination, to establish standing, those test-cases must be "exemplars for a larger class". *Mid Hudson Med. Grp.*, 877 F. Supp. at 147. Here, however, there is no "class" of persons against whom a policy or

practice discriminated against, and OAG's argument that the four unrelated students' experiences are exemplars of a broader group (OAG's Objection, at 10, 12) is unavailing. OAG has only identified students who had negative encounters with their peers and made allegations that the District did not do enough to prevent them. The "common thread" needed to allege injury to a substantial segment of the population is simply missing, and the facts alleged in the FAC do not confer *parens patriae* standing.

As the Magistrate Judge concluded, this case is most analogous to *People by Abrams v. Holiday Inns*, 656 F. Supp. 675, 677 (W.D.N.Y. 1984) and not the cases OAG relies on.  In *Holiday Inns*, OAG asserted age discrimination claims based upon the experiences of ten individual employees. The Court concluded that OAG's complaint failed to allege an injury to a substantial segment of New York's population and therefore failed to sufficiently allege *parens patriae* standing. In evaluating the plaintiff's claims of age and gender-based employment discrimination, which centered on the experiences of particular employees, the Court concluded that the required showing had not been made "[d]espite plaintiffs' assertions that countless other employees **may** be subjected to defendants'" practice of age and gender discrimination. *Id.* at 677 (emphasis added). Here, OAG makes similar conclusory allegations of future injury—*i.e.*, that the District has not "taken the most basic steps to prevent or respond to future sexual assaults" and "will not protect [students] from sexual assault, harassment, or gender-based bullying." FAC ¶¶ 70, 72. OAG's allegations of speculative future harm to the District's students do not allege an injury to a sufficiently substantial segment of the population to establish *parens patriae* standing.

The insufficiencies in OAG's pleading are further highlighted by the recent and factually analogous case, *Harrison v. Jefferson Par. Sch. Bd*., 2022 U.S. Dist. LEXIS 31453, at *34-*35 (E.D. LA. Feb. 23, 2022). There, the state attempted to argue that a school district had "'a policy,

practice, or custom' of violating students' rights'" by subjecting certain student conduct to discipline. *Id*. The court ruled that the state failed to satisfy the "substantial segment" requirement where it only relied on the circumstances of two students to establish a "policy, pattern, or custom" and that alleged future harm was "purely speculative." *Id.* at *36. In so ruling (*id.* at *38), the court distinguished *Utica City School District*, 177 F. Supp. 3d 739, based upon the allegations in that case that the school district was "systematically diverting" all immigrant students into an alternative program.

OAG attempts to respond to the R&R's criticisms regarding the sufficiency of its pleadings in two ways. First, OAG points to the single line in the FAC, which states in conclusory fashion: "[t]he District has been notified of at least thirty incidents of sexual assault, harassment, or gender-based bullying in the last few years." FAC ¶ 69. The Magistrate Judge correctly disregarded these "conclusory and unsupported allegations" as insufficient to support a Title IX claim. OAG does not allege that any of these "thirty incidents" amounted to a violation by the District of a legal duty owed to its students. In fact, OAG does not describe the nature of any of these other alleged incidents, much less the elements necessary to assert a legal claim. In any event, OAG could not have cured its pleading defects "had it plead [sic] more with respect to the 30 additional [students]." *See* OAG's Objection, at 12. The purported practice OAG has identified as the basis for its claim—the alleged absence of a written safety plan—is not a policy that routinely operates to discriminate against a segment of the population, much less a discrete and identifiable one. Thus, even had OAG described the details of thirty additional incidents of student-on-student conduct, it would still have failed to establish *parens patriae* standing.

Second, OAG construes the affected population as affecting "all students . . . in the District" as those who OAG "alleges has been and will continue to be subject of the District's

discrimination." *See* OAG's Objection, at 14. This description flips the concept of discrimination on its head, which necessarily involves unjustly treating persons differently. However, by basing its claims upon the District's alleged failure to create written safety plans for students, OAG is forced to describe its claims in this manner, since that alleged practice does not impact any particular group of students differently. It is therefore unsurprising that OAG does not cite to a single case where the affected group was "everyone". This also does not address the speculative and conclusory allegations of future harm—i.e., that the past incidents to not support a plausible inference of future harm—that the Magistrate Judge correctly deemed inadequate to confer standing.

