# 22-2178-cv

## United States Court of Appeals

*for the*

## Second Circuit

PEOPLE OF THE STATE OF NEW YORK by Letitia James,
New York State Attorney General,

*Plaintiff-Appellant,*

– v. –

NIAGARA-WHEATFIELD CENTRAL SCHOOL DISTRICT,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK (BUFFALO)

## BRIEF FOR DEFENDANT-APPELLEE

DANIEL R. LeCOURS
HARRIS BEACH PLLC
677 Broadway, Suite 1101
Albany, New York 12207
(518) 427-9700

SVETLANA K. IVY
HARRIS BEACH PLLC
99 Garnsey Road
Pittsford, New York 14534
(585) 419-8800

*Attorneys for Defendant-Appellee*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF THE CASE .................................................................. 4

SUMMARY OF ARGUMENT ................................................................. 7

ARGUMENT ........................................................................................... 8

POINT I     THE DISTRICT COURT PROPERLY DISMISSED
PLAINTIFF'S TITLE IX CLAIM BECAUSE OAG
FAILED TO ESTABLISH *PARENS PATRIAE*
STANDING AND FAILED TO STATE A CLAIM
UNDER TITLE IX ................................................................ 8

    A.   Plaintiff lacks standing as *parens patriae* ......................... 8

       1. OAG cannot establish *parens patriae* standing
because the First Amended Complaint does not
plausibly allege any violation of Title IX and
only alleges distinct individual incidents not
impacting a substantial segment of the
population ........................................................................ 10

       2. *11 Cornwell*, on which OAG relies, is not
analogous to this case ..................................................... 15

       3. Vague references to 30 unrelated incidents
allegedly involving unidentified students of the
District do not support OAG's standing ........................... 17

    B.   OAG's allegations concerning TG, AS, CC,
and LW fail to state a cause of action under
Title IX .............................................................................. 18

       1. OAG's allegations regarding TG are insufficient ............ 20

       2. OAG's allegations regarding CC are insufficient ............ 24

i

3. OAG's allegations regarding AS are insufficient .................25

4. OAG's allegations regarding LW are insufficient................27

C. THE DISTRICT COURT CORRECTLY DECLINED TO EXERCISE SUPPLEMENTAL JURISDICTION OVER OAG'S STATE-LAW NEGLIGENT SUPERVISION CLAIM, WHICH FAILED AS A MATTER OF LAW IN ANY EVENT ..................28

POINT II    THE DISTRICT COURT PROPERLY DENIED OAG'S BELATED REQUEST FOR LEAVE TO AMEND ITS COMPLAINT A SECOND TIME ...........................33

CONCLUSION ........................................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AA v. Hammondsport Cent. Sch. Dist.*,
   527 F. Supp. 3d 501 (W.D.N.Y. 2021) ........................................................ 20, 30

*Alfred L. Snapp & Son v. Puerto Rico*,
   458 U.S. 592 (1982) ................................................................................... 10, 11

*Aponte v. Estate of Rene Aponte*,
   172 A.D.3d 970 (2d Dept. 2019) ......................................................................32

*Bellinger v. Ballston Spa Cent. Sch. Dist.*,
   57 A.D.3d 1296 (3d Dept. 2008) .......................................................................31

*Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*,
   No. 20 Civ. 5635 (NRB), 2022 U.S. Dist. LEXIS 45960
   (E.D.N.Y. Mar. 15, 2022) ..................................................................................34

*Brandy B. v. Eden Cent. Sch. Dist.*,
   15 N.Y.3d 297 (2010) .......................................................................................32

*Brodsky v. Trumbull Bd. of Educ.*,
   No. 3:06 CV 1947 (PCD), 2009 U.S. Dist. LEXIS 8799
   (D. Conn. Jan. 30, 2009) ............................................................................. 25, 28

*Burwell v. Pekin Cmty. High Sch. Dist. 303*,
   213 F. Supp. 2d 917 (C.D. Ill. 2002) ............................................................ 22, 24

*Carabello v. N.Y.C. Dep't of Educ.*,
   928 F. Supp. 2d 627 (E.D.N.Y. 2013) ...................................................... passim

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) .........................................................................................29

*Commer v AFSCME*,
   96 F. App'x 757 (2d Cir. 2004) ........................................................................34

*Connecticut v. Physicians Health Servs. of Conn.*, Inc.,
   287 F.3d 110 (2d Cir. 2002) ...................................................................9

*Davis v. Monroe County Bd. of Educ.*,
   526 U.S. 629 (1999) ....................................................... 19, 20, 22, 24

*Doe v. Univ. of Ky.*,
   959 F.3d 246 (6th Cir. 2020) ...............................................................21

*Doyle v. Binghamton City Sch. Dist.*,
   60 A.D.3d 1127 (3d Dep't. 2009)........................................................30

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) .................................................................32

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ...............................................................................9

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998) ....................................................................... 22, 26

*Gordon v. Niagara Wheatfield Central School District*,
   Case No. 1:22-cv-00172 (W.D.N.Y.)..................................................13

*Harrison v. Jefferson Par. Sch. Bd.*,
   No. 20-2916 2022 U.S. Dist. LEXIS 31453
   (E.D. LA. Feb. 23, 2022).....................................................................16

*Hybred Int'l v. Thorne Legal, Inc.*,
   No. CV-08-4343 (CPS) (KAM) 2008 U.S. Dist. LEXIS 95330
   (E.D.N.Y. Nov. 24, 2008) ...................................................................33

*Jusino v Fed'n of Cath. Teachers, Inc.*,
   54 F.4th 95 (2d Cir. 2022) ...................................................................19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................9

*Mirand v. City of New York*,
   84 N.Y. 2d 44 (1994) .................................................................. 30, 31

*Morabito v. New York*,
   803 F. App'x 463 (2d Cir. 2020) ...........................................................34

*N.Y. by Vacco v. Mid Hudson Med. Grp.*, *P.C.*,
   877 F. Supp. 143 (S.D.N.Y. 1995) ............................................... 14, 16

*New York v. Peter & John's Pump House*,
   914 F. Supp. 809 (N.D.N.Y. 1996) ............................................... 10, 13

*New York v. Town of Wallkill*,
   No. 01-Civ-0364, 2001 U.S. Dist. LEXIS 13364
   (S.D.N.Y. Mar. 16, 2001) ..................................................................10

*New York v. Utica City School District*,
   177 F. Supp. 3d 739 (N.D.N.Y. 2016) ................................................13

*Noto v 22nd Century Grp.*,
   35 F.4th 95 (2d Cir. 2022) ...................................................................4