For these reasons, OAG has failed to meet its burden to allege injury to a substantial segment of the population and is therefore lacking the necessary element to establish *parens patriae* standing. The R&R therefore correctly concluded that the FAC should be dismissed due to OAG's lack of standing.

## II.    The R&R correctly concluded that OAG failed to allege injury in fact required to establish Article III standing.

The Magistrate Judge correctly concluded that OAG failed to establish Article III standing because the FAC does not allege an injury in fact. Dkt 41, at 21-22. To satisfy standing requirements under Article III of the U.S. Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). These requirements ensure federal courts adjudicate only actual "cases" and "controversies". *Lujan*, 504 U.S. at 576. As the Magistrate Judge explained in the R&R, "Plaintiff's allegations of past injury alone do not suffice

to establish an injury in fact for a plaintiff seeking declaratory or injunctive relief." Dkt. 41, at 21 (citing *Levin v. Harleston*, 966 F.2d 85, 90 (2d Cir. 1992) and *Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969)). "Abstract injury is not enough; rather, the plaintiff must show that it 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not "conjectural" or "hypothetical." Dkt. 41, at 21 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 1665 (1983); *Farmland Dairies v. McGuire*, 789 F. Supp. 1243, 1250 (S.D.N.Y. 1992)). In other words, when there is no concrete harm, there is no standing. *See* Dkt. 41, at 22 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021)).

The Magistrate Judge concluded that OAG "cannot pursue injunctive relief requiring policy changes by [the District] under Title IX with regard to any student who has graduated or otherwise left the school district because no such victim could benefit from the relief sought." Dkt. 41, at 22 (citing *A.S. v. City Sch. Dist. of Albany*, 2022 U.S. Dist. LEXIS 21693, at *76 (N.D.N.Y. Feb. 7, 2022); *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993); *B.C. v. Mount Vernon Sch. Dist.*, 660 F. App'x 93, 96 (2d Cir. 2016)). As the Magistrate Judge pointed out, "T.G. has graduated from high school, C.C. dropped out of school, and A.S. transferred to a private school." Dkt. 41, at 22. Furthermore, the FAC fails to allege "whether L.W. remains a student with [the District and whether] L.W. continues to experience any sexual assault or gender-based bullying or harassment." *Id*. The gravamen of this aspect of the R&R is that, since the factual allegations concerning the four students do not amount to a discriminatory policy or practice that could support *parens patriae* standing, the allegations in the FAC are insufficient to establish that future harm is sufficiently certain.  Dkt. 41, at 22. Indeed, the only allegations regarding potential future injury are the improper inferences that OAG requests the Court draw from the four students'

experiences. Thus, the only potential actionable injury, the R&R concluded, is to the four identified students, but there were no facts in the FAC establishing that any of those students remained in the District or are continuing to suffer any injuries.

In its objection to the R&R, OAG has cited no case law which supports the position that OAG can maintain a claim for injunctive relief where future injury is not real and immediate. *See* OAG's Objection, at 16 – 21. Therefore, the R&R correctly concluded that "insofar as the [FAC] seeks injunctive relief changing [the District's] policies and practices, [OAG] lacks standing to pursue such relief." Dkt. 41, at 22. OAG's citation to non-*parens patriae* cases where the litigant him/herself faced a likelihood of future injury is irrelevant. In the *parens patriae* context, the inquiry is different—OAG must establish a connection between persons who suffered past injury and persons who might suffer future injury before it can show, based upon the past injury, that future injury is imminent. Here, OAG has not pleaded facts establishing that connection.