*People by Abrams v. 11 Cornwell Co.*,
   695 F.2d 34 (2d Cir. 1982), *vacated in part on other grounds*
   *on reh'g en banc*, 718 F.2d 22 (2d Cir. 1983) ......................... 9, 10, 15

*People by Abrams v. Holiday Inns*,
   656 F. Supp. 675 (W.D.N.Y. 1984) ...................................................17

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274 (2d Cir. 2006) ..............................................................34

*RF v. S. Country Cent. Sch. Dist.*,
   No. 13-cv-2710 (SJF)(AKT), 2016 U.S. Dist. LEXIS 130671
   (E.D.N.Y. Sep. 23, 2016) ............................................................ 30, 32

*Seabrook v. Jacobson*,
   153 F.3d 70 (2d Cir. 1998) ................................................................29

*Soriano v. Bd. of Educ.*,
   No. 01CV4961 (JG),2004 U.S. Dist. LEXIS 21529
   (E.D.N.Y. Oct. 27, 2004)................................................................. 23, 28

*Support Ministries for Persons with Aids, Inc. v. Waterford*,
   799 F. Supp. 272 (N.D.N.Y. 1992) .......................................................14

*TechnoMarine SA v. Giftports, Inc.,*
   758 F.3d 493 (2d Cir. 2014) ...............................................................34

*Tyrrell v. Seaford Union Free Sch. Dist*.,
   792 F. Supp. 2d 601 (E.D.N.Y. 2011).................................................24

*Valencia ex rel. Franco v. Lee,*
   316 F.3d 299 (2d Cir. 2003) ...............................................................29

*Welcome v. N.Y.C. Dep't of Educ. (In re Welcome)*,
   No. 17-CV-5407 (NGG) (VMS), 2018 U.S. Dist. LEXIS 190716
   (E.D.N.Y. Nov. 5, 2018) .............................................................. 26, 27

## Statutes

20 U.S.C. § 1681(a) ...............................................................................19

28 U.S.C. § 1367(c)(3)............................................................................29

N.Y. Gen. Mun. Law § 50-e ............................................................... 8, 33

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682............... passim

## PRELIMINARY STATEMENT

Defendant-Appellee Niagara Wheatfield Central School District (the "District") respectfully submits this brief in opposition to the appeal by Attorney General Letitia James ("OAG") from the order issued by the United States District Court for the Western District of New York (Sinatra, J.), whereby the District Court granted the District's motion for judgment on the pleadings. The Order should be affirmed in all respects.

During the 2018-2019 school year, Niagara Wheatfield Central School District encountered a difficult situation: a female student, TG, was sexually assaulted by a male student, ED, off school grounds. The District was in the dark regarding the criminal proceedings initiated by the District Attorney because ED was charged as a juvenile offender and out of concern for TG's privacy. The District carefully navigated this delicate balance, and was successful at keeping the two students apart during the entire school year except for, according to OAG, fleeting "glares" by ED in school hallways and comments to TG by various other students on social media. At the end of the school year, unbeknownst to the District, ED pled guilty, and TG's mother took to social media, claiming the District failed to protect TG. This sparked a student walkout, which garnered the attention of the media, and then OAG.

Cognizant that it would lack standing to pursue TG's incident alone, OAG launched an investigation, seeking to identify other students it could call victims in a lawsuit against the District. OAG found three other female students who, it alleges, were harassed by other students during the period from 2017 to 2021. These alleged other incidents bear no similarities to the unique situation involving TG and ED, but rather involve allegations of name-calling and a spontaneous physical altercation. Yet, when OAG commenced this action, the complaint stitched these incidents together to portray the District as inattentive and uncaring toward its students. The effort, however, was not enough to overcome the glaring defects with OAG's claims.

Magistrate Judge Leslie G. Foschio issued a Report and Recommendation ("R&R") recommending that the District's motion for judgment on the pleadings be granted based on OAG's failure to establish *parens patriae* standing. Specifically, the Magistrate Judge concluded that OAG "fail[ed] to establish that the alleged sexual harassment and discrimination of the four student victims within [the District] sufficiently establishes injury to a substantial segment of New York's population," and noted that OAG's conclusory reference to 30 additional incidents constituted "conclusory and unsupported allegations that fail to support a plausible Title IX claim." JA63-JA64. Moreover, the R&R stated that OAG's allegations "[do] not plausibly allege that [the District] maintains a policy or practice that Defendant necessarily would fail to take any corrective action in response to . . . gender-based

harassment and sexual assault" or "that having a written safety plan would necessarily prevent such conduct by other students." JA67. Indeed, even taking at face value OAG's allegations regarding written safety plans (which the District disputes), OAG still cannot identify any policy that routinely operates to discriminate against a segment of the population and there is not a discrete and identifiable policy that can support *parens patriae* standing. Furthermore, while OAG rests its claim on the alleged absence of written safety plans, OAG does not cite any authority requiring a written plan in each and every instance of student-on-student harassment.

The District Court accepted and adopted Judge Foschio's R&R, concluding that "Plaintiff has not identified authority to support *parens patriae* standing in a context like this one" because Plaintiff "relies on examples of factually distinct instances of discrimination" and "the exemplars do not establish that Defendant's policy or practice affects a substantial segment of the population." JA135, JA136. The District Court also accepted the recommendation to decline to exercise supplemental jurisdiction over Plaintiff's state-law negligent supervision claim.

OAG amended the Complaint once on consent and asked to amend the pleading again only after the R&R was issued. OAG did not identify how the proposed amendment would address the glaring deficiencies in the pleading. The District Court recited several applicable cases, including *Noto v 22nd Century Grp.,*

35 F.4th 95, 107-08 (2d Cir. 2022), and held that Plaintiff's "general reference to proposed amendment is insufficient and does not justify leave to amend."

The District Court appropriately dismissed this case, and the Order should be affirmed in all respects because it is consistent with applicable case law and supported by the Record.