## III.    OAG's request to amend the FAC should be disregarded as improper and untimely.

OAG's improper request for leave to amend the FAC should be disregarded. To start, OAG asserts that "leave to amend at least once should normally be granted as a matter of course." OAG's Objection, at 21. OAG overlooks the fact that it has already amended its complaint once and its current operative pleading is the First Amended Complaint. Furthermore, the deadline to amend its Complaint as a matter of course has long since passed. The Scheduling Order entered in this action, which OAG agreed to, set the deadline to amend the Complaint as March 1, 2022. *See* Dkt. 26. Moreover, OAG had notice, even before it commenced this litigation, of the District's intention to raise the lack of *parens patriae* standing as an issue. This defense was also preserved in the District's Answer (Dkt. 14, at ¶ 90) and was substantively discussed before the Magistrate Judge at the Rule 16 conference in this matter on December 2, 2021. OAG had ample notice and opportunities to amend its pleading accordingly, but failed to do so.  Put simply, if OAG had more

detail to add to its pleading, it would (or should) have done so before the Court-ordered deadline. Furthermore, OAG has also failed to follow the procedure in this District for making a motion for leave to amend by failing to submit a *proposed* amended pleading in connection with their request. For the foregoing reasons, OAG's request for leave to amend within its objection to the R&R is therefore improper and should be disregarded by this Court.

## CONCLUSION

The Magistrate Judge properly concluded that the District's motion for judgment on the pleadings should be granted. As set forth above, and as discussed by the Magistrate Judge in the R&R, the allegations in the FAC do not sufficiently allege injury to a substantial segment of the population to confer *parens patriae* standing on OAG, and OAG has failed to allege an injury in fact necessary for Article III standing. Furthermore, OAG's improper request to amend its deficient pleading should be disregarded. Therefore, the Court should adopt those findings in the R&R granting the District's motion for judgment on the pleadings.

Dated: June 10, 2022                          Respectfully submitted,

**HARRIS BEACH PLLC**

*/s/ Brian C. Mahoney*
Brian C. Mahoney
Daniel R. LeCours
726 Exchange Street, Suite 1000
Buffalo, New York 14210
Phone: (716) 200-5128
bmahoney@harrisbeach.com
dlecours@harrisbeach.com

Svetlana K. Ivy
99 Garnsey Road
Pittsford, New York 14534
Phone:  (585) 419-8779
sivy@harrisbeach.com
*Attorneys for Defendant Niagara Wheatfield
Central School District*

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW
YORK, BY LETITIA JAMES, NEW
YORK STATE ATTORNEY GENERAL,

          Plaintiff,                       21-CV-759 (JLS) (LGF)

     v.

NIAGARA-WHEATFIELD CENTRAL
SCHOOL DISTRICT,

          Defendant.



## DECISION AND ORDER

Plaintiff New York State Attorney General Letitia James brought this action

on behalf of the People of the State of New York, under the *parens patriae* doctrine,

alleging Title IX and negligent supervision claims against Defendant Niagara-

Wheatfield Central School District based on alleged instances of discrimination

against female students at Defendant's schools that Defendant failed to address.

Dkt. 1.  With consent, Plaintiff filed an amended complaint—now the operative

pleading.  Dkt. 10; Dkt. 11.  Defendant answered the amended complaint.  Dkt. 14.

The Court then referred this case to United States Magistrate Judge Leslie G.

Foschio for all proceedings under 28 U.S.C. §§ 636(b)(1)(A), (B), and (C).  Dkt. 15.

Defendant moved for judgment on the pleadings.  Dkt. 34.  Plaintiff opposed,

and Defendant replied.  Dkt. 39; Dkt. 40.

Judge Foschio issued a comprehensive Report and Recommendation (R&R) on May 11, 2022, presenting options and recommending:

- First, that this Court grant Defendant's motion as to Plaintiff's Title IX claim for failure to establish *parens patriae* standing, and decline to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim (Dkt. 41, at 12–21, 30); or

- Alternatively, if this Court disagrees with the *parens patriae* recommendation, that it grant Defendant's motion as to Plaintiff's Title IX claim for lack of standing to seek injunctive and relief based on the allegations in the amended complaint, and that it decline to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim (*id.* at 21–22, 30); or

- If this Court disagrees with both recommendations regarding standing, that it deny Defendant's motion as to Plaintiff's Title IX claim because the amended complaint plausibly states such a claim, and that it grant Defendant's motion on Plaintiff's negligent supervision claim for lack of standing to seek injunctive relief (*id.* at 23–30); or

- If this Court disagrees with all recommendations regarding lack of standing on Plaintiff's Title IX and negligent supervision claims, that it deny Defendant's motion as to both claims because the amended complaint plausibly alleges each claim (*id.* at 23–35).