## STATEMENT OF THE CASE

OAG brought this action against Niagara Wheatfield Central School District (the "District") alleging causes of action for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1682 *et seq.* ("Title IX") and common law negligent supervision in its First Amended Complaint ("FAC"). *See* JA9 (¶ 1). As a basis for these claims, OAG included the following allegations pertaining to four students – TG, CC, AS, and LW:

### **TG**

OAG alleged TG was raped by a male student, ED, at ED's home. JA12 (¶ 16). The incident was reported to the police, ED was arrested, and TG obtained a restraining order preventing ED from coming near her outside of school. *Id.* ¶ 17-18. TG's mother reported the assault to the District. *Id.* ¶¶ 20-21.  Thereafter, OAG alleges that ED, on various occasions during the following school year, stood outside TG's classroom and "glared" at her. JA13-JA14 (¶¶ 22, 31). OAG further alleged that TG received snapchats and text messages that referred to the incident with ED,

and was subjected to comments from other unnamed classmates, other than ED, regarding the sexual assault. JA13 (¶¶ 26, 28). As a result, TG allegedly started missing school and skipping class. JA13-JA14 (¶¶ 29, 31). At the very end of the school year, on May 23, 2019, ED pleaded guilty to rape, and TG's mother informed the District of the plea that same day. JA14 (¶¶ 32-33). Shortly thereafter, TG's mother posted about her interactions with the District on social media, claiming that the District failed to protect TG from ED during the school year, which prompted responses from other parents in the District. *Id.* ¶ 36. The attention surrounding TG's unique situation also prompted a student-organized walkout and garnered national media attention. JA14-JA15 (¶¶ 37, 41).

**<u>CC</u>**

OAG alleges CC was bullied in middle school for her choice of clothing, and was called names such as "tomboy", "gay", and "transgender". JA15 (¶ 43). CC allegedly reported the purported harassment to the school counselor. *Id.* ¶ 44. When, according to OAG, CC began wearing more feminine clothing in high school, she was then called "fat", "ugly", and "slut". JA15-JA16 (¶¶ 45-46). CC's family alleges that it reported such incidents to a high school guidance counselor. JA16 (¶ 47). OAG alleges that the District would not permit CC to transfer schools, and CC left high school permanently. *Id.* ¶¶ 50-51.

**AS**

OAG alleged that AS was bullied by fellow classmates via comments on TikTok. *Id.* ¶ 52. Following the distribution of the TikTok video, OAG alleged that students at a pep rally performed a chant about AS. JA17 (¶¶ 53-54). Following the pep rally, five female students allegedly physically assaulted AS. *Id.* ¶ 55. The District was not notified of any alleged harassment until after AS was assaulted. *Id.* ¶ 56. AS then transferred to a private high school. *Id.* ¶ 59.

**LW**

OAG alleged that LW, a second grader, was sexually assaulted at her housing complex by a fifth-grade student. *Id.* ¶ 60. The older student then allegedly interacted with LW at school by touching her arm when walking past her, encountering her in the restroom,[1] and making statements, such as that she was "damaged goods" and "no one will ever love you." JA18 (¶ 64). OAG further alleged that, after the fifth-grade student had left the school, other unnamed students made statements to LW that she was "damaged goods" and that she "enjoyed what the assailant had done to her". *Id.* ¶ 67. Finally, OAG alleged that "LW developed physical manifestations of stress, and had to attend counseling for more than two years." *Id.* ¶ 68.

The District vehemently denied any wrongdoing and identified numerous inaccuracies in OAG's allegations, but, for purposes of its motion to dismiss only,

---

[1] Both LW and the fifth-grade student are female.

the District assumed the allegations in the FAC are accepted as true. Notably, although Plaintiff-Appellant's Brief references purported "30 other incidents of similar sexual harassment or gender-based bullying," App. Br. at p. 13, neither the FAC nor OAG's submissions to the District Court provided any details with respect to any other incidents.

## SUMMARY OF ARGUMENT

The District Court's grant of Judgment on the Pleadings for the District and dismissal of Plaintiff's First Amended Complaint should be affirmed in all respects. OAG clearly failed to establish *parens patriae* standing to bring this lawsuit because the First Amended Complaint only alleged circumstances unique to four individual students that were dissimilar from and unrelated to one another. There was no showing of any violation of Title IX, much less a pattern of such violations, and there was no allegation of an injury to a substantial segment of the population to confer *parens patriae* standing on OAG. Furthermore, even if OAG had standing, the First Amended Complaint still would have been properly dismissed for failure to state a claim under Title IX of the Education Amendments of 1972.

Having dismissed all of the claims arising under federal law, the District Court properly declined to exercise supplemental jurisdiction over OAG's claim for negligent supervision under New York law. Even if it were appropriate to exercise such jurisdiction, this state law claim plainly fails on its face because OAG sought

only injunctive relief, and the failure to seek monetary relief renders the negligent supervision claim invalid under New York General Municipal Law § 50-e.

The District Court's decision to deny Plaintiff leave to amend its complaint for a second time, which decision must be reviewed for abuse of discretion, was well-reasoned and appropriate as well. The District Court correctly noted that while OAG generally referenced a potential amendment, not only did OAG never file a motion to amend, it also made no attempt to identify how an amendment would cure the deficiencies in the FAC.

## ARGUMENT

## POINT I

## THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFF'S TITLE IX CLAIM BECAUSE OAG FAILED TO ESTABLISH *PARENS PATRIAE* STANDING AND FAILED TO STATE A CLAIM UNDER TITLE IX

### A. PLAINTIFF LACKS STANDING AS *PARENS PATRIAE*

The District Court correctly held that "Plaintiff has not identified authority to support *parens patriae* standing in a context like this one," and "the exemplars [alleged by OAG] do not establish that Defendant's policy or practice affects a substantial segment of the population." JA135, JA136.

To satisfy standing requirements under Article III of the U.S. Constitution, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). These requirements ensure federal courts adjudicate only actual "cases" and "controversies". *Lujan*, 504 U.S. at 576. In this case, given the absence of any explicit statutory grant of authority to the Office of the Attorney General to bring suit, OAG only has standing to pursue a claim on behalf of citizens of the State of New York if it can establish the requirements for *parens patriae* standing. *See Connecticut v. Physicians Health Servs. of Conn.*, *Inc*., 287 F.3d 110, 121 (2d Cir. 2002).

"The doctrine of *parens patriae* allows states to bring suit on behalf of their citizens in certain circumstances by asserting a 'quasi-sovereign interest.'" *Id.* at 119. To establish *parens patriae* standing: (a) the State "must articulate an interest apart from the interests of particular private parties, i.e., the State must be more than a nominal party"; (b) the State must have "alleged injury to a sufficiently substantial segment of its population"; and (c) demonstrate that complete relief from that injury could not be obtained by individuals in a private lawsuit. *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982), *vacated in part on other grounds on reh'g en banc*, 718 F.2d 22 (2d Cir. 1983) (citing *Alfred L. Snapp & Son v. Puerto Rico*,

458 U.S. 592, 607 (1982)).  OAG did not – and cannot – meet this standard here

because the FAC does not allege a pattern of violations of Title IX, but rather alleges

a scattering of factually-disparate student-on-student incidents, over a 3-year time

period, many of which occurred off school grounds and/or when school was not in

session. Indeed, OAG has not even plausibly alleged one violation of Title IX, much

less an injury to a substantial segment of the population.