2

## I.  The R&R and the Parties' Objections

Plaintiff objected to the R&R, arguing that the magistrate judge incorrectly concluded Plaintiff failed to establish *parens patriae* standing and incorrectly concluded that she lacks standing to seek injunctive relief. *See* Dkt. 42. She also requests leave to amend, if this Court were to accept the recommendation to grant Defendant's motion. *See id.* at 21–22. Defendant responded in opposition. Dkt. 48. Plaintiff replied in further support of her objections. Dkt. 51.

Defendant also objected to the R&R. Dkt. 44. First, Defendant argues that, if this Court were to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim, it should dismiss that claim, too, for lack of *parens patriae* standing. *See id.* Defendant also objects to the R&R's conclusion that the amended complaint pleads plausible Title IX and negligent supervision claims. *See id.* Plaintiff responded, and Defendant replied. Dkt. 49; Dkt. 50.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). But neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985).

This Court carefully reviewed the R&R and the relevant record. Based on its *de novo* review, the Court accepts and adopts Judge Foschio's recommendation to

3

JA134

grant Defendant's motion as to Plaintiff's Title IX claim because Plaintiff did not establish *parens patriae* standing to pursue that claim.  Plaintiff has not identified authority to support *parens patriae* standing in a context like this one—where a plaintiff relies on distinct examples of alleged discrimination and a policy or practice of failing to respond to such instances of discrimination to establish the requisite injury to a substantial segment of the population.  Nor did Judge Foschio's thorough survey of the relevant case law reveal such authority.

The number of exemplars in the amended complaint alone—here, four detailed examples plus a reference to thirty additional instances—is not necessarily fatal to Plaintiff establishing *parens patriae* standing.  Rather, Plaintiff did not establish *parens patriae* standing because she relies on examples of factually distinct instances of discrimination and a general policy or practice of Defendant's alleged failure to respond adequately to such discrimination, unlike the cases in which such standing exists.  *Cf. New York by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 37–40 (2d Cir. 1982) (conspiring to sell property as single-family residence to prevent property from becoming community residence for mentally-challenged individuals), *vacated on other grounds*, 718 F.2d 22 (2d Cir. 1983); *New York by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 743–44, 748 (N.D.N.Y. 2016) (systematic diversion of immigrant students aged 17 to 20 to alternative education program instead of district's high school); *New York v. Peter & John's Pump House, Inc.*, 914 F. Supp. 809, 811–12 (N.D.N.Y. 1996) (policy and practice of requiring African American patrons to present proof of age and to meet a dress

4

code, resulting in denying those patrons admission to club); *New York by Vacco v. Mid Hudson Med. Grp., P.C.*, 877 F. Supp. 143, 145, 147 (S.D.N.Y. 1995) (failure to provide interpretive services to hearing-impaired patients, resulting in reliance on note-writing and lip-reading to communicate with doctors); *Support Ministries for Persons With AIDS, Inc. v. Vill. of Waterford*, 799 F. Supp. 272, 274–75, 277–78 (N.D.N.Y. 1992) (refusal to grant variance to entity seeking to establish group home for persons with AIDS experiencing homelessness).

In other words, Plaintiff lacks standing because the exemplars do not establish that Defendant's policy or practice affects a substantial segment of the population. *See* Dkt. 41, at 16 ("Plaintiff fails to establish that the alleged sexual harassment and discrimination of the four student victims within the [district] sufficiently establishes injury to a substantial segment of New York's population.").

The Court also accepts Judge Foschio's recommendation that it decline to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim. Because the Court lacks subject-matter jurisdiction over the Title IX claim in the amended complaint, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction . . . .").

The Court does not address Judge Foschio's alternative recommendations in light of the conclusions above regarding *parens patriae* standing and supplemental jurisdiction.