**1. OAG cannot establish *parens patriae* standing because the First Amended Complaint does not plausibly allege any violation of Title IX and only alleges distinct individual incidents not impacting a substantial segment of the population**.

To determine whether a case involves injury to a substantial segment of the

population, "courts apply a common sense approach that takes into consideration

both the direct and the indirect effects of the injury" and look for a "clear indication

that the State is acting on behalf of a broad spectrum of the public." *New York v.

Town of Wallkill*, No. 01-Civ-0364, 2001 U.S. Dist. LEXIS 13364, at *14-16

(S.D.N.Y. Mar. 16, 2001). Ultimately, "more must be alleged than injury to an

identifiable group of individual residents." *New York v. Peter & John's Pump House*,

914 F. Supp. 809, 812 (N.D.N.Y. 1996) (quoting *Snapp*, 458 U.S. at 607). The

"sting" should be almost "universal." *11 Cornwell*, 695 F.2d at 40. "One helpful

indication in determining whether an alleged injury to the health and welfare of its

citizens suffices to give the State standing to sue as *parens patriae* is whether the

injury is one that the State, if it could, would likely attempt to address through its

sovereign law making powers." *Snapp,* 458 U.S. at 607. In other words, as the Magistrate Judge concluded and the District Court agreed, OAG was required to establish that the District had a discriminatory "policy or practice" that was, and would continue to be, routinely enforced against a discrete segment of the population. *See* JA66; JA136. Absent such allegations, OAG is impermissibly acting as a self-appointed representative of individual students.

Here, the FAC epitomizes an insufficient pleading, which alleges "injury to an identifiable group of individual residents" – the four students identified – without doing more. The four unrelated cases of alleged student-on-student harassment do not establish that OAG is acting on behalf of a broader public and the four exemplar cases do not create a "sting" that is so universally felt so as to confer *parens patriae* standing on OAG. In fact, looking at the circumstances surrounding each of the alleged situations, the opposite is clear. The four alleged cases of harassment are not in any way indicative of any policy or practice of discrimination affecting a substantial segment of any population. Instead, these are four isolated and unrelated incidents, which occurred across the District over a three-year period, many of which occurred off school grounds, on social media, and/or when school was not in session. And, as the Magistrate Judge recognized, OAG's case is missing the "common thread" linking the disparate and unrelated incidents together. JA66; *see* JA135 (agreeing with Magistrate Judge Foschio that OAG erroneously "relies on examples

of factually distinct instances of discrimination and a general policy or practice of Defendant's alleged failure to respond adequately to such discrimination").

The differences between the alleged experiences of the four identified students are facially evident. TG was allegedly sexually assaulted off campus by another high school student (*see* JA12-JA15 (¶¶ 16-41)); CC was allegedly bullied by other students in middle school and high school for her clothing and called names such as "ugly" and "fat" (JA15-JA16 (¶¶ 42-51)); AS was allegedly assaulted by other high school students at a school pep rally and called names on TikTok (JA16-JA17 (¶¶ 52-59)); and LW was allegedly sexually assaulted off campus by another elementary school student (JA17-JA18 (¶¶ 60-68)). The differences are obvious, yet the FAC generally and vaguely alleges that the District failed to protect female students from sexual assault and harassment without citing any specific facts in support. OAG's allegation that the District failed to draft "written safety plans" (JA19 (¶ 69)) is similarly unhelpful to its cause because having a written safety plan is a "requirement" of OAG's own invention. OAG does not cite any authority stating that a written safety plan is required under Title IX, nor does it plead any facts that show how having a written safety plan would have prevented the student-on-student conduct identified in the FAC, much less how such written safety plans would protect other students in the District in the future.

12

OAG's own press release regarding this case is telling. It refers only to the "nationwide attention to [the District's] mishandling of TG's rape" and fails to even mention the other three students. *See* JA44-JA46. This confirms that OAG initiated this action as a response to the national media attention garnered by TG's case. Not only is it improper to rely on *parens patria*e standing to litigate the case of a particular student or students, *see Peter & John's Pump House, Inc*., 914 F. Supp. at 811 (*parens patriae* standing must involve "more than a state merely stepping in to represent the interests of particular citizens"), it is particularly unwarranted here since TG commenced her own private action against the District. *See Gordon v. Niagara Wheatfield Central School District*, Case No. 1:22-cv-00172 (W.D.N.Y.).

As Magistrate Judge Foschio correctly and comprehensively analyzed, the facts alleged by OAG in this case are readily distinguishable from other cases where the state was deemed to have established *parens patriae* standing after adequately alleging injury to a substantial segment of the population. JA62-JA69. For example, in *New York v. Utica City School District*, 177 F. Supp. 3d 739, 748 (N.D.N.Y. 2016), the court found that the Attorney General had alleged an injury to a substantial segment of the State's population given the "the relatively large and still growing population of LEP [Limited English Proficient] children of immigrant families that reside within the District." There, the complaint had specifically alleged a "systematic diversion" of all LEP students to an inadequate and unequal educational

program. *Id*. at 744. In that school district, 25% of the city's 60,000 residents spoke a language other than English at home and one in ten households did not have a "member over the age of 14 who [spoke] English 'very well.'" *Id*. Likewise, in *Support Ministries for Persons with Aids, Inc. v. Waterford*, 799 F. Supp. 272, 278 (N.D.N.Y. 1992), the Court found alleged injury to a substantial segment of the population where the plaintiff challenged a local ordinance enacted to restrict the placement of boarding houses for homeless persons suffering from HIV/AIDS, given the "thousands of people living with AIDS in New York State, and hundreds of thousands of HIV-infected people who are likely to develop AIDS." And in *N.Y. by Vacco v. Mid Hudson Med. Grp*., P.C., 877 F. Supp. 143, 148 (S.D.N.Y. 1995), the court found alleged injury to a substantial segment of the population, where the plaintiff alleged that a hospital failed to provide appropriate accommodations for deaf and hard of hearing patients, which comprise 7% of the population. Each of these cases concern an issue affecting, or at risk of affecting, a substantial and identifiable population – *i.e.*, LEP students, homeless individuals with HIV/AIDS, deaf and hearing-impaired patients. Furthermore, as the Magistrate Judge correctly observed, in each of these other cases, the alleged discriminatory conduct, policy or practice was, as a matter of routine, enforced against a member of discrete affected group absent intervention by OAG and the courts. JA66. Thus, the "substantial

segment" inquiry was satisfied in those cases, but the circumstances do not meet that standard here.