5

## II. Leave to Amend

Plaintiff seeks leave to amend, suggesting that she would add allegations about current students who have contacted her about Defendant's conduct regarding instances of discrimination. *See* Dkt. 42, at 7 n.2, 21–22; Dkt. 51, at 10 n.2. Defendant opposes Plaintiff's request. *See* Dkt. 48, at 15–16.

The Court denies leave to amend. Plaintiff already amended the complaint once, with Defendant's consent. *See* Dkt. 10. Moreover, other than a generic reference to additional instances of discrimination, Plaintiff does not identify how she would amend, or how any additional exemplars would address the deficiency discussed above. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *see also Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*, No. 20 CIV. 5635 (NRB), 2022 WL 784017, at *16 n.10 (S.D.N.Y. Mar. 15, 2022) ("Plaintiff requests, in a single sentence at the end of its brief, that it be given the opportunity to replead if the motion to dismiss is granted. However, plaintiff does not explain how it would amend its complaint, and as such, its request is insufficient.").

In light of the Court's conclusions above and in the R&R regarding *parens patriae* standing, Plaintiff's general reference to proposed amendment is insufficient and does not justify leave to amend. *See Noto v. 22nd Century Grp.*, 35 F.4th 95, 107–08 (2d Cir. 2022) (denial of leave to amend appropriate where plaintiffs stated

6

only that they "could cure any deficiencies with additional testimony about defendants' editing, review, and approval of the promotional articles, but [did] not allege what specific facts they would include to demonstrate the level of control needed for Rule 10b-5(b) liability") (internal quotation marks omitted).

## CONCLUSION

For the reasons stated above and in the R&R, the Court:

- Accepts and adopts, in part, the R&R (Dkt. 41);

- Grants Defendant's motion for judgment on the pleadings (Dkt. 34), without prejudice;

- Declines to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim; and

- Denies Plaintiff leave to file a second amended complaint.

The Clerk of Court shall close this case.

SO ORDERED.

Dated:     August 26, 2022
           Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

Judgment in a Civil Case

## United States District Court
## WESTERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK
BY LETITIA JAMES, NEW YORK STATE
ATTORNEY GENERAL

**JUDGMENT IN A CIVIL CASE**
CASE NUMBER: 21-CV-759

v.

NIAGARA-WHEATFIELD CENTRAL SCHOOL DISTRICT

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED:  that the Report and Recommendation is accepted and adopted, in part; that Defendant's Motion for Judgment on the Pleadings is Granted without prejudice; that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim; and that the Plaintiff's leave to file a second amended complaint is Denied.

Date: August 29, 2022

MARY C. LOEWENGUTH
CLERK OF COURT

By: s/ Jennifer V.
     Deputy Clerk

JA139

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X       Case No. 21-759

People of the State of New York, by LETITIA JAMES,
Attorney General of the State of New York,

                                   Plaintiff,

                       -against-

NIAGARA WHEATFIELD CENTRAL SCHOOL DISTRICT,

                                   Defendant.

---------------------------------------------------------------------------X

## NOTICE OF APPEAL

        Notice is hereby given that Plaintiff State of New York, by Letitia James, Attorney

General of the State of New York, hereby appeals to the United States Court of Appeals for the

Second Circuit from the Decision and Order in this action dated August 26, 2022 (ECF No. 52),

which accepted and adopted, in part, the Report and Recommendation issued on May 11, 2020

(ECF No. 41), granted Defendant's Motion for Judgment on the Pleadings (ECF No. 34) without

prejudice; declined to exercise supplemental jurisdiction over Plaintiff's state law negligent

supervision claim; and denied Plaintiff leave to file a second amended complaint.


Dated: September 26, 2022              Respectfully submitted,

                                       LETITIA JAMES
                                       Attorney General of the State of New York

                            By:        /s/ Sandra Pullman

                                       Sandra Pullman
                                       Senior Counsel
                                       Office of the New York State Attorney General

JA140

Civil Rights Bureau
28 Liberty Street
New York, New York 10003
(212) 416-8623
Sandra.pullman@ag.ny.gov