**2. *11 Cornwell*, on which OAG relies, is not analogous to this case.**

OAG's attempt to analogize this case to *11 Cornwell* is similarly without merit. That case involved a challenge to exclusionary housing practices discriminating against mentally disabled persons, and if that were not enough to render that case a "paradigm case for *parens patriae* standing," this Court noted that a private remedy was not even available to the mentally disabled individuals in that instance. 695 F.2d at 40. Indeed, the defendants in that case sought to frustrate the mission and objectives of a state agency—the Office of Mental Retardation and Developmental Disabilities ("OMRDD")—by taking affirmative steps to prevent OMRDD from acquiring real property. Therefore, in that case, the "substantial segment" element was satisfied because, if the type of "NIMBY-ism" at issue was "tolerated and left without redress, countless others would be affected." *Id.* at 39-40. In other words, the defendants' singular course of conduct in *11 Cornwell* had widespread ramifications for OMRDD and the disabled community that it was responsible for. OAG's allegations here do not support the same conclusion as the FAC's alleges a diffuse set of circumstances that affects only the individual students identified. OAG cannot identify any inevitable, universal impact on a specific segment of the population that must be prevented.

The R&R noted the "significant . . . common thread in the cases on which Plaintiff relies," is that "the alleged discriminatory conduct, policy, or practice would have routinely been enforced against a member of the targeted population." JA66. In contrast, OAG here has cherry-picked four unrelated and isolated cases of alleged student-on-student harassment in an attempt to establish *parens patriae* standing. Not only is this case only about four individual students, there is no common thread between those four situations that would allow OAG to argue that this case is about some broader principle or policy that could arguably affect a broader group of students. The students identified in the FAC allegedly were the subjects of various conduct by other students: some on school grounds and some off of school grounds; some during school hours and some outside of school hours; some over social media and some in person. Although there is precedent for OAG using "test cases" to litigate alleged discrimination, to establish standing, those test-cases must be "exemplars for a larger class." *Mid Hudson Med. Grp.*, 877 F. Supp. at 147. Here, the common thread needed to allege injury to a substantial segment of the population is entirely absent. OAG has only identified students who had negative encounters with their peers and made allegations that the District did not do enough to prevent them. *See Harrison v. Jefferson Par. Sch. Bd.,* No. 20-2916 2022 U.S. Dist. LEXIS 31453, at *34-*39 (E.D. LA. Feb. 23, 2022) (dismissing state's claims for lack of *parens patriae* standing because the state failed to satisfy the "substantial segment"

requirement where it only relied on the circumstances of two students to establish a "policy, practice, or custom" and that alleged future harm was "purely speculative").

### 3. Vague references to 30 unrelated incidents allegedly involving unidentified students of the District do not support OAG's standing.

OAG's bare reference to "at least thirty incidents of sexual assault, harassment, or gender-based bullying in the last few years," JA19 (¶ 69), is insufficient to remedy the deficiency in its pleading because OAG does not allege that any of these alleged incidents amounted to a violation by the District of law or a duty owed to its students. The Magistrate Judge correctly disregarded these "conclusory and unsupported allegations" as insufficient to support a Title IX claim. JA64. In fact, OAG does not describe the nature of any of these other alleged incidents, much less the elements necessary to assert a legal claim. The purported practice OAG has identified as the basis for its claim—the alleged absence of a written safety plan or documenting the steps taken to address student-on-student harassment—is not a policy that routinely operates to discriminate against a segment of the population, much less a discrete and identifiable one. Thus, even had OAG described the details of thirty additional incidents of student-on-student conduct, it would still have failed to establish *parens patriae* standing.

This case is analogous to *People by Abrams v. Holiday Inns*, 656 F. Supp. 675, 677 (W.D.N.Y. 1984). In *Holiday Inns*, the Court found that the Attorney General's complaint failed to allege an injury to a substantial segment of New York's

population and therefore failed to sufficiently allege *parens patriae* standing. In evaluating the plaintiff's claims of age and gender-based employment discrimination that centered on the experiences of particular employees, the Court concluded that the required showing had not been made "[d]espite plaintiffs' assertions that countless other employees may be subjected to defendants" practice of age and gender discrimination. *Id.* at 677. Here, OAG makes similar conclusory allegations that the District has not "taken the most basic steps to prevent or respond to future sexual assaults," JA19 (¶ 70), and "will not protect [students] from sexual assault, harassment, or gender-based bullying." *Id.* ¶ 72. There is no established pattern or violations, and OAG's allegations of speculative future harm to a larger segment of the student population do not rise to the level of an alleged injury to a sufficiently substantial segment of the population.

For all of these reasons, the District Court was absolutely correct to accept and adopt the R&R's recommendation to grant the District's motion and dismiss OAG's Title IX claim because OAG did not establish *parens patriae* standing to pursue that claim.

## B. OAG'S ALLEGATIONS CONCERNING TG, AS, CC, AND LW FAIL TO STATE A CAUSE OF ACTION UNDER TITLE IX

Even if this Court were to find that OAG has standing to bring this action, the District Court's order should still be affirmed because, even accepting all of OAG's allegations as true, the FAC fails to state a claim under Title IX. This Court may

"affirm on any ground with support in the record, including grounds upon which the district court did not rely." *See Jusino v Fed'n of Cath. Teachers, Inc.,* 54 F.4th 95, 100 (2d Cir. 2022). Here, OAG's failure to state a claim is a separate and independent ground for dismissal, which was briefed below. JA68.

Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681(a). To establish such a claim, a plaintiff must demonstrate that: (1) the school authorities had actual knowledge of the harassment; (2) they were deliberately indifferent to the harassment; and (3) the harassment was "so severe, pervasive, and objectively offensive" that it deprived the plaintiff of "access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). "Acknowledging the inevitability of student misconduct and the practical realities of responding to student behavior, the Supreme Court has explained that this standard will not be met by simple acts of teasing and name-calling, nor will it be met by a single instance of one-on-one peer harassment unless the instance is serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *AA v. Hammondsport Cent. Sch. Dist*.,

527 F. Supp. 3d 501, 511 (W.D.N.Y. 2021) (citing *Davis*, 526 U.S. at 652-53 (internal quotations omitted)).

OAG failed to allege that the student-on-student harassment of TG, CC, AS, and LW was "so severe, pervasive, and objectively offensive" that it deprived each student of "access to the educational opportunities or benefits provided by the school." Furthermore, OAG failed to allege facts that demonstrate the District had actual knowledge of the harassment of AS. And OAG failed to allege that TG and LW were actually deprived of "access to the educational opportunities or benefits provided by the school" at all, much less as a result of actionable conduct. The following are brief summaries of each of the shortcomings and insufficiencies in OAG's pleading, which render any claim under Title IX not viable.

### 1. OAG's allegations regarding TG are insufficient.

OAG alleges TG was sexually assaulted by a fellow student, ED, off campus, at ED's home. *See* JA12 (¶ 16). Notably, OAG recognizes that the District is not responsible for and cannot be liable for the off-campus sexual assault of which the District had no notice. TG's mother reported the assault to the District before the 2018-2019 school year had commenced, at which point the District made certain accommodations. JA13 (¶¶ 20- 21). The only allegations in the FAC of any contact whatsoever between ED and TG during the school year is that ED "would frequently stand outside [TG's] classroom and wait for her to walk out of the room and then

glare at her." JA13 (¶ 22); *see also id.* JA14 (¶ 31) (alleging that "ED stood in the doorway of that class and stared at TG"). OAG also alleges one-off conduct by other students (not ED) towards TG without any allegation that they were acting at ED's behest. The FAC alleges that, as a result, TG's mental health suffered and she started missing school. JA13 (¶¶ 23, 29). The attention surrounding TG's case also prompted a student-organized walkout and garnered national media attention. JA14-JA15 (¶¶ 37, 41).

OAG failed to state a claim with respect to TG for three reasons. First, OAG cannot meet the "severe and pervasive" prong. Second, the conduct by the other students is not chargeable to the District since there is no allegation the District had actual knowledge that such conduct would occur. And, third, the FAC fails to allege that TG was denied access to educational benefits.

The FAC clearly does not allege "severe and pervasive" conduct that could support its claim. As acknowledged by OAG, the District made accommodations to keep TG and ED separate during the school year, JA12 (¶ 21), so the allegation on page 25 of the Appellant's Brief that the District "allowed [behaviors] to continue unchecked" is plainly inaccurate and not supported by the pleading itself. The allegations that ED "glared" at TG from a distance in the school's public hallways at various times throughout the school year do not rise to the level of severe or pervasive harassment. *See Doe v. Univ. of Ky.*, 959 F.3d 246, 251-52 (6th Cir. 2020)

(allegations that a male student, who had previously committed sexual assault against a female student, stared at the female student, stood by her at a party, followed her home, and sat near her in the library were insufficient under Title IX). And even if the alleged conduct of the other students is considered, it fails to rise to the level of "severe and pervasive" conduct. Without such allegations chargeable against the District, OAG's allegations fall well short of the required threshold. *See Davis*, 526 U.S. at 652-53; *Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 930 (C.D. Ill. 2002) (Title IX severe, pervasive and objectively offensive element not met as a matter of law when the harassment was only verbal and "Plaintiff … was called sexual names, such as bitch, pussy, and slut … on a 'daily' basis.").

There is also no allegation in the FAC that the District had any knowledge that other students (other than ED) would communicate with TG via social media, or how, according to OAG, digital encounters of that type could have been avoided. The entire purpose of requiring actual knowledge under Title IX is to allow school districts to take steps to voluntarily remediate discriminatory conduct. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 289 (1998). OAG has never explained how, based upon what it alleges the District knew, the District could have prevented unnamed students (other than ED) from contacting TG via social media or text message. OAG also does not allege that any of these other students contacted TG

more than once, or that the District had knowledge beforehand that these particular students might do so. As such, these scattered, one-off incidents, cannot support a Title IX claim. *See Soriano v. Bd. of Educ.*, No. 01-CV-4961 (JG), 2004 U.S. Dist. LEXIS 21529, at *13 (E.D.N.Y. Oct. 27, 2004) (perception that school was undisciplined was insufficient to confer actual knowledge). Without them, however, all that is left are ED's alleged "glares" and "stares," which are insufficient as a matter of law.

Finally, OAG has not sufficiently alleged that TG was deprived of access to the educational opportunities or benefits provided by the District.  The FAC only alleges that TG's mental health suffered and she started missing school, but those alleged injuries do not rise to the level of depriving TG of the educational opportunities provided. JA13 (¶¶ 23, 29). In *Soriano*, the Court found that a victim who had "declining grades and had to see a therapist" had not properly alleged a denial of access to the school's resources and benefits to properly bring a claim under Title IX.  *Id*. at * 21; *see also Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (plaintiff who was diagnosed with "PTSD and suffers from flashbacks and nightmares" was not deprived of access to educational opportunities).

For all of these reasons, OAG failed to state a claim under Title IX based on the allegations concerning TG.

### 2. OAG's allegations regarding CC are insufficient.

OAG alleges CC was bullied in middle school for her choice of clothing, and was called names such as "tomboy", "gay", and "transgender". JA15 (¶ 43). When, according to OAG, CC began wearing more feminine clothing in high school, she was then allegedly called "fat", "ugly", and "slut". JA15-JA16 (¶¶ 45-46). While gender-based bullying can be actionable under Title IX under different circumstances, OAG's allegations that CC was called various names by fellow students plainly do not rise to the level of "severe, pervasive, and objectively offensive conduct" actionable under Title IX.

As the Supreme Court instructed in *Davis*, name-calling by other students, regardless of the words used, does not support a Title IX claim. The Supreme Court made clear that school districts are not liable for "simple acts of teasing and name-calling among school children . . . even where these comments target differences in gender." 526 U.S. at 652*; see also Tyrrell v. Seaford Union Free Sch. Dist*., 792 F. Supp. 2d 601, 629 (E.D.N.Y. 2011) (plaintiff called names such as "lesbian" and "carpet-muncher" did not establish a Title IX claim); *Burwell,* 213 F. Supp. at 930. Furthermore, gendered or sexually-loaded insults such as "bitch", "whore", "prude", or "slut" also are not sufficiently severe or offensive to establish a viable Title IX claim. *Brodsky v. Trumbull Bd. of Educ*., No. 3:06 CV 1947 (PCD), 2009 U.S. Dist. LEXIS 8799, at *18-*19 (D. Conn. Jan. 30, 2009) (where "[p]laintiffs . . . alleged

that S.B. was subjected to name-calling and insults, had a straw thrown at her, had a pencil stuck under her butt, had her butt slapped by J.S. at the Brodsky home . . . , and on one occasion, had her breasts and/or buttocks touched by J.S. in the hallway at school without S.B.'s consent," "the alleged behavior was not sufficiently pervasive or severe from an objective standpoint so as to give rise to a claim under Title IX").

Here, OAG has only alleged that CC was subjected to inappropriate name-calling by fellow students. Student-on-student insults and name calling, even where highly inappropriate or offensive, are not sufficiently severe to constitute the basis for a Title IX claim. While some of the alleged insults directed toward CC may be construed as gender-based or "sexually loaded," this fact is insufficient to establish a level of harassment that is severe, pervasive, and objectively offensive to deprive CC of access to the educational opportunities or benefits provided by the District. Therefore, OAG has failed to state a claim under Title IX based on the allegations concerning CC.

### 3. OAG's allegations regarding AS are insufficient.

OAG alleges that AS was bullied by fellow classmates via comments on TikTok. JA16 (¶ 52). Following the distribution of the video, there was allegedly an incident in which fellow students performed a chant about AS at a pep rally and then

physically assaulted AS. JA17 (¶¶ 53-56). The District was not notified of any alleged harassment until after the assault. *Id.* ¶ 56.

For an educational institution to be liable under Title IX, the plaintiff must establish that a school official with "authority to address the alleged discrimination" had "actual knowledge," as opposed to mere constructive knowledge, of the discrimination. *Gebser*, 524 U.S. at 290. The school official must possess enough knowledge of the harassment that he or she "reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." *Carabello*, 928 F. Supp. 2d at 638. The "actual knowledge" standard requires more than allegations that school staff "should have known" about the harassment. *Welcome v. N.Y.C. Dep't of Educ. (In re Welcome)*, No. 17-CV-5407 (NGG) (VMS), 2018 U.S. Dist. LEXIS 190716, at *15 (E.D.N.Y. Nov. 5, 2018) (finding district did not have actual knowledge, where an alleged assault occurred in plain view of security camera and where an employee of the school district may have witnessed assault).

Here, OAG did not allege that the District had actual knowledge of the alleged harassment of AS until after the assault had already occurred. That some of the alleged harassment occurred at a school pep rally does not confer actual knowledge on the District because the standard requires more than an allegation that the District "should have known" of the harassment. *See Welcome*, 2018 U.S. Dist. LEXIS

190716, at \*15. The District could not have taken measures to prevent the incident until after AS's mother reported the harassment. In fact, the FAC does not allege that any further harassment of AS took place after the pep rally. Without allegations of actual knowledge of AS's harassment, OAG cannot maintain a Title IX claim based on the allegations concerning AS.

### 4.    OAG's allegations regarding LW are insufficient.

OAG alleges that LW, a second grader, was sexually assaulted by a fifth-grade female student off school grounds. JA17 (¶ 60). The fifth-grade student then allegedly harassed LW at school by touching her arm when walking past her and making statements such as that she was "damaged goods" and "no one will ever love you". JA18 (¶ 64). According to OAG, "LW developed physical manifestations of stress, and had to attend counseling for more than two years". *Id.* ¶ 68.  These allegations are insufficient to state a claim under Title IX in several respects.

First, the fifth-grade student's touching of LW's arm and various comments from other students do not rise to the level of severe and pervasive harassment. In cases involving more serious student-on-student conduct, Title IX claims against a school district have failed as a matter of law. *See, e.g.*, *Carabello*, 928 F. Supp. 2d at 638; *Brodsky*, 2009 U.S. Dist. LEXIS 8799, at \*19-\*20; *Soriano*, 2004 U.S. Dist. LEXIS 21529, at \*21. The conduct in this case, which involved brief encounters between two elementary school students before the fifth grader permanently left the

District, does not amount to actionable discrimination.    Second, as with TG, to the extent OAG included certain allegations about other students' comments to LW, OAG did not allege that the District had actual knowledge of other students' behaviors before they occurred.

Lastly, the fact that LW developed physical manifestations of stress and required therapy does not constitute deprivation of access to the District's educational opportunities. *See Soriano,* 2004 U.S. Dist. LEXIS 21529, at *21; *Carabello*, 928 F. Supp. 2d at 643.  In fact, the older student left the District shortly after the incident, so there cannot be a viable claim premised on the District's failure to respond and address the incident.

### C. THE DISTRICT COURT CORRECTLY DECLINED TO EXERCISE SUPPLEMENTAL JURISDICTION OVER OAG'S STATE-LAW NEGLIGENT SUPERVISION CLAIM, WHICH FAILED AS A MATTER OF LAW IN ANY EVENT

Having dismissed OAG's Title IX claim on standing grounds, the District Court appropriately declined to exercise supplemental jurisdiction over OAG's state-law claim for negligent supervision in accordance with applicable law.

28 U.S.C. § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim [] if [it] has dismissed all claims over which it has original jurisdiction."  Where, as here, "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988).  Indeed, the Second Circuit has even found that exercising supplemental jurisdiction over state-law claims after abandonment of all federal claims can constitute abuse of discretion. *See e.g., Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306 (2d Cir. 2003); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir. 1998).  Here, the District Court correctly concluded it lacked subject-matter jurisdiction over the Title IX claim and declined to exercise supplemental jurisdiction over OAG's remaining state-law claim.

Notably, OAG's negligent supervision claim fails on the merits and would be subject to dismissal in any event.  Under New York law, "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Carabello*, 928 F. Supp. 2d at 646. The attendant duty of care has been described as that of a "reasonably prudent parent," and as such, "school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily . . . absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act." *Mirand v. City of New York*, 84 N.Y. 2d 44, 49 (1994). "In a case stemming from injuries caused by the acts of fellow students, a 'breach of duty is established only by showing that the defendant school had specific, prior knowledge of the danger that caused the injury,

[such] that the third-party acts could reasonably have been anticipated.'" *AA*, 527 F. Supp. 3d at 507 (citing *Carabello*, 928 F. Supp. 2d at 647). Therefore, a successful negligent supervision claim requires a showing that the student's injury was "reasonably foreseeable . . . and proximately related to the school's failure to provide supervision." *RF v. S. Country Cent. Sch. Dist.*, No. 13-cv-2710 (SJF)(AKT), 2016 U.S. Dist. LEXIS 130671, at *43 (E.D.N.Y. Sep. 23, 2016). The imposition of this duty does not make schools insurers of the safety of their students, "for they cannot be reasonably expected to continuously supervise and control all movements and activities of students." *Carabello*, 928 F. Supp. 2d at 646. New York state courts routinely dismiss such claims where a plaintiff fails to allege facts that explain how a school district could have stopped the alleged student-on-student conduct if the district had been provided adequate notice. *See Doyle v. Binghamton City Sch. Dist.*, 60 A.D.3d 1127, 1128 (3d Dep't. 2009) (negligent supervision claim failed where "even the most careful supervision could not prevent" the incident); *Bellinger v. Ballston Spa Cent. Sch. Dist.*, 57 A.D.3d 1296, 1298 (3d Dept. 2008) (collecting cases for this principle).

Here, OAG failed to state a claim for negligent supervision. With respect to TG, OAG failed to allege TG's injury was reasonably foreseeable and proximately caused by the District's failure to adequately supervise its students. The District had no advanced notice that the snapchats, text messages and comments would be sent,

and cannot be liable for sporadic, unpredictable conduct of unidentified and unanticipated third parties. There are no plausible allegations as to how the District could have avoided the brief interactions in school hallways and comments from other students, which occurred primarily electronically and via social media. Despite best intentions, some amount of student misconduct is guaranteed to occur. Under New York law, school districts are not liable for such unfortunate, yet inevitable, conduct. *See Mirand*, 84 N.Y.2d at 49.

As to CC, like TG, OAG also failed to allege CC's injuries were reasonably foreseeable or that her injury was proximately caused by the District's failure to supervise its students. The District was only allegedly notified of CC's harassment through conversations with a high school guidance counselor after the fact.

AS did not report any of the alleged harassment until after the incidents had occurred. JA17 (¶ 56). OAG did not allege that AS was subjected to any further harassment after the District was notified. To the extent the initial harassment allegedly took place on TikTok, harassment on a social media platform does not provide notice to the District of reasonably foreseeable harm. *See RF*, 2016 U.S. Dist. LEXIS 130671, at *43-44 (finding that a student's injury was neither reasonably foreseeable nor proximately related to the district's failure to provide supervision where inappropriate student-teacher relationship was conducted almost "almost entirely off school premises in private locations, or via text and email using

private accounts and pseudonyms"). To hold a school district liable for student-on-student conduct, there must be "sufficiently specific knowledge or notice of the dangerous conduct." *Brandy B. v. Eden Cent. Sch. Dist.*, 15 N.Y.3d 297, 302 (2010).

The alleged events involving LW also cannot support a negligent supervision claim because the harm allegedly sustained by LW was not reasonably foreseeable, nor was it proximately caused by the District's failure to supervise its students.

Last but not least, the negligent supervision claim fails as a matter of law because OAG sought only injunctive relief, which is not an available remedy. New York courts have long recognized that injunctive relief is not available when an adequate remedy at law exists. *See, e.g., Aponte v. Estate of Rene Aponte*, 172 A.D.3d 970, 974 (2d Dept. 2019) ("A permanent injunction is a drastic remedy which may be granted only where the plaintiff demonstrates that it will suffer irreparable harm absent the injunction"); *see also Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) ("Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."); *Hybred Int'l v. Thorne Legal, Inc.*, No. CV-08-4343 (CPS) (KAM) 2008 U.S. Dist. LEXIS 95330, at *20 (E.D.N.Y. Nov. 24, 2008) ("equity will not enjoin torts where the remedy at law is adequate"). The usual remedy for a negligence claim is an award of money damages. In fact, we are not aware of a single case where injunctive relief was granted to any party—OAG or a

private litigant—in connection with a negligent supervision claim. Here, OAG opted to seek only injunctive relief in this action, presumably because it failed to comply with New York's notice of claim requirement for money damage claims against a municipal organization. *See* N.Y. Gen. Mun. Law § 50-e. This decision not to seek monetary relief, however, renders its negligent supervision claim invalid.

## POINT II

### THE DISTRICT COURT PROPERLY DENIED OAG'S BELATED REQUEST FOR LEAVE TO AMEND ITS COMPLAINT A SECOND TIME

The District Court's denial of OAG's request for leave to amend should also be affirmed as well because it was a sound exercise of discretion in light of OAG's failure to explain how any proposed amendment would address the deficiencies in the FAC.

This Court generally reviews a district court's denial of leave to amend a complaint for abuse of discretion. *Morabito v. New York,* 803 F. App'x 463, 465 (2d Cir. 2020); *Commer v AFSCME,* 96 F. App'x 757, 758 (2d Cir. 2004). The District Court providently exercised its discretion here, and that determination should not be disturbed.

As a threshold matter, OAG had already amended its Complaint once and, when opposing the District's motion to dismiss, did not move for leave to amend or even seek the alternative relief of leave to amend its FAC. OAG only requested

leave to amend after the R&R, in its Objections to the R&R, JA109, and only in a perfunctory manner. Furthermore, the District Court correctly recognized that OAG's submission did not "identify how she would amend, or how any additional exemplars would address the deficiency," and cited recent case law from this Court and the District Court for the Eastern District of New York as support for its reasoning. *See* JA137 (citing *TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 505 (2d Cir. 2014) (affirming district court's denial of motion for leave to amend complaint and grant of motion to dismiss where plaintiff "entirely failed to specify how it could cure its pleading deficiencies")); *Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*, No. 20 Civ. 5635 (NRB)*, 2022 U.S. Dist. LEXIS 45960, *51 n. 10 (E.D.N.Y. Mar. 15, 2022); *see also Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion and affirming district court's dismissal of action and denial of leave to amend complaint where plaintiff informally requested leave to amend in opposition to motion to dismiss and plaintiff did not advise the district court how the complaint's defects could be cured by such amendment).

## CONCLUSION

Defendant Niagara Wheatfield Central School District respectfully requests that this Court affirm the Decision and Order of the District Court for the Western District of New York, issued on August 26, 2022, and grant such other and further relief as the Court deems just and proper.

Dated: April 18, 2023

Respectfully submitted,

**HARRIS BEACH PLLC**

*/s/ Daniel R. LeCours*
Daniel R. LeCours
677 Broadway, Suite 1101
Albany, NY 12207
Phone: (518) 701-2749
Fax:    (518) 427-0235
dlecours@harrisbeach.com

Svetlana K. Ivy
99 Garnsey Road
Pittsford, New York 14534
Phone:  (585) 419-8779
Fax:      (585) 419-8801
sivy@harrisbeach.com

*Attorneys for Defendant-Appellee*
*Niagara Wheatfield Central School*
*District*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) and Second Circuit Rule 32.1(a)(4)(A) because it contains 8,347 words.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it was prepared in Microsoft Word using 14-point Times New Roman, a proportionally spaced typeface.

_/s/ Daniel R. LeCours_
Daniel R. LeCours

Dated: April 18, 2023